**SCOTTSDALE CITY ATTORNEY'S OFFICE**
3939 North Drinkwater Boulevard
Scottsdale, Arizona 85251
Telephone (480) 312-2405
Joshua M. Crum (SBN 027302)
legal@scottsdaleaz.gov
**Attorneys for City Defendants**

### UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| The Satanic Temple and Michelle Shortt,<br><br>        Plaintiffs,<br><br>vs.<br><br>City of Scottsdale, Arizona, by its City Council, consisting of the Mayor and council members, WJ Jim Layne, Suzanne Klapp, Virginia Korte, Kathy Littlefield, Guy Phillips, David Smith,<br><br>        Defendants. | Case No. 18-cv-00621-DGC<br><br><br>**DEFENDANTS' MOTION TO DISMISS** |

Defendants City of Scottsdale, W.J. "Jim" Lane (erroneously sued as WJ Jim Layne), Suzanne Klapp, Virginia Korte, Kathy Littlefield, Guy Phillips, and David Smith move to dismiss Plaintiffs' Complaint for failure to state a claim. This motion is supported by the following memorandum.[1]

---

[1] As required by LRCiv. 12.1, undersigned counsel certifies that he notified Plaintiffs' counsel in writing of the grounds of this motion prior to its filing, and the parties were unable to agree that the pleading was curable in any part by a permissible amendment.

## MEMORANDUM IN SUPPORT

### Brief Statement of Facts

This case arises out of the Satanic Temple's ongoing campaign to attempt to deliver invocations at local legislative meetings across the country. In February 2016, after the Satanic Temple's request to pray in a Phoenix City Council meeting led Phoenix to discontinue its invocations, a representative from a Tucson-based chapter of the Satanic Temple first contacted Scottsdale with a similar request.[2] The request was routed to the administrative worker responsible for scheduling invocations, the Management Assistant to the Mayor and City Council.[3] The Management Assistant scheduled the Satanic Temple to deliver an invocation for April 5 and later rescheduled the date to July 6 at the Satanic Temple's request after the person selected to give the invocation, Plaintiff Michelle Shortt, was unavailable on the earlier date.[4] In May, after consultation with the City Manager, the Management Assistant contacted the Satanic Temple to notify the group that it would not be giving the scheduled invocation because the City Manager had "decided that the City would not deviate from its longstanding practice of having the invocation given only by representatives from institutions that have a substantial connection to the Scottsdale community."[5]

In February 2018, the Satanic Temple filed this suit, alleging four causes of action. First, that the City's practice of allowing "regular official sectarian invocations" and denying the Satanic Temple the right to give its own invocation violated the Establishment Clause of the

---

[2] *See* Compl. ¶¶ 21, Ex. 1, 9.
[3] Compl. ¶¶ 22, 24.
[4] Compl. ¶¶ 26-28.

U.S. Constitution. Second, that the City violated the Equal Protection Clause of the U.S. Constitution by preferring certain religious denominations and discriminating against the Satanic Temple. Third, that the denial of the Satanic Temple's request to give the invocation violated Article 20, section 1 of the Arizona Constitution, the Toleration of Religious Sentiment Clause. And fourth, that the City's actions constituted violations of 42 U.S.C. § 1983.

## Argument

To survive a motion to dismiss, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must also contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff cannot rest on "labels and conclusions" or a "formulaic recitation of a cause of action's elements"; the complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. While a court must generally accept as true all allegations contained in a complaint, that tenet does not apply to mere conclusory statements. *Id.* at 678-79. Legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

For the reasons that follow, the Plaintiffs' Complaint, which consists of conclusory allegations and invalid claims, falls short of the pleading standards and fails to state valid

---

[5] Compl. ¶ 32, Ex. 7.

claims against the Defendants. And because its flaws go to the heart of Plaintiffs' claims, beyond what could be fixed by amendment, Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

