**de Haan Law Firm, PLLC**
101 E Pennington
Suite 201
Tucson, Arizona 85701
Telephone: (520) 358-4089
Facsimile: (520) 628-4275

Stuart P. de Haan, State Bar No. 26664
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Shortt and The Satanic Temple<br><br>Plaintiffs,<br><br>vs.<br><br>City of Scottsdale, Arizona, by its City Council, consisting of the Mayor and council members, WJ Jim Lane, Suzanne Klapp, Virginia Korte, Kathy Littlefield, Guy Phillips, David Smith<br><br>Defendants, | Case No. 18-cv-00621-DGC___<br><br><br>**RESPONSE TO DEFENDANT'S MOTION TO DISMISS** |

**COMES NOW** Plaintiffs The Satanic Temple and Michelle Shortt by and through counsel of record with a response to Defendants' Motion to Dismiss. (Doc. 8). This response is supported by memorandum and points of authority.

**MEMORANDUM IN SUPPORT OF RESPONSE**

**Standard of Review**

Upon timely appeal, dismissals of a complaint reviewed de novo include Dismissal for failure to state claim. *See Puri v. Khalsa*, 844 F.3d 1152, 1157 (9th Cir. 2017).

"We review de novo a district court's dismissal for failure to state a claim upon which relief can be granted. *See Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir.

2010). We accept as true all well-pleaded allegations of material fact and construe them in the light most favorable to the plaintiffs. *See id.* We also review de novo a district court's legal determinations, including constitutional rulings, and its determinations on mixed questions of law and fact that implicate constitutional rights. *See Berger v. City of Seattle,* 569 F.3d 1029, 1035 (9th Cir. 2009) (en banc)."

## Defendants did not comply with LRCiv 12.1

This Court should deny Defendants' motion for failure to comply with LRCiv 12.1.  By local rule, this Court requires counsel to confer prior to filing a motion to dismiss for failure to state a claim.  See LRCiv 12.1 (emphasis added):

> No motion to dismiss for failure to state a claim or counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6), or motion for judgment on the pleadings on a claim or counterclaim, pursuant to Federal Rule of Civil Procedure 12(c), will be considered or decided unless the moving party includes a certification that, before filing the motion, the movant notified the opposing party of the issues asserted in the motion *and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party*.

    On June 12, 2018 at 3:10 pm, Plaintiffs received an email from Defendants which notifies Plaintiffs of the grounds for the motion prior to the filing of the motion by counsel of Defendants.

    The email indicates that Defendants do not believe that these pleadings were curable in any part by any permissible amendment.  At 3:39pm, 29 minutes after the notification, Defendants submitted their motion for electronic filing.

    Defendants fail to comply with the rule because they made no attempt to solicit an amendment "offered by the pleading party." LRCiv12.1.  This motion should be denied summarily.

**I.  Plaintiffs state valid claims against the individual defendants**

Defendants first argue that Plaintiffs fail to state a valid claim against the individual defendants. Motion at p. 4. Plaintiffs specifically alleged that the individual defendants acted under color of law to violate their First Amendment rights. Complaint at ¶¶ 10-13, 23, Exhibit 1, 31, 35, 37, and 41. These paragraphs are factual assertions that, if taken as true, state a viable and plausible claim for judicial relief. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs received an email from "City of Scottsdale administrative staff" which states that the City Manager,

> asked me to inform you that he has decided that the city is not going to deviate from it's long standing practice of having the invocation given only representatives from institutions that have a substantial connection to the Scottsdale community.

Complaint at Exhibit 7.

Other exhibits to the Complaint show a concerted effort on the part of Mayor Lane and the other City Council members to halt The Satanic Temple invocation of grounds of viewpoint discrimination. (Complaint at Exhibits 5, 8, and 9). This is the basis for Plaintiffs' complaint.

Plaintiffs allege that the "policy" alleged in this email does not exist. It is an unwritten rule that was created as pretext by whichever government official or officials made the decision to exclude Plaintiffs from the invocation ceremony.

It is further evidence that the "policy" never existed where it is never mentioned in prior public and emailed statements of the mayor and various city council members. Instead, the prior narrative included several bold disparagements of Plaintiffs. (Complaint at Exhibits 5, 8).

