**SCOTTSDALE CITY ATTORNEY'S OFFICE**
Stephanie Heizer (SBN 023261)
3939 North Drinkwater Boulevard
Scottsdale, Arizona 85251
Telephone (480) 312-2405
Facsimile (480) 312-2548
legal@scottsdaleaz.gov
**Attorneys for City Defendants**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| The Satanic Temple and Michelle Shortt,<br><br>   Plaintiffs,<br>vs.<br><br>City of Scottsdale, Arizona, by its City Council, consisting of the Mayor and council members, WJ Jim Layne, Suzanne Klapp, Virginia Korte, Kathy Littlefield, Guy Phillips, David Smith,<br><br>   Defendants. | Case No. 18-cv-00621-DGC<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Defendant City of Scottsdale moves for summary judgment on Plaintiffs' remaining claims related to alleged Establishment Clause and Equal Protection violations. As discovery has borne out, and as agreed by counsel at telephonic conference on February 12, 2019, the material facts are not in dispute. The remaining legal questions are whether the City's legislative prayer practice violates the Constitution. Case law plainly establishes that the City may open legislative meetings with sectarian invocations and that the practice of having those invocations given by persons/groups with a substantial connection to the City does not run afoul of the Constitution. Accordingly, the City is entitled to summary judgment. This motion is supported by the following memorandum.

# MEMORANDUM

## Statement of Facts

In a tradition dating back to the Continental Congress, the Scottsdale City Council, like many legislative bodies across the country, begins its regular meetings with an invocation. The invocations are scheduled by an administrative worker, the Management Assistant to the Mayor and City Council, Kelli Kuester. [Exhibit "1", Deposition of Kelli Kuester ("Kuester Depo.") at 5:20-6:7] Ms. Kuester typically solicits volunteers to give invocations from a list of faith groups with a substantial connection to the City of Scottsdale, meaning they are generally located in or near Scottsdale or have a connection through Scottsdale's residents, either as members or congregants. [Exhibit "1", Kuester Depo. at 6:21-7:8; 28:19-29:9] The list includes non-Judeo-Christian organizations, and over the past five years, members of the Muslim, Baha'i, and traditional Native American faiths, among others, have given invocations before the City Council. [Exhibit "3", List of religious organizations; Exhibit "4", Logs of invocation givers 2013 to 2018; Exhibit "5", City Council minutes from 2013 to 2018, pp. 11, 70, 80, 99].[1] The City has no religious test in scheduling invocations and does not exercise any control over their content. [Exhibit "1", Kuester Depo. at 27:11-18]

This case arises out of the Satanic Temple's ongoing and well-publicized campaign to attempt to deliver invocations at local government meetings across the country. In February 2016, after the Satanic Temple's request to pray in a Phoenix City Council meeting led Phoenix to

---

[1] In regard to Exhibit 5, only the page of the Council minutes that memorializes the invocation is included; the remainder of the Minutes are not relevant to the issues presented here. Exhibit 5 is numbered consecutively for ease of reference.

discontinue its invocations, a representative from the newly formed Tucson-based chapter of the Satanic Temple first contacted Scottsdale with a similar request. [Doc. 1, Complaint ("Compl.") ¶¶ 21, 22; Exhibit "1", Kuester Depo. at 11:2-10; Exhibit "6", excerpt from the Satanic Temple article published 1/17/18]

Before being contacted by the Satanic Temple, Ms. Kuester had never been approached by a group requesting to give an invocation, [Exhibit "1", Kuester Depo. at 9:15-10:11] and the City had no written policy regarding invocation givers. [Exhibit "2", Deposition of Brian Biesemeyer ("Biesemeyer Depo") at 9:2-12] Nevertheless, when contacted by the Satanic Temple, Ms. Kuester treated them as she would any other group and scheduled them to deliver the invocation for April 5. [Exhibit "1", Kuester Depo. at 11:2-12:3; Doc. 1, Compl. ¶¶ 26-28] Ms. Kuester later rescheduled the date to July 6 at Plaintiffs' request after the person selected to give the invocation, Plaintiff Michelle Shortt, was unavailable on the earlier date. [*Id.*]

