**de Haan Law Firm, PLLC**

101 E Pennington

Suite 201

Tucson, Arizona 85701

Telephone: (520) 358-4089

Facsimile: (520) 628-4275

Stuart P. de Haan, State Bar No. 26664

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Michelle Shortt and The Satanic Temple<br><br>Plaintiffs,<br><br>vs.<br><br>City of Scottsdale,<br><br>Defendant, | Case No. 18-cv-00621-DGC___<br><br><br>**STATEMENT OF MATERIAL FACTS SUPPORTING PLAINTIFFS' RESPONSE AND CROSS-MOTION FOR SUMMARY JUDGMENT** |

**Background**

<u>The invocations</u>

1.   For some time–it is unclear how long–the City of Scottsdale has opened its city council meetings with religious invocations.  **Exhibit 1** (deposition of Kelli Kuester) at 6:8; see also **Exhibit 3** (deposition of Brian Biesemeyer) at 11:1 – 11:2; City's motion at Exhibit 5 (the earliest record is dated January 8, 2013).

2. Prior to July 6, 2016, nearly every participant in this ceremony was Christian. See City's motion at Exhibit 5, pp. 1-65. There are only two exceptions: Rabbis, religious leaders of the Jewish faith, and Susan Ducot, of the Bahá'í faith. City's motion at Exhibit 5, pp. 27, 42, 48, 54, and 62 (Rabbis); and p. 11 (Ms. Ducot).

3. The Bahá'í faith is an Abrahamic religion, like Judaism, Christianity, and Islam. See Lawson, Todd (13 December 2012). Cusack, Carole M.; Hartney, Christopher, eds. "Baha'i Religious History." Journal of Religious History. 36 (4): 463–470. doi:10.1111/j.1467-9809.2012.01224.x. ISSN 1467-9809.

4. The speakers were selected by invitation from a list handed down to city administrative employee, Kelli Kuester. **Id.** at 7:13. At all relevant times, no written policy formalized this process. **Id.** at 8:15-8:21. Speakers came from the area in and around Scottsdale. City's motion at Exhibit 3. At least 38 speakers came from outside the city limits of Scottsdale. Id.

5. Ms. Kuester's role in arranging for invocations was to iteratively call individuals on the list and fill time slots for opening prayers. **Id.** at 7:2-7:8. The Satanic Temple ("**TST**") was the only group to proactively reach out and seek inclusion in the invocation. **Id.** at 10:6-10:15.

About TST

6. The Satanic Temple is a nascent religious organization. See generally "FAQ" available at https://thesatanictemple.com/pages/faq (last visited March 27, 2019); see also "Tenets" available at https://thesatanictemple.com/pages/tenets (last visited March 27, 2019).

7. TST's organizational mission is to encourage benevolence and empathy among all people. See "Our Mission" available at https://thesatanictemple.com/pages/about-us (last

1  visited March 27, 2019).  TST's function is to actively provide outreach, to lead by example,

2  and to participate in public affairs wheresoever the issues might benefit from rational, Satanic

3  insights.  See "FAQ," above.

4  **The request**

5  8.     On February 8, 2016, Michelle Shortt contacted Ms. Kuester by telephone to request

6  placement of TST on the City's invocation schedule.  **Id.** at 11:23-12:3;**see also Exhibit 2**

7  (affidavit of Ms. Shortt).  Ms. Shortt is a member of TST.  **Id.**  Ms. Kuester placed TST on

8  the list, as she would have with any other religious organization willing to participate.  **Exhibit**

9  **1** (deposition of Ms. Kuester) at 11:17-19.

10 9.     At that time, TST was being treated as if it were any other religious organization.  **Id.**

11 There was no investigation into TST.  **Id.** at 10:16-10:23.  No questions were asked about

12 TST's connection with Scottsdale.  **Id.**  No baseline requirements for participation was

13 conveyed.  **See id.**; **Exhibit 2**.

14 10.    Later, a scheduling conflict arose with TST, so the parties rescheduled for July 6.  **Id.**

15 at 12:1-12:3 and 14:23-15:1.  Ms. Kuester informed the City's chief of staff (her direct

16 supervisor) and the City's mayor.  **Id.** at 12:21-12:25.  Each told her that she had done the

17 correct thing, "because I needed to treat them the way I would treat any other organization."

