| **de Haan Law Firm, PLLC** | and | **Kezhaya Law PLC** |
|---|---|---|
| 101 E Pennington | | 1202 NE McClain Rd. |
| Suite 201 | | Bentonville, Arkansas 72712 |
| Tucson, Arizona 85701 | | phone: (479) 431-6112 |
| Telephone: (520) 358-4089 | | fax: (479) 282-2892 |
| Facsimile: (520) 628-4275 | | email: matt@kezhaya.law |
| Stuart P. de Haan, State Bar No. 26664 | | Matthew A. Kezhaya, *phv*, Ark. Bar # 2014161 |

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Shortt and The Satanic Temple | |
| | Case No. 18-cv-00621-DGC |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' RULE 17(a)(3) MEMORANDUM** |
| City of Scottsdale, | |
| Defendant, | |

## SUMMARY

During the telephonic conference on July 29, the City questioned if Plaintiffs are the "real parties in interest" as used in FRCP 17. The Court directed Plaintiffs to "file a short memorandum with the Court that explains what their intent is with respect to having the real party in interest appear in the case." Doc. 48.

Plaintiffs intend to join the following entities: The Satanic Temple, Inc., a Massachusetts religious corporation, The United Federation of Churches LLC, a Massachusetts LLC, dba "The Satanic Temple" and Adversarial Truth LLC, an Arizona LLC, dba "The Satanic Temple

1

(Arizona Chapter)."  For brevity, "The Satanic Temple" is shortened to its common moniker, "**TST**," and interchangeably refers to both LLCs and the corporation.

### ARGUMENT

A party with standing is the "real party in interest" for cases seeking to enforce a substantive right under the United States Constitution.  This memorandum explains why Michelle Shortt has standing and why "The Satanic Temple," more appropriately identified as the above entities, also have standing.

Michelle Shortt has standing because, taking the allegations of the complaint as true, she was treated differently because of her religion.  This unequal treatment vests Michelle with standing even if she would have been precluded her from prayer on the basis of her geography.

TST has standing because, taking the allegations of the complaint as true, Michelle is a member with standing, the interests at stake are germane to TST's organizational purpose, and neither the claim asserted nor the relief requested requires participation of individual members in the suit.  It is no obstacle that the Massachusetts LLC and corporation are not licensed to do business in Arizona because this is a federal question case, whereas Arizona can only prescribe qualifications in diversity cases.

**1: The "real parties in interest" are the parties with standing.**

The requirement that a plaintiff must be the "real party in interest" is found at FRCP 17.  FRCP 17(a)(1) ("An action must be prosecuted in the name of the real party in interest.")  The purpose of this analysis is to determine who "owns" the legal right asserted, i.e. to protect defendants from potentially incurring double liability.  See reporter's notes to 1966 amendments ("[T]he modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata.")

Normally, the analysis is a straightforward question of title or authority, e.g., by showing letters testamentary for cases involving the rights of the deceased.  But there is no governmental grant of right or authority in constitutional cases.

Surprisingly, this appears to be an issue of first impression in the Ninth Circuit. The Seventh Circuit resolved the question of who "owns" a constitutional case by considering who has standing. Apter v. Richardson, 510 F.2d 351, 353 (7th Cir. 1975) ("[I]t is settled that once a party is found to have standing to raise a constitutional point, that ruling disposes of any real party in interest objections as well.") (citing 6 C. Wright & A. Miller, Federal Practice and Procedure § 1552 at 694 (1971); United Fed. of Postal Clerks v. Watson, 133 U.S. App. D.C. 176, 409 F.2d 462, 469-70 (1969); and Smith v. Board of Education, 365 F.2d 770, 777-78 (8th Cir. 1966)).

Although not in a constitutional case, the Ninth Circuit has explained that the "real party in interest" is the "party to whom the relevant substantive law grants a cause of action." U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1038 (9th Cir. 1986).

Here, the substantive law is 42 USC § 1983. The statute provides a cause of action to parties who are injured by a deprivation "under color of any statute, ordinance, regulation, custom, or usage," of any rights, privileges, or immunities secured by the Constitution.

Standing necessarily requires findings of an injury in fact which is traceable to the City, which necessarily acts under color of state law. Thus, U-Haul gives further credence to the argument that the "real party in interest" question is resolved by a determination of standing.

## 2: Michelle has standing to raise a religious discrimination claim because she was the subject of religious discrimination.

The standing analysis turns on a three-part test. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).

