| | | |
|---|---|---|
| **de Haan Law Firm, PLLC** | and | **Kezhaya Law PLC** |
| 101 E Pennington | | 1202 NE McClain Rd. |
| Suite 201 | | Bentonville, Arkansas 72712 |
| Tucson, Arizona 85701 | | phone: (479) 431-6112 |
| Telephone: (520) 358-4089 | | fax: (479) 282-2892 |
| Facsimile: (520) 628-4275 | | email: matt@kezhaya.law |
| Stuart P. de Haan, State Bar No. 26664 | | Matthew A. Kezhaya, *phv*, Ark. Bar # 2014161 |

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| THE SATANIC TEMPLE, INC., <br> MICHELLE SHORTT, <br> UNITED FEDERATION OF CHURCHES, LLC (dba "The Satanic Temple,") <br> ADVERSARIAL TRUTH LLC (dba "The Satanic Temple – Arizona Chapter,") and <br> THE SATANIC TEMPLE, a voluntary group of persons, without an Arizona charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective <br>     Plaintiffs, <br>     *v.* <br> CITY OF SCOTTSDALE, <br>     Defendant, | Case No. 18-cv-00621-DGC <br><br> **PLAINTIFFS' FIRST AMENDED COMPLAINT** |

**COME NOW** Plaintiffs, by and through counsel of record, with an amended complaint pursuant to FRCP 15 and the Court's order (Doc. 55) pertaining to the real parties in interest. See also Plaintiffs' standing memorandum (Doc. 53).

**EXPLANATORY NOTE**

1. Principally, this amendment adds the various juristic bodies which, at various times, have given an organizational structure to the voluntary association of self-identified Satanists practicing under the moniker "The Satanic Temple." Because their shared religious beliefs transcend the corporate form, and as a fallback should the Court find a fatal deficiency for any or each of the organizations, "The Satanic Temple" is reserved as an unincorporated association under Rule 17(b)(3)(A).

2. This amendment also restates the facts pleaded in the original complaint and incorporates the Court's order of partial dismissal: both as to the individual agents of the City and as to the State claims.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 USC §§ 1331 and 1343.

4. This Court has subject matter jurisdiction to issue declaratory judgments pursuant to 28 USC § 2201.

5. This Court has personal jurisdiction over the City.

6. Venue properly lies with this Court pursuant to 28 USC § 1391(b).

**PARTIES**

**Plaintiffs**

7. The Satanic Temple ("**TST**") is a nascent religious organization. See generally "FAQ" available at https://thesatanictemple.com/pages/faq (last visited Aug. 30, 2019); see also "Tenets" available at https://thesatanictemple.com/pages/tenets (last visited Aug. 30, 2019).

8. TST's organizational mission is to encourage benevolence and empathy among all people. See "Our Mission" available at https://thesatanictemple.com/pages/about-us (last visited Aug. 30, 2019). TST's function is to actively provide outreach, to lead by example, and to participate in public affairs wheresoever the issues might benefit from rational, Satanic insights. See "FAQ," above.

9. TST was recently the subject of a documentary, entitled "Hail Satan?" (2019) (Produced by Gabriel Sedgwick and directed by Penny Lane, 2019).

10. TST is organizationally complex. On the international scale, TST is given structure through The Satanic Temple, Inc., a Massachusetts corporation. The Satanic Temple, Inc. has been formally recognized as a tax-exempt religious organization under IRC § 501(c)(3). At the times relevant to this litigation, TST was given structure through United Federation of Churches, LLC (dba "The Satanic Temple,") a Massachusetts LLC.

11. On the local scale, TST is given structure through local chapters. Sometimes, but not always, a local chapter organizes into a formal entity. Currently, the Arizona Chapter is given structure through Adversarial Truth, LLC (dba "The Satanic Temple – Arizona Chapter.") At the relevant times of this litigation, the Arizona Chapter was simply "a voluntary group of persons, without an Arizona charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective." E.g. S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921 (9th Cir. 2014) (discussing unincorporated associations) and Cooke v. Town of Colo. City, No. CV 10-08105-PCT-JAT, 2013 U.S. Dist. LEXIS 190002 (D. Ariz. Sep. 30, 2013) (defining unincorporated associations).

