Firm E-Mail for Official Court Documents
courtdocs@dickinsonwright.com
Scot L. Claus (#014999)
sclaus@dickinsonwright.com
Vail C. Cloar (#032011)
vcloar@dickinsonwright.com
Holly M. Zoe (#033333)
hzoe@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, AZ 85004-4568
Phone: (602) 285-5000
Fax: (844) 670-6009
*Attorneys for City Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| The Satanic Temple, Inc. et al., | Case No. CV 18-00621-PHX-DGC |
| Plaintiffs, | |
| v. | **DEFENDANT CITY OF SCOTTSDALE'S MOTION TO DISMISS** |
| City of Scottsdale | |
| Defendant. | (Oral Argument Requested) |

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the City of Scottsdale (the "City") moves to dismiss the First Amended Complaint (Doc. 57) (the "FAC"). Plaintiffs' purported "nascent religious organization" is, in actuality, an amalgam of shambolic corporate entities with no explicable structure, no clear system of control, no unified belief system, and a secular purpose. Further, the proffered "invocation" was purely secular in nature, aimed only at promoting the ideal of "pluralism." Because of those deficiencies, Plaintiffs lack a cognizable or redressable injury under the Establishment Clause, and therefore lack Article III standing.

First, none of the Plaintiffs have suffered a concrete or redressable injury because the City's policy of opening City Council meetings with religious prayers cannot implicate the Establishment Clause if challenged by a non-religious organization that seeks to convey a purely secular message. Second, two of the Plaintiffs—The Satanic Temple, Inc. ("TST, Inc.") and

- 1 -

PHOENIX 53387-11 595023v7

Adversarial Truth, LLC ("Adversarial Truth")—*did not exist* prior to the acts giving rise to this litigation. Third, one of the Plaintiffs—United Federation of Churches, LLC ("UFC")—lacks standing because it is: (1) prohibited by law from maintaining a lawsuit in the State of Arizona; (2) is not a religion; and (3) has no obvious connection to Michelle Shortt or her invocation. Finally, the "unincorporated association" Plaintiff (the "Unincorporated Association") lacks standing and capacity to pursue claim in its own right under both Article III and Rule 17, and lacks associational standing to bring claims on behalf of its purported members.

This Motion is supported by the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Factual Background

In spite of the Court's directive that Plaintiffs reveal the real party in interest pursuant to Rule 17, Plaintiffs have instead come forward with *four* organizational parties: all of which are purely secular entities, two of which did not exist at any relevant time, two of which are not authorized to bring suit in this Court, and one of which is a group composed of a few members who organized to promote pluralism. To aid the Court's navigation of the turbid waters of Plaintiffs' making, we offer the following explanation of the historic facts.

### A. The Original Belief Structure

The concept Plaintiffs refer to as "The Satanic Temple"—which Plaintiffs assert comprises a "nascent religion"—began life as a film project by two principals named Doug Misicko aka Lucien Greaves, and Cevin Soling aka Malcolm Jarry.[1] [*See* Rule 30(b)(6) Deposition of Adversarial Truth, attached as Exhibit A, at 50:24–25; *see also* Huffington Post, "*Satanists for Rick Scott" Rally Actually Part of Mockumentary*, https://www.huffpost.com/entry/satanists-rally-for-rick-scott_n_2471328 (last visited October 3,

---

[1] Those two individuals control UFC and TST, Inc.

2019).[2]] The result of that film project was an amorphous constellation of entities created over several years, which Plaintiffs imprecisely refer to collectively as "The Satanic Temple." [FAC ¶¶ 1, 7.]

Plaintiffs purportedly believe in "Satanism." [*See* Rule 30(b)(6) Dep. of The Satanic Temple, Inc., attached as Exhibit B, at 36:9–15.] However, Plaintiffs' actual beliefs are (at best) entirely unclear. As late as April 2014, the website owned and operated by UFC—and the only website of The Satanic Temple—described a belief in a literal God, a literal Satan, and a particular supernatural division of power between the two:

> The Satanic Temple believes that God is supernatural and thus outside of the sphere of the physical. God's perfection means that he cannot interact with the imperfect corporeal realm. Because God cannot intervene in the material world, he created Satan to preside over the universe as his proxy. Satan has the compassion and wisdom of an angel. Although Satan is subordinate to God, he is mankind's only conduit to the dominion beyond the physical. In addition, only Satan can hear our prayers and only Satan can respond. While God is beyond human comprehension, Satan desires to be known and knowable. Only in this way can there be justice and can life have meaning.

