courtdocs@dickinsonwright.com
Scot L. Claus (#014999)
Vail C. Cloar (#032011)
Holly M. Zoe (#033333)
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, AZ  85004-4568
Phone: (602) 285-5000
*Attorneys for Defendant City of Scottsdale*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| The Satanic Temple, Inc. et al.,<br><br>              Plaintiffs,<br>v.<br><br>City of Scottsdale,<br><br>              Defendant. | Case No.  CV 18-00621-PHX-DGC<br><br>**DEFENDANT CITY OF SCOTTSDALE'S  REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>(Oral Argument Requested) |

Plaintiffs cling to the misguided notion that a non-entity may sue for a violation of the Establishment Clause arising from a legislative prayer practice regardless of whether: (1) whether the entity existed at the time of the alleged harm; (2) whether it represents any particular religion; (3) or whether its purported members adhere to any particular set of beliefs. Unsurprisingly, that is not the law. Plaintiffs' case is dependent upon the fictive narrative that something called "The Satanic Temple" both sought, and was denied, the opportunity to give an invocation prior to a 2016 City Council meeting. But that is not true as a matter of historic fact. There is no monolithic entity called "The Satanic Temple," and no such entity attempted to deliver anything resembling an "invocation" that is entitled to protection under the Establishment Clause. Simply put, no Plaintiff has standing to sue, and this Court lacks subject matter jurisdiction.

**I.     Plaintiffs misapprehend the law of standing.**

Plaintiffs' standing analysis flows from two essential fallacies. First, Plaintiffs assert that the Court must construe all facts in the FAC as true when analyzing whether they have

- 1 -

standing. [Response at 2, 16.] Second, Plaintiffs apparently believe that if one Plaintiff has standing, then all of the Plaintiffs have standing. [Response at 4.] Both assertions are wrong.

### A.  Plaintiffs have failed to meet *their burden* to establish standing.

There is a well-settled presumption against federal court jurisdiction, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006), and "the party asserting jurisdiction has the burden of establishing it if his allegations are challenged in any appropriate manner." *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967); *see also Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016) (explaining that the plaintiff, "as the party invoking federal jurisdiction," bears the burden of establishing elements of standing). Plaintiffs do not attempt to meet this burden.

Instead, Plaintiffs incorrectly assert that the Court must accept their alleged facts as true. [Response at 2, 16.] However, "attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch. Dis. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Thus, on a factual challenge to standing, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

Here, the City has offered significant evidence demonstrating that Plaintiffs lack standing, including: (1) TST, Inc. and Adversarial Truth's non-existence at any relevant time; (2) the absence of any authorization for Ms. Shortt to speak on behalf of any entity or group; (3) UFC's inability to lawfully transact business in Arizona; (4) the purely secular purpose of the alleged "invocation;" and (5) the absence of any "religion" that can suffer an injury from a legislative prayer. The *only evidence* that Plaintiffs offered in response is a document reflecting that TST, Inc. was recently deemed by the IRS to be eligible for tax-exempt status.

[Doc. 65-1.] But that treatment is completely unresponsive to any standing defect because TST, Inc. *did not exist* at any relevant time. Plaintiffs have utterly failed to meet their burden.

### B. Plaintiffs cannot bootstrap standing.

Plaintiffs obstinately insist that all named Plaintiffs necessarily have standing as something called "TST." But "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Instead, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017); *see also Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) ("A *plaintiff's* remedy must be tailored to redress the *plaintiff's* particular injury." (emphasis added)). Plaintiffs cannot rely upon a harm allegedly suffered by one of them to grant standing to all. Instead, Plaintiffs bore the burden to demonstrate—as to *each plaintiff*—that *each* may pursue a remedy based on the particular injury suffered by that Plaintiff. *Gill*, 138 S. Ct. at 1934. Plaintiffs' failure to do so is fatal to their claims.

Plaintiffs' misunderstanding of the doctrine is highlighted by their reliance upon *Naruto v. Slater*, 888 F.3d 418 (9th Cir. 2018), asserting that "[i]f a monkey has standing to sue for copyrights (sic) to its selfies," Plaintiffs must have standing here. [Response at 6.] Perspective is required. First, the challenge to standing in *Naruto* was a *facial challenge* to standing, which merely asserted that there were insufficient facts alleged to establish standing. *Id.* at 420. Second, in *Naruto*, there was a specific and identifiable plaintiff (Naruto, the monkey) with a specific and identifiable alleged harm (wrongful use of copyrighted work). Such simple identification of parties and claims continues to elude Plaintiffs. If a monkey is held to the rigors of Article III, Plaintiffs should be as well.