**I.      Plaintiffs have failed to state a claim against the individual defendants.**

Plaintiffs' Complaint alleges all claims against both the City of Scottsdale and the members of the City Council in their official capacities. The claims against the City Council members should be dismissed for two reasons. First, as a threshold matter, the official claims against the City Council members are duplicative of the claims against the City, and therefore, must be dismissed. *See, e.g.*, *Sweet v. City of Mesa*, CV-17-00152-PHX-GMS, 2018 WL 2464111, at *3 (D. Ariz. June 1, 2018) (dismissing official capacity claims as duplicative of claims against municipality). As the Supreme Court has made clear, claims against City officials in their official capacity are claims against the City. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). (an official capacity suit is "to be treated as a suit against the entity . . . . for the real party in interest is the entity"). As a result, "'if individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed.'" *Sweet*, 2018 WL 2464111, at *3 (quoting *Vance v. Cty. of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996)).

Second, Plaintiffs' Complaint fails to allege that the City Council took any action against Plaintiffs or deprived Plaintiffs of any rights. Rather, as the Complaint demonstrates, the decision to not allow the Satanic Temple's planned invocation was handled entirely by

administrative staff and the City Manager, not the City Council.[6] Plaintiffs' allegation that Mayor Lane was responsible for unilaterally implementing a rule that required substantial connections to Scottsdale is a bare conclusion at odds with the emails the Satanic Temple received regarding the City's policy and the City Manager's decision.[7] Rather, the only communications from the Council show that while they were not *personally* in favor of the Satanic Temple giving the invocation, they relied on professional staff to determine who could deliver an invocation and on what conditions.[8] And while the Mayor did mention the denial of the Satanic Temple's invocation attempt in his election materials as a positive "accomplishment" for the City,[9] that after-the-fact portrayal (made as a candidate for office outside the Mayor's official capacity) would not give rise to any claim against the Mayor or other Council members for a decisions they admittedly did not make.

## II.    Plaintiffs have failed to state an Establishment Clause claim.

Plaintiffs allege that the City and the City Council have violated the Establishment Clause by "permitting regular official sectarian invocations to open City Council meetings while denying the Satanic Temple the same right."[10] Plaintiffs likewise allege that they consider the invocations impermissibly sectarian because they "are frequently Christian in nature,

---

[6] *See* Compl. ¶¶ 22, 24, 27, 29 (describing Plaintiffs' interactions with Management Assistant to Mayor and City Council in scheduling invocation); Exs. 2, 3, 7 (email correspondence with Management Assistant, describing decision coming from City Manager).

[7] *Compare id.* with Compl. ¶ 37.

[8] *See* Compl. Ex. 1 (email from Councilwoman Littlefield saying that while she does not want the Satanic Temple to give the invocation, the "Council hasn't had a say on this issue"); Ex. 6 (email from Councilman David Smith saying that he shares constituent's concern on invocation, but "I am informed permission was given" to Satanic Temple).

[9] S *ee* Compl. Ex. 8.

1   making express sectarian references, such as to Jesus Christ"[11] and that they consider such

2   prayers "divisive and exclusionary."[12]

3       But Legislative prayers, even when sectarian in nature, by themselves do not violate the

4   Establishment Clause. *Town of Greece v. Galloway*, 134 S. Ct. 1811, 1818 (2014).

5   ("[L]egislative prayer, while religious in nature, has long been understood as compatible with

6   the Establishment Clause."). In *Town of Greece*, the plaintiffs alleged that the Town of Greece

7   violated the Establishment Clause "by preferring Christians over other prayer givers and

8   sponsoring sectarian prayers, such as those given 'in Jesus' name.'" *Id.* The Supreme Court

9   rejected their arguments, holding that opening legislative sessions with sectarian prayers were

10  part of our nation's tradition from its earliest days, and that "[a]bsent a pattern of prayers that

11  over time denigrate, proselytize, or betray an impermissible government purpose," sectarian