It is further evidence that the "policy" never existed that there had never been an inquiry into The Satanic Temple's ties to the City. (Complaint at Exhibit 3). If the policy indeed

existed, Plaintiffs would have been permitted an opportunity to present evidence of ties to the City.

Plaintiffs also point to specific statements made by the individual defendants that evidence the constitutional violations alleged. (Complaint at ¶¶ 23, 31, 35, 37, and 41). These are not prohibited merely conclusory statements, but specific allegations of fact that evidence the unlawful discrimination that took place.

Defendants also argue that the claims against the individual defendants are "merely duplicitous" of the claims against the City. Motion at p. 4. This is untrue. The claims against the individual members are different from the claims against the City because the individual members acted "under color of state law." Complaint at ¶ 13. Under 42 USC § 1983, liability attaches to each individual actor. The individuals and the City may have engaged in the same wrong, but the relief is different.

**II.   Plaintiffs state an Establishment Clause claim**

Defendants next challenge Plaintiffs' Establishment Clause claim. Motion at p.5. Defendants' argument is that prayers given by primarily one religion is in itself a legal practice. Id. pp. 5-7.

Defendants' argument does not meet Plaintiffs' claim. The issue raised is preferential treatment of one religion over another. The Establishment Clause only permits Legislative prayers if there is no policy of discrimination. *E.g., Town of Greece v. Galloway*, 134 S. Ct. 1811, 1817 (2014). Plaintiffs specifically allege the kind of discrimination that the Establishment Clause prohibits.

Once legislative prayer is allowed, the Establishment Clause requires other religions to be given a meaningful opportunity to participate. *See Greece*, 134 S.Ct. at 1824 ("The town

made reasonable efforts to identify *all of the congregations* located within its borders and represented that *it would welcome a prayer by any minister or layman who wished to give one*."); *Marsh v. Chambers*, 463 U.S. 783,794-95 (1983) ("The content of the prayer is not of concern to judges where . . . there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief.")

*Greece* thus makes clear that legislative prayer is constitutionally permissible only if it is inclusive of all faiths.  Plaintiffs' complaint is that Defendants is excluding them on the basis of their faith.  In excluding Plaintiffs, the Defendants have violated Plaintiffs' Establishment Clause rights.

Defendants also erroneously rely on *Rubin v. City of Lancaster* 710 F.3d 1087 (9th Cir. 2013).  This case has the opposite material facts from *Rubin*, which means it requires the opposite conclusion.  In *Rubin*, "No person who has volunteered to pray has been turned down, and no government official has ever attempted to influence the clerk's selection or scheduling of volunteers." *Rubin v. City of Lancaster* 710 F.3d 1087 (9th Cir. 2013).  This case is distinguishable from *Rubin* because Plaintiff Shortt was a volunteer to pray that was turned down, and government officials (successfully) attempted to influence the Clerk's selection or scheduling of volunteers.

Inclusiveness and neutrality are the common elements in all cases upholding a legislative prayer in light of an Establishment Clause challenge.  Defendants cannot, consistent with the Establishment Clause, embark on a policy of exclusiveness and favoritism by specifically prohibiting Plaintiffs from the invocation ceremony.

All available evidence suggests the policy was created immediately prior to the email informing Plaintiffs they are banned from participating in the legislative prayer.  This violates

the Establishment Clause because it was "a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to the adherents that they are insiders, favored members of the political community." *Lynch v. Donnelly*, 465 U.S. 668, 688 (1984) (O'Connor, J., concurring).

Defendants made public, repeated, and specific comments disparaging Plaintiffs' religious beliefs and prohibited Plaintiffs, alone, from participating in the ceremony. These actions materially alter the Establishment Clause analysis and provides the basis of a valid claim.

### III.  Plaintiffs state a claim under the Equal Protection clause

Defendants also challenge Plaintiffs' claims under the Equal Protection Clause. Motion at pp. 10-12. Defendants' argument is that legislative prayer cases are tested only by the Establishment Clause. Motion at pp. 10-11. But Defendants' argument lacks citation to any binding precedent, relying instead only on the Fourth Circuit, a Pennsylvania District Court case a Tennessee District Court case, and a Florida District Court case.