In May, the Acting City Manager, Brian Biesemeyer, learned that the Satanic Temple was described in media coverage as being Tucson-based and had no obvious substantial connection to the City of Scottsdale, unlike previous invocation givers who were "related to the community." [Exhibit "2", Biesemeyer Depo. at 8:3-9:10; Exhibit "1", Kuester Depo. at 20:12-20] As Acting City Manager, Mr. Biesemeyer was the chief administrative officer of the City with final say over administrative matters. [Exhibit "2", Biesemeyer Depo. at 5:3-15] In that capacity, Mr. Biesemeyer decided the City would not deviate from its longstanding practice of having the invocation given only by representatives from institutions that have a substantial connection to the Scottsdale community. [Doc. 1, Compl. ¶ 32, Ex. 7] Mr. Biesemeyer made this decision without any input from the City Council or Mayor. [Exhibit "2", Biesemeyer Depo. at 14:24-

15:3] Mr. Biesemeyer then asked Ms. Kuester to notify the Satanic Temple by email that it would not be giving the scheduled invocation. [*Id.* at 15:4-6] The Satanic Temple did not respond to Ms. Kuester's email or offer the City any evidence of any connection to Scottsdale. [Exhibit "1", Kuester Depo. at 30:5-13]

Nearly two years later, in February 2018, the Satanic Temple filed this suit. [Doc. 1, Compl.] On the City's motion, this Court dismissed the City Council members as parties and dismissed two of Plaintiffs' claims, leaving only Plaintiffs' Establishment Clause and Equal Protection claims against the City. [Doc. 17, 8-9-18 Minute Entry] The City now seeks Summary Judgment on these two claims.

## Argument

**I.     The City's legislative prayer practice does not violate the Establishment Clause.**

The Establishment Clause claims outlined in the Complaint are based upon three primary allegations, namely that:

(A) Scottsdale's legislative invocations are mainly Christian in nature, making them divisive and exclusionary. [Doc. 1, Compl. at ¶¶ 10, 18]

(B) Scottsdale's legislative invocations advance particular religions while excluding the Satanic Temple. [*Id.* at ¶ 11]

(C) Scottsdale allows sectarian prayer at City Council meetings but denies the Satanic Temple the right to give an invocation. [Doc. 1, Compl. ¶ 43]

Plaintiffs' pre-motion letter [Doc. 27], however, articulates their claims differently. The pre-motion letter claims: "it violates TST's Establishment Clause rights for the City to invite only Judeo-Christian religious groups" to pray and "to prohibit non-Judeo-Christian Groups from

participating in the same ceremony." [*Id.* at 2] These claims fail because there is no Constitutional requirement that the City seek out and "invite" non-Judeo-Christian groups to give an invocation at a legislative meeting. Moreover, even if there was such a requirement, the claim fails because the evidence produced during discovery (discussed in detail below) plainly establishes that the City <u>has invited</u> non-Judeo-Christian groups in the community to participate in the invocations, and that non-Judeo-Christians <u>have given invocations</u>. [*See* Exhibits "3", "4" and "5"]

Regardless of how Plaintiffs frame their Establishment Clause claims, the Supreme Court has repeatedly rejected arguments identical to those made by Plaintiffs on similar facts. *See e.g. Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014); *Marsh v. Chambers*, 103 S. Ct. 3330 (1983). The City is entitled to summary judgment.

**A. The City may allow sectarian legislative prayers before Council meetings.**

Plaintiffs complain that the City's invocations "are frequently Christian in nature, making express sectarian references, such as to Jesus Christ," thereby making the prayers "divisive and exclusionary," and leaving Plaintiffs feeling unwelcome at City Council meeting "in their own State". [Doc. 1. at ¶¶ 10, 18] However, merely allowing an invocation or prayer at the beginning of a legislative meeting does not violate the Constitution. *Town of Greece*, 134 S. Ct. 1811. In *Town of Greece*, two residents alleged the town violated the Establishment Clause "by preferring Christians over other prayer givers and sponsoring sectarian prayers, such as those given 'in Jesus' name.'" *Id*. at 117. The residents who attended meetings found these prayers "offensive", "intolerable" and "an affront to a 'diverse community.'" *Id*. The Supreme Court rejected their arguments, confirming existing case law that recognized legislative prayer is part of our nation's tradition from its earliest days, and "while religious in nature, has long been understood as