18 **Id.** 12:9-12:11.

**The political outcry**

11. The members of the City Council took the same–correct–impression that the law prohibits disparate treatment of TST because of religion; but they didn't like it. In a February 12 email to a voter, City Council member Kathy Littlefield states:

> [A]ccording to the Supreme Court's decision our choice is to allow it or discontinue all religious prayers at the beginning of the meeting. Personally, I like having the prayers, do NOT want the Satanists, and I think this is taking equality too far.

Doc. 1-1 at p. 2.

12. The same sentiment is reflected in a March 22 email from David Smith, another City Council member, to a voter:

> Please be assured I share your sentiments. I am informed permission was given, relying on a Supreme Court opinion that this '*religion*' is protected by the First amendment…an absurd notion, even if not surprising. I wish (and intend) my deliberations on Council to be blessed and guided by God alone.

Id. at p. 12 (mocking emphasis in original).

13. Suzanne Klapp, another City Council member, publicly stated "I do not welcome a Satanist group." Id. at p. 10 . The was based on her faith. Id. ("My faith tells me that this is the only action I can take.")

**The denial**

14. Suzanne Klapp "expressed her concern" to the city manager for the City allowing TST to participate in the ceremony. **Exhibit 3** (deposition of Mr. Biesemeyer, the city manager) at 13:14-14-9. The city manager made his decision to revoke TST's invitation in absence of any investigation. **Id.** at 8:7-9:10.

15. Following that, the city manager "informed" Ms. Kuester that the City was revoking TST's invitation to participate. **Exhibit 1** (deposition of Ms. Kuester) at 18:23-19:19. The city manager "directed" Ms. Kuester to notify TST that they were being denied participation. **Exhibit 3** (deposition of Mr. Biesemeyer, the city manager) at 15:4-15:6. TST is the only group to have ever been denied participation. Exhibit 1 at

16. It is odd that the direction came from the city manager because Ms. Kuester did not report to the city manager and was not even in his department. **Exhibit 1** at 4:23 – 4:24; **see also Exhibit 3** at 4:9-4:12. Ms. Kuester reported to the chief of staff. **Exhibit 1** at 12:21-12:25.

17. It was not the city manager's responsibility to schedule invocation participants. **Exhibit 3** 6:1-6:3. It was not even the city manager's departmental function: scheduling participants was done "out of the mayor's office," which "is separate from my office." **Id.** 4-9-4:12. No other groups were scrutinized for their "substantial community ties." **Id.** at 10:1 – 10:22.

18. The city manager could not enunciate any factors or elements of "substantial connection." **Id.** at 9:11 – 10:17; **see also** 16:1-16:11. Nor could he recite any unique identifier that distinguished TST from the permitted participants, other than a perception that TST was only in Tucson. **Id.** at 9:11 – 10:17; **see also** 16:1-16:11. TST received special scrutiny because they are "unique." **Id.** at 12:3-12:6 and 21:8-21:10.

19. Ms. Shortt was replaced with a Christian. City's motion at Exhibit 5, p. 84.11

**The aftermath**

20. Following the denial, Mayor Lane took credit for stopping "so called 'Satanists' from mocking City Hall traditions with a 'prayer.'" Doc 1-1 at p. 17. As if it was not abundantly clear, Mayor Lane stated the exact reasoning for revoking TST's invitation:

> In Scottsdale we 've decided to keep our traditional invocations and we've decided to send this Satanist sideshow elsewhere . . . Some say just let them do a 'Satanic Prayer' and walk out. That's not good enough. Rather than walk out, we're standing up to this ridiculing of religion. Some things are worth fighting for.

Id. at p. 22 (reelection campaign statement from Mayor Lane).

21. Much later, the City apparently extended invitations to two new religions, one of which came from outside of Scottsdale and the other was Abrahamic (Islam). Doc. 32-6 (City's motion at Exhibit 5), p. 70 ("Phoenix Indian Center," referring to indigenous Americans), p. 80 (Muslim speaker), and p. 99 (same).

**Exhibit list:**

1. Deposition of Kelli Kuester
2. Deposition of Brian Biesemeyer
3. Affidavit of Michelle Shortt