This analysis is founded on a presumption that the plaintiff will prevail on her claim. E.g. Barker v. Conroy, 921 F.3d 1118, 1124 (D.C. Cir. 2019). The Ninth Circuit has cautioned against using standing as a veil to disguise a merits analysis. See Catholic League for Religious & Civil Rights v. City & Cty. of S.F., 624 F.3d 1043, 1049 (9th Cir. 2009)

In Catholic League, the Ninth Circuit observed that determining an "injury in fact" is particularly elusive in the Establishment Clause context "because the Establishment Clause is primarily aimed at protecting non-economic interests of a spiritual, as opposed to a physical or pecuniary, nature." Id. But gives a helpful concrete example: "government condemnation of one's own religion." Id. at 1052; see also Davis v. Guam, 785 F.3d 1311 (9th Cir. 2015) (unequal treatment under the law is an "injury in fact.")

Here, Michelle can show an injury in fact because, not only did the City condemn her religion, the City condemned her religion in response to the thought of her equal participation in an all-comer invocation policy. See, generally, Doc. 1-1 (the City's various condemnations of Michelle's religion).

The City may argue that Michelle could be precluded on geographical grounds, if not religious ones, even if the various elected officials had not bluntly stated the religious purpose behind precluding her equal participation. The problem with this argument is that it requires the Court disregard the clear statement of law that "equal treatment under law is a judicially cognizable interest that satisfies the case or controversy requirement of Article III, **even if it brings no tangible benefit to the party asserting it**." Davis v. Guam, 785 F.3d 1311, 1315 (9th Cir. 2015) (emphasis added).

The remaining standing requirements are straightforward. Michelle can show that the constitutional injury is "fairly traceable" to the City because the City revoked her invitation. The last prong, redressability, is provided by the prayed-for injunctive relief "enjoining the Defendants, their successors, and any person in active concert with the Defendants prohibiting invocations before Scottsdale City Council Meetings." Compare Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185-86, 120 S. Ct. 693, 706 (2000) ("[F]or a plaintiff who is injured or faces the threat of a future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress.") (upholding a private plaintiff's standing to seek civil fines, paid to the court).

Because Michelle satisfies all three prongs of the standing analysis, Michelle has standing. The fact that she stepped down as chapter head does not "undo" the fact that she was precluded from participating in the invocation ceremony on the basis of her religion; nor does it "undo" the fact that the City was the one who precluded her equal participation; nor would it "prevent" the Court from issuing an injunction precluding the City from prohibiting a TST invocation before City Council meetings.

**3: TST has associational standing because Michelle has standing, the interests in this case are germane to its organizational purposes, and the individual members are not necessary to prove the claim asserted or the relief requested.**

TST, both as the local Arizona chapter and the national organization, must separately prove their standing. The three entities are functionally interchangeable because they are associations of Satanists. For ease of reading, all are treated here.

The three entities interchangeably referred to as "TST" are interrelated. Adversarial Truth LLC is the Arizona Chapter of The Satanic Temple. Michelle Shortt is the sole owner of Adversarial Truth LLC.

United Federation of Churches, LLC (dba "The Satanic Temple") is the predecessor entity to The Satanic Temple, Inc. United Federation of Churches is owned by two individuals residing in Massachusetts. This entity was in existence at the time of the events in question.

The Satanic Temple, Inc. is an IRS-recognized "church," complete with a 501(c)(3) ruling letter. Being a nonprofit corporation, The Satanic Temple, Inc., does not have "shareholders" as much as it had "organizers." This entity was formed after the events in question.

Associations have standing to bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Friends of the Earth, above, 528 U.S. at 181.

Despite having stepped down from her leadership role of the Arizona chapter, Michelle is still a member of TST.  As explained above, the City's religious discrimination against Michelle gives her standing to raise the Establishment Clause and Equal Protection Clause claims raised in this litigation.  If the Court finds otherwise, the Court should permit Plaintiffs time to find an appropriate TST member pursuant to FRCP 17(a)(3).

The interests at stake in the litigation are plainly germane to the organization's purpose. TST's organizational purpose is to protect its members from religious persecution, often by demanding equal religious rights.  See e.g. https://thesatanictemple.com/pages/about-us (last visited on August 12).  The campaign to perform a public invocation in Scottsdale was done pursuant to an affiliation agreement.

Last, neither the claim asserted nor the relief requested requires participation of individual members of the lawsuit.  The individual Satanists, other than Michelle, are not needed to prove the facts of this case because Michelle has personal knowledge of all the material facts.  Nor is participation of the individual Satanists needed for the requested relief, because Michelle would be the individual giving the prayer.