12. At the times relevant to this litigation, Michelle Shortt was the chapter head of the Arizona Chapter of TST. As will be addressed in greater detail below, Ms. Shortt was precluded from inclusion in the City's otherwise all-comer policy of legislative invocations because of her religious beliefs. Ms. Shortt sought out participation in the City's legislative invocation in connection with her leadership position.

13. During the pendency of this litigation, Ms. Shortt has stepped down from her formal leadership role. Despite stepping down from this capacity, Ms. Shortt is still a self-identified Satanist and is formally recognized as a spokesperson for TST. Should the Court grant the relief sought in this complaint, Ms. Shortt would be the person to perform the prayer.

14. TST has members throughout Arizona. Some of these members reside in Scottsdale, Arizona. The claims asserted in this complaint do not require their participation, nor is their attendance necessary for the Court to grant the relief requested.

**Defendant**

15. The City of Scottsdale is an Arizona municipal corporation. Scottsdale is located within the Court's district. As will be more adequately detailed below, the City excluded Ms. Shortt from participation in an otherwise all-comer policy of legislative invocations because of her religion.

16. The City is comprised of various offices. Of importance to this litigation, offices include without limitation: the City Council, the Mayor, and the City Manager.

17. As a general principle, the City Council is vested with "all powers of the city" which is limited only as "imposed by the state constitution and this charter." See City Charter at Art. 1 § 2 (available at https://www.scottsdaleaz.gov/council/charter) (last visited Aug. 30, 2019); see also id. at Art. 2 § 17 ("Whenever, by any provisions of this charter, it is prescribed that any power, duty or procedure shall or may be exercised, performed or adopted in the manner established by any law of this state, and there be no procedure established by law therefor, then the council may prescribe the procedure.")

18. The City Council has direct supervisory authority over the City Manager. E.g. id. (the City Council "shall . . . appoint the city manager") and Art. 3 § 1 ("The council shall appoint as officers of the city the following: city manager") and Art. 3 § 2 ("[T]he city manager shall be responsible to the council for the proper administration of all affairs of the city, not otherwise assigned by this charter to another officer.")

19. The Mayor is a voting member on the city council. Charter at Art. 2 §§ 2 and 6.

## FACTS

**The City's legislative invocation practice**

20. For some time–it is still unclear exactly how long–the City has opened its city council meetings with religious invocations. The documents provided through summary judgment briefing sheds light on invocations going back to 2008.

21. Prior to July 6, 2016, nearly every participant in this ceremony was Christian. There are only two exceptions: Rabbis, religious leaders of the Jewish faith, and Susan Ducot, of the Bahá'í faith.

22. The Bahá'í faith is an Abrahamic religion, like Judaism, Christianity, and Islam. See Lawson, Todd (13 December 2012). Cusack, Carole M.; Hartney, Christopher, eds. "Baha'i Religious History." Journal of Religious History. 36 (4): 463–470. doi:10.1111/j.1467-9809.2012.01224.x. ISSN 1467-9809.

23. Speakers for the legislative prayer ceremony were selected from a list handed down to Ms. Kelli Kuester, an administrative employee in the Mayor's office.

24. At all times relevant to this litigation, no written policy formalized this process. Speakers came from the area in and around Scottsdale. Based on the City's exhibits in support of its motion for summary, at least 54 speakers came from outside the city limits of Scottsdale prior to Ms. Shortt's request. Those speakers are more adequately identified on **Exhibit 1** and are subject to distillation to a demonstrative exhibit which is yet to be created.

25. Ms. Kuester's role in arranging for invocations was to iteratively call individuals on the provided list and fill time slots for opening prayers. TST was the only group to proactively reach out and seek inclusion in the invocation.

### Ms. Shortt's request

26. On February 8, 2016, Michelle Shortt contacted Ms. Kuester by telephone to request placement of TST on the City's invocation schedule.

27. Ms. Kuester placed TST on the list, as she would have with any other religious organization willing to participate.

28. At that time, TST was still being treated as if it were any other religious organization. There was no internal investigation into Ms. Shortt, TST, or TST's connection with Scottsdale. Ms. Shortt was not informed of any prerequisites for participation. She was just put on the schedule.