[Rule 30(b)(6) Deposition of UFC, attached as Exhibit C, at 44:14–45:4; Ex. A at 36:7–23.] Mr. Misicko actively solicited members and spoke on behalf of that entity while that entity espoused the idea of a literal Satan. [Ex. A at 55:9–60:6.]

Despite the recent provenance of that belief system, both Ms. Shortt and Mr. Misicko have repudiated that belief structure. [Ex. C at 43:4–20; Ex. A 33:16–34:8.] Plaintiffs now contend that their operative belief structure is predicated upon the *absence* of supernatural powers, deities, or a literal Satan. [Ex. C at 43:11–20; Ex. A at 34:20–35:8.] However, UFC does not know how many of its "members" adhere to that *prior* supernatural system of beliefs. [Ex. C at 52:21–53:1]. Nor does Ms. Shortt. [Ex. A at 42:12–45:9, 54:12–60:6.] UFC promoted a "belief system" that articulated no dogma and no authoritative scripture but merely articulated

---

[2] That "mockumentary" was complete with casting calls for its movie "about [the] nicest Satanic Cult in the world. We are looking for actors for 8 speaking roles to play minions as well as 10 featured extras . . . . Actors will be required to wear tasteful Satanic garb." *Id.*

- 3 -
PHOENIX 53387-11 595023v7

"tenets." From January 2013 until at least April 2014, UFC promoted "nine fundamental tenets—with nine being a significant Satanic number." Demonstrating the plasticity of its purported belief, UFC replaced the original nine tenets with seven.[3] [*Id.* at 47:6–49:5.]

### B. The Massachusetts Entities

#### 1. United Federation of Churches, LLC

Plaintiffs assert that the Satanic Temple existed in corporate form at all times relevant to this litigation via UFC [FAC ¶ 10], which holds the intellectual property, logos, website, and ideology that comprise the Satanic Temple.[4] [Ex. C at 30:21–31:7.] UFC is a Massachusetts limited liability company, and is not authorized to do business in Arizona. [Ex. C at 29:6–20.]

From its inception, UFC has never been a religious organization, but was formed for "educational activities." [*See* 2014 Mass. LLC Cert. of Org., attached as Exhibit E, at ¶ 3; 2015 Annual Report, attached as Exhibit M; 2016 Annual Report, attached as Exhibit F, at ¶ 3; 2017 Annual Report, attached as Exhibit G, at ¶ 3.] Indeed, a recent amendment reaffirmed that UFC was formed for "educational activities," and updated its mission to include "conducting the sale of any merchandise and literature, and any and all activities." [2018 Mass. LLC Restated Cert. of Org., attached as Exhibit H, at ¶ 3.]

The only filing by UFC that mentions the word "religion" is its 2019 annual report, filed on February 5, 2019. [2019 Annual Report, attached as Exhibit I; Ex. C at 29:2–7.] That report—filed under penalty of perjury—does not indicate that UFC is an entity promoting a religion or Satanism, but instead that it seeks to promote the secular ideals of "reason and empathy and religious pluralism and sell merchandise [sic]." [*Id.*, at ¶ 3.]

The "membership" criteria are not steep; one need not be a Satanist to join, nor provide their real name. [Ex. C at 15:6–12, 58:11–18.]. The UFC website indicates that, to become a

---

[3] Ironically, only one "fundamental" tenet remains from the original nine. [*Id.* at 47:6–49:5.]
[4] Indeed, UFC vigorously protects those intellectual property rights as would any other business. For example, UFC brought suit against Netflix for use of a copyrighted statute of

- 4 -
PHOENIX 53387-11 595023v7

member of the Satanic Temple, one need only enter an e-mail address and hit a button labeled "Become a TST Member." See UFC, *Join the Satanic Temple*, https://forms.omnisrc.com/signup/v1/5cd0983e8653ed3e50c948e1_5cd09af88653ed76f6e714f7.html (last visited October 2, 2019).[5] The Rule 30(b)(6) designee of UFC does not know how many members, if any, resided in Scottsdale as of February 8, 2016. [Ex. C at 13:3–20.]