### II. Adversarial Truth, TST, Inc., and UFC are not proper plaintiffs.

#### A. Adversarial Truth and TST, Inc. did not exist.

An injury in fact requires that a plaintiff demonstrate "the invasion of a legally protected interest," that is "concrete and particularized" and neither "conjectural nor

- 3 -

hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A putative plaintiff must demonstrate that "he is himself adversely affected" by some action by the defendant. *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972).

The Unincorporated Association sought to give an invocation in February 2016, and was ultimately refused in May 2016. [Doc. 1-1, Ex. 7.; Doc. 57 at 5 ¶ 26.[1]] Adversarial Truth was not organized until nearly a year later (April 2017).[2] [Doc. 63-1, Ex. A at 9:3–11.] And TST, Inc. was not incorporated until more than a year after the events giving rise to this litigation (November 2017). [Doc. 63-1, Ex. B at 12:22–13:11.] It is impossible as a matter of historic fact for those entities to have suffered an "invasion" of a legally protectable interest; an entity that does not exist manifestly has no protectable interest to invade.

**B.     UFC has neither capacity to bring suit nor a redressable injury.**

**1.     UFC lacks capacity sue.**

Whether a limited liability company has capacity to bring suit in federal court is governed by Rule 17(b)(3), which indicates that such determinations are made with reference to the forum state's law. Fed. R. Civ. P. 17(b)(3); *Malibu Media, LLC v. Steiner*, 307 F.R.D. 470, 473 (S.D. Ohio 2015) ("Relevant here is subsection (b)(3), which applies to 'all other parties, including limited liability companies such as Plaintiff.'"); *In re Dairy Farmers*, 767 F. Supp. 2d 880, 892 (N.D. Ill. 2011). Arizona law is clear that an unregistered foreign limited liability company "shall not maintain an action, suit or proceeding in a court of this state until it has obtained a certificate of registration to transact business." A.R.S. § 28-809(A).

Here, UFC is not, and never has been, registered as a foreign limited liability company in Arizona and is prohibited from bringing suit in this Court. *Id.*; Fed. R. Civ. P. 17(b)(3). Plaintiffs do not quibble with that fact, but instead appear to argue that UFC can instead

---

[1] Contrary to the allegations of the FAC, Ms. Shortt did not ask to give the invocation.
[2] Ariz. Corp. Comm'n, *Articles of Organization: Adversarial Truth, LLC*, https://ecorp.azcc.gov/CommonHelper/GetFilingDocuments?barcode=05886313.

- 4 -

pursue its claims by transmuting itself into an unincorporated association. [Response at 12.] That is fallacious for at least two reasons. First, it is simply untrue that UFC was an "unincorporated association" of persons because it was, in fact, actually organized as an LLC—but it is legally barred from bringing suit in this Court. Second, if Plaintiffs are correct (and they are not) that any entity that has failed to appropriately register under state law can simply pretend it is unregistered, then Rule 17(b)(3) loses all meaning. This Court should eschew interpretations that render rule provisions nugatory. *See United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011) ("Courts should not render statutes nugatory through construction."); *Naruto*, 888 F.3d at 422 ("Our precedent on statutory interpretation should apply to court rules as well as statutes . . . .").

At core, Plaintiffs' posit that they can embrace or discard the corporate form at will and—so long as they generally represent the disembodied spirit of something called "TST"—they may bring suit under Rule 17(b)(3)(A). [Response at 11.] Plaintiffs are wrong. It is a bedrock principle of law that corporate entities, including LLCs, are distinct legal entities with a life of their own. *Abrahim & Sons Enters. v. Equilon Enters., LLC*, 292 F.3d 958, 962 (9th Cir. 2002) ("Corporations and LLCs are distinct legal entities . . . ."); *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 179 Ariz. 155, 159, 876 P.2d 1190, 1194 (App. 1994) ("The concept of a corporation as a separate entity is a legal fact, not fiction.").[3]

### 2. UFC has not suffered a cognizable injury.

It is undisputed that Ms. Shortt sought to give her invocation on behalf of the Unincorporated Association. [Doc. 63-1, Ex. J at 24:4–13.] Further, there is no evidence of any authorization for the Unincorporated Association to act on behalf of UFC at any relevant time, nor any evidence of UFC's involvement in the requested invocation at all. Indeed, there

---

[3] Plaintiffs assert that "[t]here is no requirement that unincorporated associations be incorporated at some prior point." [Response at 10.] Yet Plaintiffs' cited cases both analyze *previously incorporated* entities. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 927 (9th Cir.