12  prayers do not violate the Constitution. *Id.* at 1823-24. Similarly, the Court rejected the

13  argument that the Town's invitation of almost exclusively Christian prayer givers violated the

14  Constitution. "So long as the town maintains a policy of nondiscrimination, the Constitution

15  does not require it to search beyond its borders for non-Christian prayer givers in an effort to

16  achieve religious balancing." *Id.* at 1824. That result, the Court noted, was consistent with a

17  long line of legislative prayer cases, including *Marsh v. Chambers*, in which the Court approved

18  the constitutionality of a state legislature hiring a paid Christian chaplain to open each

19  legislative session, notwithstanding that a clergyman of only one denomination had been

20

21       [10] Compl. ¶ 43.
         [11] Compl. ¶ 18.
         [12] Compl. ¶ 10.

1    selected for 16 years or that the prayers were exclusively from the Judeo-Christian tradition.

2    463 U.S. 783 (1983).

3        Plaintiffs have not alleged that the invocations given before Scottsdale City Council

4    meetings have over time denigrated, proselytized, or otherwise betrayed any impermissible

5    government purpose. At most, they have alleged, without any supporting facts, that the prayers

6    were frequently Christian, "reflected the Judeo-Christian faith," and did not mention non-

7    Christian deities or use non-Christian language.[13] As demonstrated in *Town of Greece*, *Marsh*,

8    and other legislative prayer cases, those allegations are not enough to state a claim under the

9    Establishment Clause. *See, e.g.*, *Rubin v. City of Lancaster*, 710 F.3d 1087, 1100 (9th Cir. 2013)

10    (rejecting claim that sectarian prayer violated Establishment Clause and noting that deciding

11    "what amounts to a 'sectarian reference' not only embroils judges in precisely those

12    intrareligious controversies that the Constitution requires us to avoid, but also imposes on us a

13    task that we are incompetent to perform").

14        Likewise, Plaintiffs' allegation that the Satanic Temple was excluded from participating

15    in the invocation fails to state a valid Establishment Clause claim. As the Complaint itself

16    alleges, the Satanic Temple was excluded based on a policy that only members of groups with a

17    substantial connection to the Scottsdale community are permitted to give the invocation.[14] To

18    state a claim that the Satanic Temple's exclusion under the policy violates the Constitution,

19    Plaintiffs needed either to state a plausible claim for a facial challenge to Scottsdale's policy or

20    allege some fault with the policy as-applied. Plaintiffs have not done either.

21

---

[13] Compl. ¶¶ 19-20.

Plaintiffs cannot state a plausible claim for a facial challenge to Scottsdale's policy given that the policy is facially neutral and nondiscriminatory, and courts have expressly approved similarly worded policies against Establishment Clause challenges. In *Rubin v. City of Lancaster*, the City of Lancaster, after a challenge to its prayer practice, adopted a formal policy of soliciting volunteers from "religious groups with an established presence" in the city. 710 F.3d at 1089. The Ninth Circuit upheld the City's policy, noting that it was facially neutral and did not affiliate the city with any sect, regardless of whether the policy resulted in a higher amount of Christian invocations due to the demographics of the volunteers. *Id.* at 1099-1100. *See also Simpson v. Chesterfield Cty. Bd. of Sup'rs*, 404 F.3d 276, 279 (4th Cir. 2005) (approving policy under which Board of Supervisors invited religious leaders from congregations within Chesterfield County by taking addresses from phone book); *Atheists of Fla., Inc. v. City of Lakeland*, 779 F. Supp. 2d 1330, 1342 (M.D. Fla. 2011) (approving a policy allowing invocations from "all religious congregations with an established presence in the local community"); *Jones v. Hamilton Cty.*, 891 F. Supp. 2d 870, 887 (E.D. Tenn. 2012), *aff'd sub nom. Jones v. Hamilton Cty. Gov't*, 530 F. App'x 478 (6th Cir. 2013) (same).