This Court lies in the Ninth Circuit, not the Fourth Circuit. Whether a government entity may violate an individual's Equal Protection rights by legislative prayer appears to be an issue of first impression for the Ninth Circuit. Diligent research by Plaintiffs' counsel has upturned no cases specifically on the issue of legislative prayer.

Part of what may explain the dearth of case law on this issue is an underutilization of the Equal Protection Clause in religious cases. See, generally, Gellman, Susan & Looper-Friedman, Susan, "Thou Shalt Use the Equal Protection Clause for Religion Cases (Not Just the Establishment Clause)," *Journal of Constitutional Law* 10:4, 665.

At bottom, the policy furthered by the Establishment Clause is similar, but not identical, to that provided by the Equal Protection Clause: a government cannot discriminate for, nor

against, a religion or religions. *See Newdow v. United States Cong.*, 328 F.3d 466, 490 (9th Cir. 2002) (Fernandez, J., concurring and dissenting). and *id.*, 328 F.3d at 491 ("[T]hose clauses are, in effect, an early kind of equal protection provision and assure that government will neither discriminate for nor discriminate against a religion or religions;") see also *Walz v. Tax Com. Of New York*, 397 U.S. 664, 696 (1970) (Harlan, J., concurring) ("Neutrality in its application requires an *equal protection* mode of analysis.") (emphasis added).

      But Equal Protection is a wholly different body of law from Establishment Clause, complete with its own unique analytical framework and tests.  Equal Protection is the not the same thing as Establishment Clause.  The Equal Protection Clause claims thus provides for an independent basis for relief unmired by Supreme Court jurisprudence on the Establishment Clause.  While *Marsh*, for example, may find that a sectarian legislative prayer does not offend the Establishment Clause, it says nothing about the unequal treatment of classes of citizens under the Equal Protection Clause.

      Under the Equal Protection Clause analysis, this case becomes a simple question of whether the government action intentionally discriminates against a suspect class.  *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982).  A suspect class is one historically "relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process."  *Id.*, 457 U.S. at 217, fn. 14.  Legislation imposing special disabilities upon groups disfavored by virtue of circumstances beyond their control suggests the kind of "class or caste" treatment that the Fourteenth Amendment was designed to abolish.  *Id.*

      Plaintiffs fall squarely within that definition: they are a group disfavored by virtue of their faith, a circumstance no more within their control than a devout Christian's faith is within her own.  *See also Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). (If the statute employs a

suspect class (such as race, *religion*, or national origin) or burdens the exercise of a constitutional right, then courts must apply strict scrutiny, and ask whether the statute is narrowly tailored to serve a compelling governmental interest.)

Sometimes a constitutional claim may not give relief under the Establishment Clause which would have been granted under the Equal Protection Clause.  This is because, broadly speaking, the Establishment Clause prohibits proselytization where the Equal Protection Clause prohibits Marginalization.  Gellman, above, *Journal of Constitutional Law* 10:4 at 702.

Plaintiffs strenuously contend that their Establishment Clause claims are materially distinguishable from the cases that find the Establishment Clause does not prohibit sectarian religious references in a legislative prayer.  But even if their Establishment Clause claims fail, the Equal Protection Clause provides an independent basis for relief.

Defendants also rely on a pretextual policy that permits Defendants to discriminate against Plaintiffs based on their views.  As stated above, the policy was fabricated for the sole purpose to exclude Plaintiffs on the basis of their religious beliefs.  No other religious organizations have been subject to the scrutiny of their location or "connection to the community."

Dated this 3rd day of July, 2018

**Attorney for the Plaintiffs:**

/s/ Stuart de Haan
Stuart P. de Haan, The Satanic Temple
101 E Pennington
Suite 201
Tucson, Arizona 85701
Telephone: (520) 358-4089
Facsimile: (520) 628-4275

## CERTIFICATE OF SERVICE

I certify that on the 3rd day of July, 2018 I electronically transmitted this document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the appropriate CM/ECF registrants.

                                                         /s/ Stuart de Haan  
                                                           Stuart de Haan  
                                                           Attorney for Plaintiff