compatible with the Establishment Clause." *Id*. at 118; *see also, Lund v. Rowan Cty.*, 863 F.3d 268, 275 (4th Cir. 2017), *cert. denied sub nom. Rowan Cty. v. Lund*, 138 S. Ct. 2564 (2018) ("Owing to its unique history and longstanding role in public life, legislative prayer occupies a field of Establishment Clause jurisprudence with its own set of boundaries and guidelines.") (internal quotations and citations omitted).

In *Town of Greece*, the Court found no fault in the fact that the invocations given were almost exclusively Christian. The Court focused on the local community, finding nothing offensive about the Christian invocations, given that the majority of the town's occupants were Christian. *Id*. at 1824. Nor did the Court find persuasive the residents' arguments that overtly Christian language, i.e., words like "Jesus", "Holy Spirit" or "Heavenly Father," was offensive or intolerable to them. *Id*. at 823-824 ("Our tradition assumes that adult citizens, firm in their own beliefs, can tolerate and perhaps appreciate a ceremonial prayer delivered by a person of a different faith.").

In this case, Plaintiffs' first allegations are nearly identical to the complaints of the residents in *Town of Greece*, namely that: (1) the City Council permits sectarian invocations prior to the legislative sessions; and (2) many of the invocation givers are from Christian organizations and have referenced "Jesus Christ". The City does not deny these particular allegations. [Doc 3, at ¶ 18]. However, as plainly demonstrated by the established case law outlined above, these allegations in and of themselves cannot form the basis for an Establishment Clause violation.

**B. The City's invocations do not advance any one faith or disparage any other faith.**

Next, Plaintiff Shortt alleges that the City's invocation practice violates her religious liberty by "advancing particular religions while excluding [the Satanic Temple]." [Doc. 1,

Compl. ¶ 11] Over time, an invocation can go too far and violate the Constitution if it exploits or seeks to advance a particular faith or belief over others, or by disparaging other faiths or beliefs. *Town of Greece*, 134 S. Ct. at 1823, *quoting Marsh v. Chambers*, 463 U.S. 783, 794-95 (1983). Invocations that over time "denigrate nonbelievers or religious minorities, threaten damnation or preach conversion" may lead to a constitutional violation. *Id*. For this test, the Court appears to have focused the analysis on the content of the invocations, as opposed to identity of the religious person/group who is giving the invocation. *Id*. This is consistent with *Marsh v. Chambers*, in which the Supreme Court approved of a state legislature paying a Christian chaplain to open each legislative session for 16 years. 103 S. Ct. 3330, 3338 ("where there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other faith or belief… it is not for us to embark" on an evaluation of the *content* of the prayer).

Here, there is no evidence to establish that the invocations have been used to advance any one faith or belief. The Council minutes (Exhibit "5") and invocation log (Exhibit "4") demonstrate that members from a wide variety of faiths have given invocations over the years. They include members of the Catholic Church, Baptists, Presbyterians, Lutherans, lay leaders of the Church of Jesus Christ of Latter-day Saints, police and fire department chaplains and Jewish Rabbis, to name a few. [Exhibit "4", Log of Invocation Givers] The City has admitted that some of these invocations have referenced "Jesus Christ." [Doc. 7 ¶ 18] Those words alone are insufficient to establish that the City is seeking to advance one faith or belief. *Town of Greece*, 134 S. Ct. at 1824. Moreover, even if the law required the City to specifically solicit non-Judeo-Christian invocation givers from outside its community, which it does not, the documents show

that over the last several years, members of the Muslim community, a Baha'i practitioner, and a Native American Spiritual leader have all given invocations. [Exhibit "5", pp. 11, 70, 80, 99]

The evidence, which is beyond dispute, is fatal to Plaintiffs' claim that the City has completely closed its prayer practice to non-Judeo-Christians, and fatal to the notion that the City's prayer practice unconstitutionally endorses any one religion or belief system. Plaintiffs have not alleged, and there is no evidence in the record, that the invocations given before Scottsdale City Council meetings have over time denigrated, proselytized, or otherwise betrayed any impermissible government purpose.