**4: The national organization, either the LLC or the corporation, can sue to enforce a federal right in Arizona federal court as "unincorporated associations."**

The City has repeatedly pushed an argument that the national organization of TST cannot sue because it is an LLC not licensed to do business in Arizona.  This line of argument was foreclosed over a century ago in David Lupton's Sons Co. v. Auto. Club of Am., 225 U.S. 489, 32 S. Ct. 711 (1912) (abrogated on other grounds, as recognized in Weinstock v. Sinatra, 379 F. Supp. 274 (C.D. Cal. 1974)).  There, the Supreme Court reversed a New York District Court's dismissal of a case where the plaintiff was a corporation not licensed to do business in New York because "The state could not prescribe qualifications of suitors in the courts of the United States."  See id., 225 U.S. at 500.

Later, the Supreme Court noted that Lupton's Sons Co. was abrogated in diversity cases by Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938).  See Angel v. Bullington, 330 U.S.

183, 192, 67 S. Ct. 657, 662 (1947) ("Cases like Lupton's Sons Co.[], are obsolete **insofar as they are based on a view of diversity jurisdiction** which came to an end with Erie[]. That decision drastically limited the power of federal district courts to entertain suits **in diversity cases** that could not be brought in the respective State courts or were barred by defenses controlling in the State courts . . .") (emphasis added).

Rule 17(b)(3)(A) encodes the principle that, in federal question cases, the forum state cannot "prescribe qualifications of suitors in the courts of the United States." Rule 17(b)(3) provides the general rule that qualifications are determined by the forum state, except where, under (b)(3)(A), an "unincorporated association with no such capacity under that state's law may sue or be sued in its common name **to enforce a substantive right existing under the United States Constitution or laws**." (emphasis added).

The Ninth Circuit regularly construes "unlicensed" corporations as "unincorporated associations" when considering real party in interest questions in federal question cases. See, e.g., Sierra Association for Environment v. Federal Energy Regulatory Commission, 744 F.2d 661, 662 (9th Cir. 1984) ("Because this action arises under federal law, [plaintiff] had capacity to sue as an unincorporated association, Fed. R. Civ. P. 17(b)(1), **and any incapacity under California law is accordingly irrelevant**") (emphasis added); see also Comm. for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814, 819-20 (9th Cir. 1996) (a corporation whose failure to file an annual report resulted in a lapsed corporate charter is an "unincorporated association.")

Here, admittedly neither the LLC nor the corporation are licensed to do business in Arizona. This is no jurisdictional problem because the entities are suing under federal laws, not under diversity jurisdiction—i.e., under Arizona laws. Even if the Court disagrees, the Arizona Chapter of TST was organized in and is licensed to do business in Arizona.

## CONCLUSION

Plaintiffs intend to keep Michelle and replace "The Satanic Temple" with the relevant corporate entities comprising the organization of adherents. More particularly, the corporate entities comprise the Arizona Chapter, the national organization existing as an LLC at the time of the events in question, and the national organization existing today as a corporation.

If the Court gives its blessing on this proposal, Plaintiffs will file Rule 7.1 disclosure forms in the time prescribed by the Court. If the Court orders the reopening of discovery, the issues should be limited to documents proving "ownership" of the constitutional claims.

Respectfully submitted on August 12, 2019,
On behalf of Plaintiffs

| By | /s/ Stuart P. de Haan | and | /s/ Matthew A. Kezhaya |
|---|---|---|---|
| | Stuart P. de Haan, | | Matthew A. Kezhaya, |
| | AZ Bar No. 026664 | | AR Bar No. 2014161 (*pro hac vice*) |
| | Attorney for Plaintiffs | | Attorney for Plaintiffs |
| | de Haan Law Firm, PLLC | | KEZHAYA LAW PLC |
| | 100 N Stone Avenue, Suite 512 | | 1202 NE McClain Rd |
| | Tucson, Arizona 85701 | | Bentonville AR 72712 |
| phone | (520) 358-4089 | | (479) 431-6112 |
| fax | (520) 628-4275 | | (479) 282-2892 |
| email | stu.dehaan@gmail.com | | matt@kezhaya.law |

**CERTIFICATE OF SERVICE**

I certify that on August 12, 2019 I electronically transmitted this document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the appropriate CM/ECF registrants.

/s/ Stuart de Haan