29. Later, a scheduling conflict arose, so Ms. Kuester rescheduled Ms. Shortt's invocation for July 6.

30. After the rescheduling, Ms. Kuester informed the City's chief of staff (her direct supervisor) and the Mayor. Each told her that she had done the correct thing, "because I needed to treat them the way I would treat any other organization."

**The political outcry**

31. When news of the scheduling became public, one church sent "thousands of emails" which crashed the City's servers. In all, the City received about 15,000 emails objecting to TST's equal participation in the ceremony.

32. The members of the City Council took the–correct–impression that the law prohibits disparate treatment of TST because of religion; but they didn't like it. In a February 12 email to a voter, City Council member Kathy Littlefield states:
> [A]ccording to the Supreme Court's decision our choice is to allow it or discontinue all religious prayers at the beginning of the meeting. Personally, I like having the prayers, do NOT want the Satanists, and I think this is taking equality too far.

Doc. 1-1 at p. 2.

33. The same sentiment is reflected in a March 22 email from David Smith, another City Council member, to a voter:
> Please be assured I share your sentiments. I am informed permission was given, relying on a Supreme Court opinion that this '*religion*' is protected by the First amendment…an absurd notion, even if not surprising. I wish (and intend) my deliberations on Council to be blessed and guided by God alone.

Id. at p. 12 (mocking emphasis in original).

34. Suzanne Klapp, another City Council member, publicly stated "I do not welcome a Satanist group." Id. at p. 10. She announced that, if TST were permitted participation, she intended to leave the meeting. Id. This decision was rooted in her faith. Id. ("My faith tells me that this is the only action I can take.")

35. Councilmember Klapp also indicated that it was time for a rule to be established "about who can come and what kind of message is expected." Id.

**The denial**

36. Suzanne Klapp "expressed her concern" to the City Manager for the City allowing TST to participate in the ceremony.

37. Following that, the city manager "informed" Ms. Kuester that the City was revoking TST's invitation to participate. The City Manager made his decision to revoke TST's invitation

in absence of any investigation and without an opportunity for TST to explain that it had a "substantial connection" to Scottsdale.

38. Ostensibly, the basis of the preclusion was an absence of a "substantial connection to the Scottsdale community." Doc 1-1 at p. 14.

39. No other groups were scrutinized for their "substantial community ties." Until confronted with the fact that several speakers came from outside of Scottsdale, "substantial community ties" literally meant "inside Scottsdale city limits," with the sole exception of the Brophy High School, the only Jesuit high school in the area.

40. TST is the only group to have ever been denied participation.

41. It is odd that the direction came from the City Manager because Ms. Kuester did not report to the City Manager and was not even in his department. Ms. Kuester reported to the Chief of Staff, who reports to the Mayor.

42. It was not the City Manager's responsibility to schedule invocation participants. As explained by Brian Biesemeyer, the City Manager at the time, it was not even the City Manager's departmental function to schedule the speakers. Scheduling participants was done "out of the mayor's office," which "is separate from my office."

43. In his deposition testimony, the City Manager could not enunciate any factors or elements of "substantial connection." Nor could he recite any unique identifier that distinguished TST from the permitted participants, other than a perception that TST was only in Tucson. TST received special scrutiny because they are "unique."

44. Ms. Shortt was replaced with a Christian.

**The aftermath**

45. Following the denial, Mayor Lane took credit for stopping "so called 'Satanists' from mocking City Hall traditions with a 'prayer.'" Doc 1-1 at p. 17. As if it were not already abundantly clear, Mayor Lane stated the exact reasoning for revoking TST's invitation:

> In Scottsdale we 've decided to keep our **traditional invocations** and we've decided to send this **Satanist sideshow** elsewhere . . . Some say just let them do a 'Satanic Prayer' and walk out. That's

> not good enough.  Rather than walk out, **we're standing up to this ridiculing of religion**.  Some things are worth fighting for.

Id. at p. 22 (reelection campaign statement from Mayor Lane) (emphasis added).