UFC sometimes recognizes local groups that are loosely affiliated with that entity. [Ex. C at 55:9–25, 56:1–13.] These local groups are autonomous, set their own membership criteria, and establish their own rules, yet they are referred to as "chapters." Importantly, those local chapters are not authorized to speak on behalf of UFC, or to use its intellectual property, without prior authorization. [*Id.*] According to UFC, there was no written authorization for Ms. Shortt to speak on behalf of that entity prior to February 8, 2016, nor is there any evidence of authorization from UFC's manager, Mr. Soling. [Ex. C at 39:4–13.]

### 2. The Satanic Temple, Inc.

Messrs. Soling and Misicko later decided to form a second entity, TST, Inc., and to seek tax-exempt status from the Internal Revenue Service. [*Id.* at 9:4–9, 30:21–31:7; Ex. B 33:1–17, 35:5–12.] That entity was not formed until November 14, 2017. [Ex. B at 12:22–13:11.]

Unlike UFC, TST, Inc. was specifically organized as a religious organization under Massachusetts law, promoting beliefs, holding events regarding those beliefs, and mutual support of its members. TST, Inc. does not hold any of the intellectual property associated with the Satanic Temple, and UFC has never transferred those interests to TST, Inc. [*Id.* at 26:19–27:2, 28:7–29:9.] TST, Inc. is in no sense a "successor" entity,[6] but a new and different entity that appears to be organized to accept tax-free donations. [*Id.* at 33:15–17.]

---

Baphomet in the U.S. District Court for the Southern District of New York. [*See* Complaint in S.D.N.Y. Case No. 18-cv-10372, attached as Exhibit D.]
[5] An "official" membership card costs $25.00 and is non-refundable.
[6] Messrs. Misicko and Soling also established another entity called Reason Alliance Ltd, to accept donations without using TST, Inc. [*See* Reason Alliance, Ltd. Articles of Org., attached

- 5 -

### C. The Arizona Entities

#### 1. The Unincorporated Association

Separate from the activities of Mr. Misicko and Mr. Soling, sometime in early 2016—about a month before the attempted invocation—a group of individuals met at a pizza parlor in Tucson for the sole purpose of promoting pluralism. [Deposition of The Satanic Temple, a voluntary unincorporated association, attached as Exhibit J, at 8:9–14.] Ms. Shortt was not at that initial meeting, although Mr. de Haan, Plaintiffs' counsel, was. [*Id.* at 8:15–9:2.] That entity had no official affiliation, and there was no written confirmation that the group was authorized to speak on behalf of UFC. [Ex. C at 35:26–36:22.]

No one in the group comprising the Unincorporated Association lived in Scottsdale. [*Id.* at 21:18–22.] Further, none of the individuals elected Ms. Shortt or Mr. de Haan to a leadership position, and joining that group was permissible only at the whims of Ms. Shortt and Mr. de Haan. [*Id.* at 15:24–16:3, 19:4–16; Ex. A at 47:1–12.]

The beliefs of the group—as one would expect of a group promoting pluralism—varied. Some of the members adhered to the belief that there are no supernatural forces and Satan is a mere literary figure, i.e., the current belief espoused by UFC. [Ex. J at 26:6–28:15.] Some of those members, however, were adherents of LeVeyan Satanism, which is the belief in a literal figure of Satan, and the ability to affect change in the world through the power of "magick." [*Id.*]

In August 2016, Ms. Shortt as "chapterhead" signed something denominated as an "affiliate agreement" with UFC, although it was not countersigned by Mr. Soling or Mr. Misicko. [*See* Affiliate Agreement, attached as Exhibit L; Exhibit J at 29:11–29:21.]

#### 2. Adversarial Truth

In April 2017—more than a year after the unincorporated of persons sought to give an

---

as Exhibit K; *see also* UFC, *About Us*, https://thesatanictemple.com/pages/contact (last visited Oct. 3, 2019).]

- 6 -

invocation for the secular purpose of "pluralism"—Mr. de Haan and Ms. Shortt formed Adversarial Truth. Ms. Shortt remains the manager of Adversarial Truth but has, however, resigned her leadership position during the pendency of the litigation.