- 5 -

1  is no evidence that Ms. Shortt ever received authorization from UFC's sole manager to speak
2  on its behalf. [*Id.*, Ex. C, at 35:25–36:5.] UFC has suffered no injury and, to the extent that it
3  asks the Court for some relief, it seeks an improper advisory opinion regarding its rights. *See*
4  *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 925 F.3d 1041, 1047 (9th Cir. 2019).

5  **III.   The Unincorporated Association lacks standing or capacity to sue.**

6      **A.   The Unincorporated Association lacks capacity to sue.**

7      Plaintiffs did not and cannot demonstrate that the Unincorporated Association is an
8  "unincorporated association" for purposes of Rule 17(b), and simply ignore the City's
9  arguments in that regard. There is no evidence that the purported "members" of the
10 Unincorporated Association have reached any kind of consensus as to its purpose and for this
11 reason, the Unincorporated Association (assuming, *arguendo*, it has members) could not have
12 been "formed by mutual consent for the purpose of promoting a *common objective*" that had a
13 "religious" purpose. Indeed, the following dispositive facts stand unrebutted: "members" of
14 the group do not need to be practicing Satanists. [Doc. 63-1, Ex. A at 32:16–33:2.] Some
15 "members" believed in a form of Satanism that involves "magick" and supernatural powers;
16 those beliefs are "antithetical" to one another. [*Id.*, Ex. J at 27:7–28:15.] Some "members"
17 view "TST" as a "sociopolitical counter-method" which others do not believe is the same as a
18 religion. [*Compare id.* 59:17–27, *with id.*, Ex. A at 30:21–31:1.] Because Plaintiffs have
19 utterly failed to demonstrate a "common purpose" amongst the "members," the
20 Unincorporated Association cannot invoke Rule 17(b)(3) and lacks capacity to sue.

21     **B.   The Unincorporated Association lacks standing.**

22     Rather than offer evidence demonstrating that the Unincorporated Association is a
23 membership association capable of invoking associational standing, Plaintiffs instead (i)
24 continue to conflate all the plaintiff entities into something called "TST"; (ii) declare without
25
26 2014); *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir.1996); *Sierra Ass'n for Env't v. FERC*, 744 F.2d 661 (9th Cir.1984).

- 6 -

any supporting evidence that this non-existent entity is a membership organization; and (iii) suggest that there is no authority requiring the Court to consider whether an organization is in fact a membership organization before permitting it to assert associational standing. [Response at 8–10.] Plaintiffs are wrong.

        Plaintiffs' misunderstanding of *Hunt* is pervasive and dispositive. [Response at 9–10.] To assert associational standing, an entity *must be* a membership organization. This is not an additional criterion to the three-part test described in *Hunt*. Rather, the very language of the associational standing test makes this obvious: an organization "has standing to bring suit on behalf of *its members* when (a) *its members* would otherwise have standing . . . ." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (emphasis added).

        Plaintiffs cannot simply declare themselves a membership organization and then attempt to raise claims that are not personal to the organization. Instead, the court must evaluate whether the Unincorporated Association[4] is actually a membership organization in the first instance, precisely as was done in *Hunt*, *Mink*, and other cases. *See e.g.*, *Hunt*, 432 U.S. at 342–343 (concluding organization is membership organization for purposes of associational standing); *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003) (same); *Fleck & Assocs. v. Phoenix*, 471 F.3d 1100, 1106 (9th Cir. 2006); *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25 (D.C. Cir. 2002); *Gettman v. DEA*, 290 F.3d 430, 435 (D.C. Cir. 2002). Plaintiffs have failed to establish that the Unincorporated Association is a membership organization that could have associational standing. As the City explained in its Motion, the Unincorporated Association lacks the "indicia of membership" necessary to be considered a membership organization—a conclusion that Plaintiffs do not attempt to rebut. [Motion at 16–17; Response at 9–10.]