Nor can Plaintiffs state a claim based on an as-applied challenge. Plaintiffs do not allege any specific faults with the policy or its application to the Satanic Temple. Plaintiffs do allege that Mayor Lane unilaterally imposed the policy,[15] but that bare conclusion is not supported by any facts and as explained above, is belied by the exhibits to the Complaint. Likewise, Plaintiffs allege that in their initial contact with the Management Assistant, there was no application

---

[14] Compl. ¶ 32.

1  process or inquiries to location or community ties.[16] Yet even taken as true, those allegations do

2  not state a claim that the policy as-applied violates the Establishment Clause. Scottsdale's

3  policy does not unconstitutionally discriminate against the Satanic Temple even if it were

4  unilaterally imposed by the Mayor in his official capacity, or because the substantial connection

5  requirement was not explained from the start by the front-line administrative staffer who fielded

6  the Satanic Temple's first request.

7      Taken together, the allegations in Plaintiffs' Complaint establish only that, while the

8  Satanic Temple does not like Scottsdale's policy, the policy is facially neutral, applies to all

9  faith groups, and was applied as written. None of Plaintiffs' allegations states a claim that the

10 City through its policy purposefully discriminated against the Satanic Temple on the basis of

11 religion. *See, e.g.*, *Town of Greece*, 134 S. Ct. at 1824 (prayer policy constitutional despite

12 pattern of Christian prayers "[s]o long as the town maintains a policy of nondiscrimination");

13 *Bormuth v. County of Jackson*, 870 F.3d 494, 514 (6th Cir. 2017) (rejecting challenge to

14 commissioner-led prayer practice that was exclusively Christian because where county

15 maintained a facially neutral, nondiscriminatory prayer policy, the Establishment Clause was

16 satisfied).

17      The Establishment Clause does not require that Scottsdale end its prayer practice, dictate

18 that prayer givers offer nonsectarian prayers in its meetings, or relinquish control over the

19 Council microphone to anyone who demands it. Plaintiffs' allegations to the contrary regarding

20 what they deem the sectarian nature of past prayers and the Satanic Temple's exclusion under

[15] Compl. ¶ 37.

the City's facially neutral invocation policy do not a state a claim for an Establishment Clause violation.

### III.   Plaintiffs' equal protection claim fails as a matter of law.

Plaintiffs' second claim alleges that "Defendants' preference of certain religious denominations and discrimination against the Satanic Temple" violates the Equal Protection Claus of the U.S. Constitution. This claim fails for two reasons: (1) equal protection analysis does not apply to individual claims of exclusion from the opportunity to give an invocation at a government meeting, and (2) Plaintiffs do not meet the essential element of an equal protection claim: that they were treated differently from those who were similarly situated.

Legislative prayer cases, in which individuals challenge either the practice of permitting invocations at government meetings or claim a denial of the right to participate in the invocations, are governed only by the Establishment Clause, and not the Equal Protection Clause. *See, e.g.*, *Simpson*, 404 F.3d at 288 (4th Cir. 2005) (affirming district court's rejection of equal protection challenge brought by Wiccan who was denied opportunity to give invocation at county meeting on grounds that invocation, even when given by citizen, was government speech "subject only to the proscriptions of the Establishment Clause") (citing *Rosenberger v. Rector*, 515 U.S. 819, 833 (1995)); *Fields v. Speaker of the Pa. House of Reps.*, 251 F. Supp. 3d 772, 792 (M.D. Pa. 2017) ("We join the unanimous consensus of courts before us to conclude that legislative prayer is subject to review under the Establishment Clause alone."); *Coleman v. Hamilton Cty.*, 104 F. Supp. 3d 877, 891 (E.D. Tenn. 2015) ("[L]egislative

---

[16] Compl. ¶ 25.

prayer cases—such as this one—are subject to analysis only under the Establishment Clause of the First Amendment, and not under the Equal Protection Clause of the Fourteenth Amendment."); *Atheists of Fla.*, 779 F. Supp. 2d at 1342 (same).