### C. The City may use reasonable practices to determine who can give an invocation at a legislative meeting.

The final part of Plaintiffs' Establishment Clause claims involves allegations that the Satanic Temple was excluded from giving invocations based on the City's practice that only members of groups with a substantial connection to the Scottsdale community are permitted to give the invocation. [Doc. 1, Compl. ¶¶ 32, 43] Because this practice is reasonable and facially neutral, courts have expressly upheld similarly worded policies against Establishment Clause challenges.

For instance, in *Rubin v. City of Lancaster*, after a challenge to its prayer practice, the city adopted a formal policy of soliciting volunteers from "religious congregations with an established presence" in the city. 710 F.3d 1087, 1089 (9th Cir. 2013). The Ninth Circuit upheld the city's policy, noting that it was facially neutral and did not affiliate the city with any sect, regardless of whether the policy resulted in a higher amount of Christian invocations due to the demographics of the volunteers. *Id.* at 1099-1100. Courts in other jurisdictions have reached similar conclusions regarding similar prayer practices. *See also Simpson v. Chesterfield Cty. Bd. of Sup'rs*, 404 F.3d

276, 279 (4th Cir. 2005) (approving policy under which Board of Supervisors invited religious leaders from congregations within Chesterfield County by taking addresses from phone book); *Jones v. Hamilton Cty.*, 891 F. Supp. 2d 870, 887 (E.D. Tenn. 2012) (policy allowing invocations from religious congregations with an established presence in the local community), *aff'd sub nom. Jones v. Hamilton Cty. Gov't*, 530 F. App'x 478 (6th Cir. 2013).

The City of Scottsdale's practice, which requires a "substantial connection" to the community, is similar to the policies approved in these cases. [Exhibit "2", Biesemeyer Depo. at 8:3-9:10] Nothing in the practice discriminates against or favors any religion or belief system, and the only criteria (a substantial connection to the community) is one that can be filled without regard to any religious belief. *See Rubin*, 710 F.3d at 1099-1100; *Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."). The list of religious organizations (Exhibit "3") the City staff uses to solicit volunteers and the records of past invocation givers (Exhibit "4") demonstrate that invocation givers have are drawn from groups with substantial community ties. [Exhibit "1", Kuester Depo. at 6:21-7:8; 28:19-29:9] This longstanding practice, which dates back as far as the City's records, predates the Satanic Temple's existence and is consistent with the traditional purpose of the invocation, which is to lend gravity to the proceedings by inviting reflection on the community's "shared ideals and common ends." *Town of Greece*, 134 S. Ct. at 1823.

Plaintiffs are not members of the Scottdale community nor do they have any substantial connection to Scottsdale. Mr. Biesemeyer, Acting City Manager at the time Plaintiffs requested to give the invocation, learned that Plaintiffs were based out of Tucson and did not have a

connection to Scottsdale. Therefore, based upon the policy as he understood it, he made the decision not to allow the Satanic Temple's invocation. [Exhibit "2", Biesemeyer Depo. at 8:3-9:10] The practice is not unconstitutional simply because Plaintiffs believe the City should have investigated more thoroughly its community ties or provided an appeals process, [*see* Doc. 27, Plaintiffs' pre-motion letter at 2] particularly where the Satanic Temple never responded to the City's denial or offered any proof of its ties to Scottsdale once it learned of the City's rationale. [Exhibit "1", Kuester Depo. at 30:5-13]