46. Much later, the City apparently extended invitations to two new religions, one of which came from outside of Scottsdale and the other was Abrahamic (Islam).  Doc. 32-6 at p. 70 ("Phoenix Indian Center," referring to indigenous Americans), p. 80 (Muslim speaker), and p. 99 (same).

## CAUSES OF ACTION

## Count 1: Establishment Clause violation

47. As explained in Town of Greece, Governments cannot control the contents of legislative prayers and cannot, consistent with the Establishment Clause, discriminate among religions in the selection of speakers.  Id., 572 U.S. at 580 and 585-86.

48. The City discriminated against TST in the selection of its speakers.  Despite the City's pretextual policy requiring an undefined "substantial connection," the public statements denouncing TST from the City's highest offices betray the true reason for excluding Ms. Shortt from participation.  The Churchmembers, Councilmembers, and Mayor all objected to the "Satanists;" not the "Tucsonians."

49. The exclusion of Ms. Shortt from participation in the otherwise all-comer policy was "a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to the adherents that they are insiders, favored members of the political community."  Lynch v. Donnelly, 465 U.S. 668, 688 (1984) (O'Connor, J., concurring).

50. The City is liable under 42 USC § 1983 for violating Plaintiffs' Establishment Clause rights to be free from religious discrimination in the selection of legislative prayer speakers.

## Count 2: Equal Protection Clause violation

51. . The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike.  Plyler v. Doe, 457 U.S. 202, 216-17, 102 S. Ct. 2382, 2394 (1982).

52. The Equal Protection Clause presumes acts are unconstitutional if they disadvantage a "suspect class." Id.  A suspect class is one historically "relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process. Id., 457 U.S. at 217, fn. 14.  Legislation imposing special disabilities upon groups disfavored by virtue of circumstances beyond their control suggests the kind of "class or caste" treatment that the Fourteenth Amendment was designed to abolish.  Id.  Religion is a suspect class. Ass'n of Christian Sch. Int'l v. Stearns, 362 F. App'x 640, 646 (9th Cir. 2010).

53. Plaintiffs, being adherents of a minority religion, are the quintessential suspect class. The majoritarian political process wielded its considerable strength by coordinating a 15,000-email heckler's veto to preclude Ms. Shortt's participation in the legislative prayer.  Plaintiffs lack the numbers to vindicate their constitutional rights through the representative branches, they need the Court's protection.

54. The City is liable under 42 USC § 1983 for violating Plaintiffs' Equal Protection Clause rights to be free from religious discrimination in the selection of legislative prayer speakers.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiffs pray this Court enter an order as follows:

1. Declare that the City violated the Establishment Clause and Equal Protection Clause rights of the Plaintiffs by discriminating against TST in the selection of legislative prayer speakers.
2. Enjoin the City, and any person in active concert with the City, from denying TST participation in the legislative prayer ceremony.
3. Award Plaintiffs their reasonable costs, disbursements, and attorneys' fees from the City, pursuant to 42 USC § 1988.
4. Award all other relief as the Court finds just, pursuant to FRCP 54(c).

Respectfully submitted on August 30, 2019,
On behalf of Plaintiffs

By    /s/ Stuart P. de Haan                    and    /s/ Matthew A. Kezhaya
      Stuart P. de Haan,                              Matthew A. Kezhaya,

|  |  |
|---|---|
| AZ Bar No. 026664 | AR Bar No. 2014161 (*pro hac vice*) |
| Attorney for Plaintiffs | Attorney for Plaintiffs |
| de Haan Law Firm, PLLC | **Kezhaya Law PLC** |
| 100 N Stone Avenue, Suite 512 | 1202 NE McClain Rd |
| Tucson, Arizona  85701 | Bentonville AR 72712 |
| phone   (520) 358-4089 | (479) 431-6112 |
| fax       (520) 628-4275 | (479) 282-2892 |
| email    stu.dehaan@gmail.com | matt@kezhaya.law |

### CERTIFICATE OF SERVICE

I certify that on August 30, 2019 I electronically transmitted this document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the appropriate CM/ECF registrants.

/s/ Stuart de Haan

10