### D. The Attempted Invocation

Plaintiffs contend that "Michelle Short contacted [the City] by telephone to request placement of TST on the City's invocation schedule." [FAC ¶ 26.] But Plaintiffs had no "Arizona Chapter" in early February 2016. Instead, the Unincorporated Association—the six people that met at the Tucson pizza parlor and Ms. Shortt—attempted to give an invocation for the sole purpose of promoting pluralism. [Ex. J at 7:18-8:14.] Ms. Shortt previously testified under penalty of perjury (to avoid summary judgment) that *she* requested to give the invocation. [Doc. 33-3, ¶ 8.] That is false. Ms. Shortt did not request to give an invocation—she had no interaction with the City or its agents at any point. [Ex. J at 21:22–23:16.] Instead, another individual, Jeremy Zarzycki, communicated with the City. [*Id.* at 24:4–13.] However, Ms. Shortt does not know whether Mr. Zarzycki mentioned "Satanism" or any religion whatsoever. [*Id.* at 17:8–18:20]. Ms. Shortt—the Rule 30(b)(6) designee—had no knowledge of what Mr. Zarzycki requested other than to give "an invocation." [*Id.* at 24:4–25:11.]

The City ultimately determined that the entity that was attempting to give the invocation lacked any connections to the City, and declined to permit it to give an invocation. This revocation—or the denial of the opportunity to give the invocation—is the injury that gives rise to this litigation. [*See, e.g.*, FAC at ¶¶ 47–54.]

## II. Plaintiffs lack standing to assert their claims.

The Supreme Court in *American Humanist* recently confirmed that there will not be a "grand unified theory of the Establishment Clause." *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2087 (2019). Instead, the Court has indicated that federal courts must take "a more modest approach that focuses on the particular issue at hand and looks to history for guidance." *Id.*

Heeding this counsel, and for the reasons that follow, the inescapable conclusion is that no plaintiff in this action has standing to maintain an Establishment Clause claim targeting the City's legislative prayer policy because they have not suffered an injury that is either cognizable or capable of redress under the Establishment Clause of the First Amendment. First, Plaintiffs have suffered no injury because, even assuming that all Plaintiffs had some interest in the attempted invocation (and they did not), the invocation offered was not "religious," but purely secular in nature, and falls outside of the protectable interests recognized under longstanding law. Second, neither Adversarial Truth nor TST, Inc. even *existed* at the time of the alleged injury, and cannot have suffered an injury as a matter of historic fact. Third, UFC did not attempt to offer an invocation in any sense. Finally, the Unincorporated Association is not a proper party under Rule 17, does not have standing to sue in its own right, and lacks associational standing.

### A. Plaintiffs lack standing to raise an Establishment Clause challenge because their actions were not religious.

#### 1. Legislative prayer is unique and implicates unique rules of standing.

To establish standing, Article III requires a plaintiff to show the convergence of three elements: (1) the plaintiff just have suffered an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Additionally, to have standing, a plaintiff's complaint must implicate "the zone of interest to be protected or regulated by the . . . constitutional guarantee in question." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982). Thus, as a threshold matter, where a party claims religious discrimination in violation of the Establishment Clause a court must determine whether the claim falls "within the ambit of the First Amendment" to determine whether a plaintiff has standing. *United States v. Ward*, 989

PHOENIX 53387-11 595023v7

F.2d 1015, 1017 (9th Cir. 1992); *see also Valley Forge*, 454 U.S. at 475.[7]

A First Amendment claim based upon suppression of religious beliefs does implicate the Establishment Clause unless it is predicated upon beliefs that are *religious*, as opposed to secular, in nature. *See, e.g.*, *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972) (secular values "however virtuous and admirable" do not implicate the Religion Clauses of the First Amendment); *Thomas v. Review Board of Ind. Emp't Sec. Div.*, 450 U.S. 707, 713 (1981) (explaining that the First Amendment's religion clauses protect "[o]nly beliefs rooted in religion"); *Barker*, 921 F.3d at 1130 (explaining that the Establishment Clause counsels only non-discrimination between religious sects in legislative prayer setting); *Williamson v. Brevard County*, 928 F.3d 1296, 1299 (11th Cir. 2019) (same). Indeed, it is "incumbent" upon the courts to ensure that access to a federal court for such a claim is "granted only when the threatened belief is religious in nature." *Callahan v. Woods*, 658 F.2d 679, 685 (9th Cir. 1981). Mere offense at a legislative prayer practice is insufficient to confer standing. *See Am. Humanist Ass'n*, 139 S. Ct. at 2100 (Gorsuch, J., concurring).