        Perhaps most fatal to Plaintiffs' associational standing claim, however, is its inability to demonstrate that it has "members" who "express their collective views and protect their

- 7 -

collective interests" through the organization. *Hunt*, 432 U.S. at 345. Rather than explain or demonstrate how the Unincorporated Association reflects the "collective views" of any "members," Plaintiffs baldly posit that "TST's organizational purpose is to promote pluralism" and that "TST's organizational purposes lead it to demanding equality for its membership." [Response at 9.] Plaintiffs, however, offer no evidence that this is a member-driven "purpose" rather than the pet project of Messrs. Soling, Misicko, and de Haan, and Ms. Shortt. Instead, the evidence reflects that the Unincorporated Association is not a vehicle to express "collective views" of any purported members, but rather those picked by its self-appointed leaders. "Members" have no rights: they do not elect leadership, they do not vote, they do not fund the activities of the group; and they have wildly disparate views of Satanism. [Doc. 63-1, Ex. J at 16:21–17:2, 18:21–19–10, 27:7–28:15.]

When convenient, Plaintiffs also suggest that the "members" of their organization share a belief in "Satanism" and that the Unincorporated Association has standing to vindicate the rights of "Satanists." [Response at 9, 12.] But that is, of course: (i) inconsistent with the stated purpose of the Unincorporated Association to promote *pluralism* [Doc. 63-1, Ex. J at 8:9–14]; (ii) belied by the testimony that purported members may hold religious views that are "antithetical" to each other [*Id.* at 27:7–28:15]; (iii) disingenuous in light of The Satanic Temple's origins as a "mockumentary;" and (iv) belied by the fact that *one need not be a Satanist* to join. [Motion at 2–3.]

**IV.   No Plaintiff, including Michelle Shortt, has a redressable injury in fact.**

Plaintiffs fail to accept or acknowledge that claims regarding legislative prayer are simply different than other Establishment Clause claims. Thus, even if some named Plaintiff is able to survive the dispositive analyses set forth above, because the "invocation" sought to

---

[4] Plaintiffs do not even attempt to establish Adversarial Truth, UFC, or TST, Inc. as membership entities with associational standing.

- 8 -

be given by Ms. Shortt is neither religious nor an actual "invocation," the Plaintiffs lack a concrete injury capable of redress as a matter of law.

### A. A secular group lacks standing to demand a legislative prayer.

Plaintiffs rely on the notion that in other contexts, such as those involving religious monuments or school prayer, "*irreligious*" people have had standing to challenge such practices under the Establishment Clause. [Response at 4 (emphasis in original)]. But that is *not true* of legislative prayer, and deprives Plaintiffs of an injury redressable by Court action. Despite Plaintiffs' suggestion to the contrary, the Court need not inquire whether non-theists *generally* have rights under the Establishment Clause of the First Amendment. [Response at 15.] Instead, the crux of the issue is that in the context of *legislative prayer* cases, the Establishment Clause can only be implicated if the challenger's *religious* beliefs are threatened. [Motion at 8–9.]

*Marsh*, *Town of Greece*, and *American Humanist* stand for the proposition that legislative prayer is *generally* constitutional so long as it does not exclude particular religions. *Marsh v. Chambers*, 463 U.S. 783 (1983); *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 575 (2014); *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2087 (2019). Because Plaintiffs fall outside of the zone of religious interests shielded by the Establishment Clause in the legislative prayer context, they lack standing. *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982).[5]

Plaintiffs attempt to avoid this conclusion by arguing that *Marsh* and *Town of Greece* "caution[] against using the prayer opportunity to denigrate other religions." [Response at 14.] But that unhelpful platitude has no application here. Legislative prayer is, by its very nature,

---

[5] Although characterized as "prudential," the zone of interest requirement "relate[s] to elements of Article III standing." *Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2015). Plaintiffs would have this Court ignore *Valley Forge's* admonition that a plaintiff must fall within the protectable zone of interest to assert an Establishment Clause claim. [Response at 16.] The *Barker* court, although correct on the merits, failed to consider *Valley Forge* in its standing analysis. *Barker v. Conroy*, 921 F.3d 1118 (D.C. Cir. 2019).

religious. *Am. Humanist Ass'n*, 139 S. Ct. at 2087. Plaintiffs offer no explanation how the exclusion of a secular group from giving an "invocation" constitutes denigration. It is undisputed that the City's invocation policy was to invite various *faith* groups to give an invocation. [Doc. 32-2, Ex. 2 at 6:16–7:12; Doc. 38-2.] There is no evidence that the City has every permitted, much less invited, any secular group to give an "invocation."