But even under an equal protection analysis, Plaintiffs have failed to state a claim. "The equal protection clause of the fourteenth amendment guarantees like treatment to all persons who are similarly situated; it does not, however, deny a state the power to treat different classes of people in different ways as long as the classification is reasonable." *State v. Beckerman*, 168 Ariz. 451, 453, 814 P.2d 1388, 1390 (App. 1991).

Here, Plaintiffs do not, and cannot, allege that they are similarly situated to the leaders of local, Scottsdale-based faith groups who have given invocations in front of the City Council as permitted by the City's policy. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (Parties allegedly treated differently in violation of the Equal Protection Clause are similarly situated only when they are "arguably indistinguishable"). Plaintiffs do not, and cannot, allege that they are Scottsdale residents, that the Satanic Temple has a physical presence in Scottsdale, or that Plaintiffs are otherwise substantially connected to the community.

Nor can Plaintiffs allege that the City's "substantial connection" requirement is unreasonable. The purpose of the invocation is to lend gravity to the proceedings by inviting reflection on "shared ideals and common ends." *Town of Greece*, 134 S. Ct. at 1823. In the context of a local municipal meeting, restricting the invocation to those with substantial connections to the municipality is a reasonable restriction to affect that purpose and draw the community together through shared connections. Local faith leaders who serve the community

1   are recognized within the City and represent the citizens of Scottsdale. Those local leaders also

2   have a vested interest in the City and its governance that outside groups cannot match.

3           Plaintiffs likewise fail to allege that other non-Scottsdale faith groups were not subject to

4   the same facially neutral policy or that the policy was inconsistently applied. Rather, Plaintiffs'

5   Complaint alleges facts that show the City carefully considered Plaintiffs' request but ultimately

6   decided to continue to allow only faith groups that have a substantial connection to the

7   community to give the invocation, as is the City's right.

8   **IV.     Plaintiffs' state law claim is untimely.**

9           Plaintiffs' third claim alleges that the City's actions constitute a violation of Article 20,

10  section 1 of the Arizona Constitution, the Toleration of Religious Sentiment Clause. In Arizona,

11  all state law claims against a municipality are subject to a one-year statute of limitations. A.R.S.

12  § 12-821 ("All actions against any public entity or public employee shall be brought within one

13  year after the cause of action accrues and not afterward."). Plaintiffs' claim accrued, at the

14  latest, on May 23, 2016, when the City notified Plaintiffs that the City would not allow

15  Plaintiffs to offer an invocation.[17] Plaintiffs filed their complaint in February 2018, well more

16  than a year after they suffered their alleged injury. As a result, their state law claim is time-

17  barred and must be dismissed.

18  ///

19  ///

20  ///

21

---

[17] Compl. ¶ 32, Ex. 7.

**V.      Plaintiffs' § 1983 claim is not an independent cause of action.**

Plaintiffs' § 1983 claim is not a standalone claim, but instead depends on an underlying violation of Plaintiffs' rights. Because Plaintiffs' other claims are defective, Plaintiffs' § 1983 claim also must be dismissed.

DATED this 12th day of June, 2018.

**SCOTTSDALE CITY ATTORNEY'S OFFICE**


By: /s/ Joshua M. Crum
          Joshua M. Crum, Assistant City Attorney
          3939 North Drinkwater Boulevard
          Scottsdale, Arizona 85251
          Attorneys for City Defendants


**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 12th day of June, 2018, I electronically transmitted the attached document to the Clerk's office using CM/ECF System for filing, and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:


Stuart P. de Haan
de Haan Law Firm, PLLC
100 N Stone Ave., Suite 512
Tucson AZ, 85701
Attorneys for Plaintiffs


By: /s/ Brittany Leonard
An Employee of the Scottsdale City Attorney's Office