Additionally, the City's reliance on its previous practice rather than a written prayer policy does not make it unconstitutional. In *Snyder v. Murray City Corp.*, the Tenth Circuit upheld the Murray City's prayer practice, challenged on Establishment Clause grounds by a citizen opposed to public prayers. 159 F.3d 1227, 1228 (10th Cir. 1998). The plaintiff had initially sought publicity and media coverage by requesting to give "invocations" in Salt Lake City, in which the content would have called for an end to public prayers and mocked public officials. *Id.* at 1228-12299. After Salt Lake City decided to end the prayer practice rather than allow this plaintiff to recite an invocation, he requested a chance to pray before the Murray City Council. *Id.* at 1229. At the time, Murray City had no formal written policy, but plaintiff was told that the city's practice was to allow only invocations that solemnized, rather than denigrated the council's work. *Id.* at 1229-1330. Murray City was permitted to exclude plaintiff from giving the invocation because his prayer did not meet the city's criteria. *Id*. at 1235. The lack of a formal policy at the time did not affect the ultimate determination that the practice was constitutional:

> Prior to the events at issue in this case, the city had never received an unsolicited request from a private individual to give a prayer at a council meeting. In light of this historical practice, Murray City had no written policy on its council prayers, and it had no formal guidelines for the content of its council prayers.

*Id.* at 228. Likewise, Scottsdale has no record of ever receiving an unsolicited request to give the invocation before this, and had no formal written policy, but did have a longstanding practice that it consistently applied. But even if the City had enacted some new policy in response to these events, that would not make it unconstitutional. A newly enacted, but facially neutral and evenly applied policy requiring substantial community ties would not violate the Establishment Clause. *See, e.g.*, *Rubin*, 710 F.3d at 1099-1100 (approving facially neutral prayer policy adopted after challenge to prayer practice); *Bormuth v. County of Jackson*, 870 F.3d 494, 514 (6th Cir. 2017) (rejecting challenge to commissioner-led prayer practice that was exclusively Christian where county maintained a facially neutral, nondiscriminatory prayer policy).

Taken together, the facts in this case establish only that, while the Satanic Temple does not like Scottsdale's practice, the practice is facially neutral and was applied consistently. The Establishment Clause does not require that Scottsdale end its prayer practice, dictate the religious content of invocations, or relinquish control over the Council microphone to anyone who demands it. The City is entitled to summary judgment.

**D.     Plaintiffs other allegations are irrelevant to the Establishment Clause analysis.**

Plaintiffs' other allegations—that the policy was unilaterally imposed by the Mayor, or was just a pretext to deny them a constitutional right—are directly contradicted by the facts and do not entitle Plaintiffs to any relief under the Establishment Clause. [*See* Doc. 1, Compl. ¶ 37, Doc. 27, Plaintiffs' pre-motion letter at 2] In their depositions, both the Management Assistant and the Acting City Manager testified that the Mayor and City Council had no input on whether a group could give an invocation and played no role in the City's decision not to allow the Satanic Temple to give the invocation. [Exhibit "1", Kuester Depo. at 21:23-22:1; Exhibit "2",

Biesemeyer Depo. at 14:24-15:3] And while the Mayor and members of the Council publicly voiced their displeasure with the idea that the Satanic Temple could give an invocation in the press and in campaign materials, [Doc 1, Compl. Exs. 5, 8, 9] the Council members' own emails, attached to the Complaint, also make clear that they didn't have "a say on the issue one way or the other." [*Id.*, Ex.1]

## II.     Plaintiffs' equal protection claim fails as a matter of law.

Plaintiffs' second claim alleges that "it violates [the Satanic Temple's] Equal Protection rights for the City to permit Judeo-Christian religious groups to participate in the ceremony, but to preclude [the Satanic Temple] from participating in the same ceremony." [Doc. 27, Plaintiffs' pre-motion letter at 2] This claim fails for two reasons: (1) equal protection analysis does not apply to individual claims of exclusion from the opportunity to give an invocation, and (2) Plaintiffs do not meet the essential element of an equal protection claim—that they were treated differently from those who were similarly situated.