These lessons take on added weight in the context of legislative prayer, which has been long recognized and affirmed. *Marsh v. Chambers*, 463 U.S. 783 (1983) (affirming Nebraska Legislature's practice of beginning each session with a prayer delivered by chaplain); *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 575 (2014) (affirming practice of beginning town board meeting with a prayer delivered by local clergyman).

In finding legislative prayer constitutional, the Supreme Court has relied on its unique place in American history. Legislative prayer dates back to the drafting of the First Amendment: "On September 25, 1789, three days after Congress authorized the appointment

---

[7] Despite the D.C. Circuit's conclusion that the ability of a secular group to give an invocation is a substantive, as opposed to standing, question in *Barker*, 921 F.3d 1118 (D.C. Cir. 2019), that analysis disregards the admonition that a plaintiff must fit within the zone of interest protected by the Establishment Clause to have standing in the first instance. *Valley Forge*, 454 U.S. at 475. Indeed, *Barker* does not reference, let alone discuss *Valley Forge*. Thus, the D.C. Circuit's conclusion that a standing analysis is improper is analytically incorrect.

- 9 -

of paid chaplains, final agreement was reached on the language of the Bill of Rights. . . . Clearly the men who wrote the First Amendment Religion Clause did not view . . . opening prayers as a violation of that Amendment, for the practice of opening sessions with prayer has continued without interruption ever since that early session of Congress." *Marsh*, 463 U.S. at 788 (internal citations omitted); *see also Am. Humanist Ass'n*, 139 S. Ct. at 2087 (observing that "the Court found it highly persuasive that Congress for more than 200 years opened its sessions with a prayer and that many state legislatures had followed suit.").

This is so *despite* it being clear "that prayer is by definition religious." *Id.* Indeed, courts readily acknowledge that religion occupies a place in our governmental institutions. *Town of Greece*, 134 S. Ct. at 1819; *Bormuth v. County of Jackson*, 870 F.3d 494, 503 (6th Cir. 2017) ("The Supreme Court has recognized we are a religious people whose institutions presuppose a Supreme Being." (internal quotation, citation, and alteration omitted)).

Since then, the only limitation on legislative prayer at municipal council meetings imposed by the courts is an obligation to treat various *religious* groups fairly. *See e.g.*, *Williamson*, 928 F.3d at 1299 (finding unconstitutional process for selecting invocation speakers where process preferred monotheistic religions over other religions, and specifically declining to reach the question of "whether atheists and secular humanists must be allowed to deliver non-theistic invocations"). Indeed, the Court in *Williamson* explained:

> We know that the clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another. To that end, the Supreme Court has long adhered to the principle, clearly manifested in the history and logic of the Establishment Clause, that no State can pass laws which aid one religion or that prefer one religion over another. Simply stated, *the government must be neutral when it comes to competition between sects*.

*Williamson*, 928 F.3d at 1305 (internal alterations, quotations, and citations omitted) (emphasis added).

Courts have readily rejected any notion that a secularist or an atheist is entitled to deliver an invocation. In *Barker*, the D.C. Circuit held that the House of Representatives'

- 10 -
PHOENIX 53387-11 595023v7

decision to limit its invocation to religious prayer comported with *Town of Greece* and *Marsh* because:

> although the Court has warned against discriminating among religions or tolerating a pattern of prayers that proselytize or disparage certain faiths or beliefs, it has never suggested that legislatures must allow secular as well as religious prayer. In the *sui generis* context of legislative prayer, then, the House does not violate the Establishment Clause by limiting its opening prayer to religious prayer.

*Barker*, 921 F.3d at 1130. Likewise, the Third Circuit reached the same conclusion in *Fields*:

> whether atheism is a "religion" for First Amendment purposes is a . . . different question than whether its adherents believe in a supreme being. And only the latter question—the existence of a high power to whom one can pray for divine guidance in lawmaking—is a necessary element of traditional legislative prayer. The nontheists here may be members of "religions" for First Amendment purposes, but, because they do not proclaim the existence of a higher power, they cannot offer religious prayer in the historical sense.