Because Ms. Shortt was unequivocal in her testimony that the purpose behind her attempted invocation was "pluralism"—rather than a theistic belief or set of religious ideals—a denial of the opportunity to speak is simply not an injury, nor is it capable of redress. [Motion at 11–12.] Plaintiffs do not comprise a religion, and they do not have standing to demand the ability to give a legislative prayer.

### B.   The requested relief is beyond this Court's powers.

In response to the argument that the Establishment Clause does not require the City to permit Plaintiffs to give a secular invocation, Plaintiffs' only retort is that "TST is religious" and that "Satanism is a religion." [Response at 12.] But regardless of whether *Satanism* is a religion,[6] *one need not be a Satanist* to be a member of any of the Plaintiff entities, nor is there any real requirement beyond the ability to click a button on a website. [Motion at 4–5.] More importantly, it is clear that, even if Satanism is a religion, *the Plaintiff entities are not*. [Doc. 63-1, Ex. J at 8:9–14.]

Although the power of the Court is broad, federal courts lack authority to order the enactment of new legislation or policies except in certain narrow circumstances. Indeed, well-settled "principles of federalism counsel against awarding affirmative injunctive and declaratory relief that would require state officials to . . . enact a new law proposed by plaintiffs." *M.S. v. Brown*, 902 F.3d 1076, 1089 (9th Cir. 2018) (quotations omitted).

---

[6] "Satanism" does not refer to a singular set of beliefs the way, for example, "Catholicism" might. LeVayan Satanism believes in the supernatural and "magick," [Doc. 63-1, Ex. J at 27:7–28:15.], which is antithetical to the non-theistic view of "Satanism."

- 10 -

The Court cannot compel the City to adopt a new legislative prayer policy permitting secular "invocations" prior to City Council meetings as Plaintiffs ask it to. [FAC at 9, Response at 7.] The City can maintain (and has) a policy that does not discriminate between *religions* but that limits invocations to religious groups. In light of their manifest non-religiosity, Plaintiffs effectively ask the Court to rewrite the City's non-discriminatory policy. But there is no Constitutional basis for the Court to order the enactment or alteration of the City's longstanding legislative prayer policy, and Plaintiffs, therefore, lack a redressable injury that can confer standing. *M.S.*, 902 F.3d at 1083.

## V.  Plaintiffs' newly minted equal protection claim is meritless.

"A defendant suffers prejudice if a plaintiff is allowed to proceed with a new theory of recovery after close of discovery." *Smith v. City & Cty. of Honolulu*, 887 F.3d 944, 951–52 (9th Cir. 2018). In their Response, Plaintiffs assert for the first time that their equal protection claim is predicated upon the City "scrutiniz[ing]" Plaintiffs' connections to the City, which they allege was not "forced on other groups." [Response at 8.] However, the FAC is devoid of any well-pled facts to that effect, and only asserts that precluding Ms. Shortt from participating in legislative prayer violates equal protection. [FAC ¶¶ 52–53.]

It is manifestly improper to find that Plaintiffs have standing predicated upon a new theory of the case that has never been raised, was not pled in the FAC, and has never been disclosed. *Smith*, 887 F.3d at 951–52. In any event, a secular group has no right to demand to be placed on equal footing with a religion in connection with legislative prayer, because such prayer is, by its very nature, religious. *Am. Humanist Ass'n*, 139 S. Ct. at 2087.

## VI.  Conclusion

Plaintiffs are not a religion, and lack standing to challenge the City's longstanding legislative prayer practice. The City need not accept a secular group's invocation under the Establishment Clause. Plaintiffs' attempts to obfuscate the identity of the real party in interest cannot resist that legal reality. The Court should dismiss the FAC *in toto*.

**RESPECTFULLY SUBMITTED** this 25th day of October, 2019.

                                 **DICKINSON WRIGHT PLLC**

By: */s/ Scot L. Claus*
    Scot L. Claus
    Vail C. Cloar
    Holly M. Zoe
    1850 North Central Avenue, Suite 1400
    Phoenix, Arizona 85004-4568
    *Attorneys for City of Scottsdale*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2019, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

By: */s/ Sheila Rath*