Legislative prayer cases, in which individuals challenge either the practice of permitting invocations at government meetings or claim a denial of the right to participate in the invocations, are governed only by the Establishment Clause, and not the Equal Protection Clause. *See, e.g.*, *Simpson*, 404 F.3d at 288 (4th Cir. 2005) (affirming district court's rejection of equal protection challenge brought by Wiccan who was denied opportunity to give invocation at county meeting on grounds that invocation, even when given by citizen, was government speech "subject only to the proscriptions of the Establishment Clause") (citing *Rosenberger v. Rector*, 515 U.S. 819, 833 (1995)); *Fields v. Speaker of the Pa. House of Reps.*, 251 F. Supp. 3d 772, 792 (M.D. Pa. 2017) ("We join the unanimous consensus of courts before us to conclude that legislative prayer is

subject to review under the Establishment Clause alone."); *Coleman v. Hamilton Cty.*, 104 F. Supp. 3d 877, 891 (E.D. Tenn. 2015) ("[L]egislative prayer cases—such as this one—are subject to analysis only under the Establishment Clause of the First Amendment, and not under the Equal Protection Clause of the Fourteenth Amendment."); *Atheists of Fla.*, 779 F. Supp. 2d 133, 1342 (same); *cf. Barker v. Conroy*, 282 F. Supp. 3d 346, 364 (D.D.C. 2017) (in case involving challenge to legislative prayer, plaintiff could not "salvage his failed First Amendment claim by cloaking it in a Fifth Amendment due process (equal protection component) mantle"). These cases make it clear that Plaintiffs' Equal Protection claim fails as a matter of law.

However, even if equal protection applied, Plaintiffs are not entitled to any relief on the facts before this Court. "The equal protection clause of the fourteenth amendment guarantees like treatment to all persons who are similarly situated; it does not, however, deny a state the power to treat different classes of people in different ways as long as the classification is reasonable." *State v. Beckerman*, 168 Ariz. 451, 453, 814 P.2d 1388, 1390 (App. 1991). Here, Plaintiffs were denied the opportunity to give an invocation because they are not similarly situated to the members of the community who have given legislative invocations. [*See* Exhibit "2", Biesemeyer Depo. at 8:3-9:10] Plaintiffs do not allege that they are Scottsdale residents, that the Satanic Temple has a physical presence in or near Scottsdale, or that Plaintiffs are otherwise substantially connected to the community like the groups permitted by the City's practice. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (Parties are similarly situated for equal protection analysis only when they are "arguably indistinguishable"). In fact, after being told that they were rejected from giving the invocation for lack of a substantial connection to Scottsdale, Plaintiffs

declined to even respond or offer any evidence of a connection to the City. [Exhibit "1", Kuester Depo. at 30:5-13]

Nor can Plaintiffs allege that the City's "substantial connection" requirement is unreasonable. In the context of a local municipal meeting, restricting invocation givers to those with substantial connections to the municipality is a reasonable restriction to affect the purpose of the invocation by drawing the community together through "shared ideals and common ends." *Town of Greece*, 134 S. Ct. at 1823. Local groups include those who serve the community and represent the citizens and patrons of Scottsdale. Those are the persons who have "shared ideals and common ends" as described by the case law, as it is those local groups who have a vested interest in the City and its governance that outside groups cannot match.

Likewise, there is no evidence that other groups were not subject to the same facially neutral policy or that the City's practice was inconsistently applied. Rather, the evidence shows only that the City considered Plaintiffs' request but decided to continue its practice of allowing only groups that have a substantial connection to the community to give the invocation, as is the City's right.

**Conclusion**

Because the uncontested facts demonstrate that the City's legislative prayer practice is consistent with established Establishment Clause law, and Plaintiffs' can state no claim for an Equal Protection violation, the City is entitled to summary judgment on these claims.

/ / /

/ / /

/ / /

DATED this 1st day of March, 2019.

                                      **SCOTTSDALE CITY ATTORNEY'S OFFICE**

By: /s/ Stephanie Heizer
      Stephanie Heizer, Assistant City Attorney
      3939 North Drinkwater Boulevard
      Scottsdale, Arizona 85251
      Attorneys for City Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of March, 2019, I electronically transmitted the attached document to the Clerk's office using CM/ECF System for filing, and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Stuart P. de Haan
de Haan Law Firm, PLLC
100 N Stone Ave., Suite 512
Tucson AZ, 85701
Attorneys for Plaintiffs

By: /s/ Vickie Frost
An Employee of the Scottsdale City Attorney's Office