*Fields v. Speaker of Pa. House of Representatives*, 936 F.3d 142, 153–54 (3d Cir. 2019) (internal quotations and citations omitted).

### 2. Plaintiffs lack standing because they are not a religion capable of suffering the injuries alleged.

Here, because Plaintiffs have alleged that they were discriminated against in violation of the Establishment Clause, a threshold consideration for invoking the Court's jurisdiction is whether the Plaintiffs' injury falls within the sphere of conduct protected by the Establishment Clause. *Yoder*, 406 U.S. at 215–16; *Valley Forge*, 454 U.S. at 475; *Callahan*, 658 F.2d at 685. Plaintiffs cannot satisfy this threshold inquiry.

As the *Fields* court explained, belief in a supreme being is "a necessary element of traditional legislative prayer." *Id.* None of the Plaintiffs in this action have articulated any belief in a supreme being, and in fact, have expressly disclaimed any such belief. Ms. Shortt was unequivocal in stating that the secular ideal of "pluralism"—not any religion—was the purpose for which the Unincorporated Association attempted to give the invocation. Had Ms. Shortt requested to give an "invocation" on behalf of an environmental advocacy group, an

- 11 -

animal rights group, or a book club, she would just as obviously lack an injury in fact as required by Article III—and fall outside the interests protected by the Establishment Clause. *Valley Forge*, 454 U.S. at 475.[8] Because having religious beliefs is a threshold prerequisite to assert a religious prayer Establishment Clause claim, Plaintiffs lack standing to press their claims before the Court. *Id.*

### B. Adversarial Truth and TST, Inc. further lack standing because they did not exist at the time of alleged "injury."

To demonstrate an injury in fact, a plaintiff must demonstrate that the injury is both "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted). Stated simply, the "party seeking review must allege facts showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972).

Here, both TST, Inc. and Adversarial Truth fail this essential test. Neither entity existed on February 6, 2016: Adversarial Truth LLC was not incorporated until April 2017, and TST Inc. was not incorporated until November 2017. This simple fact is fatal to TST, Inc. and Adversarial Truth's standing. Because "the 'injury in fact' test requires . . . that the party seeking review be himself among the injured, *id.*, TST Inc. and Adversarial Truth fail the first prong of the constitutional test for standing.

### C. UFC lacks standing because it did not attempt to give an invocation and is unauthorized to do business in Arizona.

Even assuming *arguendo* that UFC is "The Satanic Temple," which is unclear at best, it has no standing to bring a claim because it has suffered no cognizable injury. *Sierra Club*, 405 U.S. at 740. First, UFC is unauthorized to transact business in the State of Arizona, and could neither properly give an invocation, nor initiate suit before this Court. A.R.S. §§ 10-

---

[8] Such speech, by definition, would not constitute an "invocation," because Ms. Shortt would not have been "invoking or calling upon a deity, spirit, etc. for aid, protection, inspiration, or the like." The Random House Dictionary of the English Language, Unabridged Ed. (1973).

- 12 -

1501(A), 1502(A); Fed. R. Civ. P. 17(b)(3). UFC simply lacks the capacity to prosecute this litigation before the Court in the first instance.

Second, UFC never attempted to give an invocation prior to a City Council meeting. Instead, a member of the Unincorporated Association, Jeremy Zarzycki, reached out to the City and requested the City permit that entity to give an invocation. UFC was never denied the opportunity to do anything, and has no injury.

Finally, there is no evidence of any agreement between UFC and the Unincorporated Association authorizing any person to give an invocation on behalf of UFC. The evidence demonstrates that the invocation merely sought to advance the secular ideal of pluralism, *not* to advance or set forth any of the "fundamental tenets" that are the intellectual property of UFC. Simply stated, there is no basis from which the Court could conclude that UFC has suffered any cognizable harm sufficient to confer Article III standing.

### D. The Unincorporated Association lacks standing.

Perhaps in recognition that each of the corporate Plaintiffs either lacks standing or capacity (or both) to maintain this action, Plaintiffs' FAC alleges the existence of a "voluntary group of persons, without an Arizona charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective" called "The Satanic Temple – Arizona Chapter." [FAC ¶ 11.] Plaintiffs contend that Ms. Shortt was the "chapterhead" of this Unincorporated Association at the time it sought to give the invocation at the Council Meeting. [FAC ¶ 12.] The Unincorporated Association does not have standing or capacity in its own right, nor can it rely on associational standing.

#### 1. The Unincorporated Association is not a proper party under Rule 17.

The Unincorporated Association lacks capacity to sue pursuant to Rule 17 of the Federal Rules of Civil Procedure. Rule 17(b)(3)(A) permits an "unincorporated association" to sue "in its common name" to enforce existing rights under certain circumstances. However,

- 13 -

to do so, a group of people must meet the definition of "incorporated association" under federal law, which the Unincorporated Association cannot do.

A group is an unincorporated association when it is a "voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 927 (9th Cir. 2014). Fundamentally, the Unincorporated Association here cannot satisfy this definition. To have capacity to sue as an unincorporated association, there must be some evidence that members of the Unincorporated Association consented to the formation of the group for a common purpose which is being advanced through litigation. The evidence adduced during discovery reveals no indication that the Unincorporated Association was "formed by mutual consent for the purpose of promoting a common objective" that had a "religious" purpose.

Indeed, the evidence compels the opposite conclusion. Indeed, Ms. Shortt did not know when members of that "unincorporated" group became members of The Satanic Temple. [Ex. A at 26:7–29:1.] The "members" of this group did not need to be practicing Satanists. [*Id.* at 32:16–33:2.] Moreover, those that were "Satanists" did not have "common" beliefs. Ms. Shortt admits that she and others believed in "magick" which had supernatural powers, while others did not. [Ex. J at 27:7–28:15.] In fact, Ms. Shortt's purported "co-council" member, Stu de Haan, viewed "Satanism" as nothing more than a "sociopolitical counter-method." HAIL SATAN? (Magnolia Pictures 2019) at 59:17–59:27. Ms. Shortt: (a) admits that there is "a difference between a religion and a sociopolitical counter-method" [Ex. A at 30:21–31:1]; and (b) does "not agree" with those (e.g., Mr. de Haan) who hold such beliefs.

Ms. Shortt admitted that no one in the unincorporated association authorized or agreed for Ms. Shortt to give any invocation; instead "the council decided" she should be the one to give the invocation; but the "council" does not represent the group's will because the council was hand-picked by Ms. Shortt and Mr. de Haan, *not* the members of the group. [Ex. J at 15:8–15:15; 18:21–19:3.] And Ms. Shortt acknowledged that no "member" of the group

- 14 -

authorized her to bring this litigation. [*Id.* at 7:18–22.] These facts undermine any possibility that the group of people comprising the Unincorporated Association formed to promote or pursue a "common" religious objective or that they "mutually consent[ed]" to a common purpose that is being vindicated through this litigation.

In any event, the cases that hold an unincorporated association has capacity to sue have done so at least in part because each previously existed as a corporation. *See, e.g.*, *Zaffina*, 762 F.3d at 927; *Comm'n. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 819 (9th Cir. 1996); *Sierra Ass'n for Env't v. F.E.R.C.*, 744 F.2d 661, 662 (9th Cir. 1984). This is not a case where the unincorporated association once existed as a legally recognized entity, but lost its corporate status through some clerical formality. Therefore, those cases are inapposite.

### 2. The Unincorporated Association lacks standing to pursue claim on its own behalf.

The Unincorporated Association lacks standing in its own right and therefore cannot maintain this action. The "injury-in-fact" requirement of Article III standing "necessitates a showing of 'an invasion of a legally protected interest' that 'affect[s] the plaintiff in a personal and individual way.'" *Fleck & Associates, Inc. v. Phoenix, City of, an Ariz. Mun. Corp.*, 471 F.3d 1100, 1104 (9th Cir. 2006) (quoting *Lujan*, 504 U.S. at 560 & n. 1). There are no "special exceptions" to these requirements in the context of an establishment clause case. *See Valley Forge*, 454 U.S. at 488 (rejecting the argument that Establishment Clause cases create any "special exceptions" to the requirements of Article III standing).

To the extent that the FAC's allegations plead a viable injury, that injury does not belong to the Unincorporated Association because it is not a religious group that sought to give an invocation. In fact, the Unincorporated Association is not a religious organization at all—it is a group of seven friends who meet at a pizza parlor and concerts. [Ex. J at 11:17–12:7; Ex. A at 23:16–24:7.] Its common purpose is not religious but rather "to uphold pluralism in lieu of secularism." [Ex. J at 7:23–8:12.]

PHOENIX 53387-11 595023v7

Indeed, the Unincorporated Association specifically and expressly lacks a shared religious belief: Ms. Shortt testified that the some of the individuals in the Unincorporated Association adhere to principles of LaVeyan Satanism which, as discussed above, include a belief in "magick." LaVeyan Satanists believe that magick can "invoke supernatural or otherworldly powers . . . to effect change in the world," even though the belief that one could use supernatural powers to intercede in the corporeal realm is "antithetical to the beliefs promoted by The Satanic Temple." [Ex. J at 27:7–28:15.] Others openly eschew all pretext of "religion," and view "Satanism" as nothing more than a "sociopolitical counter-method," which is *not* a "religion." [Ex. A. 30:21–31:5.]

Simply put, even if "Satanism" were a religion and the denial of the opportunity for a "Satanist" to give an invocation could constitute an injury, the Unincorporated Association is not such a religious group—it is a group of friends with differing views of Satanism (described as "antithetical" to each other) who bonded over the idea of promoting the purely secular goal of pluralism. Because the injury alleged in the FAC does not belong to the Unincorporated Association, the Unincorporated Association cannot satisfy Article III's requirement for a live case-or-controversy.

### 3. The Unincorporated Association lacks associational standing.

Nor can the Unincorporated Association assert associational standing on behalf of its "members." An organization "has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003).

The Unincorporated Association cannot satisfy the *Hunt* test because it "members" lack sufficient indicia of membership in the organization. Indeed, the Unincorporated

Association bears little resemblance to a membership organization that may represent the interests of its members. For example, in *Hunt*, the Supreme Court affirmed the Washington State Apple Advertising Commission's standing to assert apple growers' interests despite not being a "traditional trade association" because the apple growers regardless "possess[ed] all of the indicia of a membership in an organization. They alone elect the members of the Commission; they alone serve on the Commission; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them." *Hunt*, 432 U.S. at 344–45. And therefore, the Commission was the vehicle through which apple growers "express[ed] their collective views and protect[ed] their collective interests." *Id.* at 345.

The Unincorporated Association has none of the hallmarks of a membership organization as articulated by *Hunt*. At best, Plaintiffs have offered the conclusory and self-serving allegation that the group is composed of members. But this allegation is not borne out by the evidence. First, the Unincorporated Association's "members" do not pay membership dues. [Ex. J at 16:21–17:2.] Nor do the "members" elect their leadership. [*Id.* at 18:21–19:2.] Instead, Ms. Shortt and Mr. de Haan appoint leadership as authorized by Messrs. Misicko and Soling [*Id.* at 19:4–10.] And the Unincorporated Association is not a vehicle through which its "members" "express their collective views and protect their collective interests," *Hunt*, 432 U.S. at 345, because "members'" views are antithetical to each other with respect to what kind of "Satanism" they believe in, [*id.* at 27:7–28:15], and the "members" of the group have no control over who leads them. [*Id.* at 19:4–10.]

### III. Conclusion

Plaintiffs cannot meet their burden of establishing standing to pursue Establishment Clause claims. Therefore, Plaintiffs cannot meet their burden of demonstrating that the Court has subject matter jurisdiction. For these reasons, and for the reasons stated above, the Court should dismiss the FAC with prejudice.

PHOENIX 53387-11 595023v7

**RESPECTFULLY SUBMITTED** this 4th day of October, 2019.

**DICKINSON WRIGHT PLLC**

By: */s/ Scot L. Claus*
    Scot L. Claus
    Vail C. Cloar
    Holly M. Zoe
    1850 North Central Avenue, Suite 1400
    Phoenix, Arizona 85004-4568
    *Attorneys for City Defendants*

PHOENIX 53387-11 595023v7

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 4th, 2019, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

                        By: */s/ Sheila Rath*