**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Satanic Temple, Inc., et al.<br><br>Plaintiffs,<br><br>v.<br><br>City of Scottsdale,<br><br>Defendant. | No. CV-18-00621-PHX-DGC<br><br>**ORDER** |

Defendant City of Scottsdale moves to dismiss Plaintiffs' claims under Rule 12(b)(1), and Plaintiffs move to strike several affirmative defenses. Docs. 62, 63. The motions are fully briefed, and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). The Court will deny the motion to dismiss and grant the motion to strike in part.

**I.    Background.**

The following facts state the parties' respective positions. Scottsdale's City Council regularly opens its public sessions with an invocation. Doc. 57 ¶ 20. On February 8, 2016, an individual called Kellie Kuester, the management assistant to the mayor, and asked that Michelle Shortt, head of the Arizona chapter of the Satanic Temple, be placed on the invocation schedule. Doc. 33-4 ¶ 8. Ms. Shortt was scheduled to give the invocation on April 5, 2016, but the date was later changed to July 6, 2016, at her request. *Id*. ¶¶ 8-10. The City later removed Ms. Shortt from the invocation schedule. *Id.* ¶ 15.

1         The record contains statements by city council members that reflect a desire to prevent Plaintiffs from giving the invocation. Doc. 1-1 at 2, 10, 12. Defendant also received emails from many citizens opposing the invocation. Doc. 33-1 at 22. Defendant contends, however, that only the city manager, Brian Biesemeyer, was authorized to decide whether Ms. Shortt should remain on the invocation schedule. Doc. 33-2 at 14-15. Upon learning of her request, Mr. Biesemeyer asserts that he investigated the City's practices regarding invocation speakers and learned that the general historical practice was to require that entities offering invocations have a substantial connection to Scottsdale. *Id*. at 8-9. According to Mr. Biesemeyer, a substantial connection exists if "a number of Scottsdale residents" are related to the requesting entity. *Id*. at 10. Mr. Biesemeyer asserts that when he learned from Ms. Kuester that Ms. Shortt and her organization were from Tucson, he decided that they did not have a substantial connection to Scottsdale and removed Ms. Shortt from the invocation schedule. *Id*. at 19.

        This lawsuit was filed on February 26, 2018 by "The Satanic Temple" and Michelle Shortt. Doc. 1. It seeks a declaratory judgment that the City's exclusion of minority religions, and the specific denial of Ms. Shortt's invocation, violate the Establishment and Equal Protection Clauses. Doc. 57 at 8. It also seeks to enjoin the City from denying non-Christian groups the opportunity to give the invocation. *Id*. at 9.

        The parties cross-moved for summary judgment, and the Court denied the motions on the record during oral argument on July 16, 2019. *See* Docs. 43, 52. During a later scheduling conference, the City questioned whether The Satanic Temple and Ms. Shortt were in fact the "real parties in interest" as required under Federal Rule of Civil Procedure 17. After discussion, the Court directed Plaintiffs to "file a short memorandum with the Court that explains what their intent is with respect to having the real party in interest appear in the case." Doc. 48. Plaintiffs filed a memorandum that identified several additional Plaintiffs. Doc. 53. At the Court's order (Doc. 56), Plaintiffs filed a First Amended Complaint which includes five Plaintiffs: Ms. Shortt; The Satanic Temple as "a voluntary group of persons, without an Arizona charter, formed by mutual consent for the

purpose of promoting a common enterprise or prosecuting a common objective" (the "Unincorporated Association"); The Satanic Temple, Inc., a Massachusetts religious corporation ("TST, Inc."); The United Federation of Churches LLC, a Massachusetts LLC d.b.a. "The Satanic Temple" ("UFC"); and Adversarial Truth LLC, an Arizona LLC, d.b.a. "The Satanic Temple (Arizona Chapter) ("Adversarial Truth"). Doc. 57 at 1-3. Defendant argues that none of these Plaintiffs has standing. Doc. 63.

## II. Legislative Prayer and This Case.

Legislative prayer occupies a unique place in Establishment Clause jurisprudence. In *Marsh v. Chambers*, 463 U.S. 783 (1983), the Supreme Court found no First Amendment violation in the Nebraska Legislature's practice of opening its sessions with a prayer delivered by a chaplain paid from state funds. *Marsh* concluded that legislative prayer, while religious in nature, has long been understood as compatible with the Establishment Clause. Legislative prayer has been "practiced by Congress since the framing of the Constitution" and "lends gravity to public business, reminds lawmakers to transcend petty differences in pursuit of a higher purpose, and expresses a common aspiration to a just and peaceful society." *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 575 (2014). "In light of the unambiguous and unbroken history of more than 200 years, there can be no doubt that the practice of opening legislative sessions with a prayer has become part of the fabric of our society." *Marsh*, 463 U.S. at 792.

The relevant inquiry in legislative prayer cases, therefore, is "whether the prayer practice in [question] fits within the tradition long followed in Congress and the state legislatures." *Town of Greece*, 572 U.S. at 577. If so, it does not violate the Establishment Clause, even if the prayer is sectarian in nature. Once a local government "invites prayer into the public sphere, [it] must permit a prayer giver to address his or her own God or gods as conscience dictates, unfettered by what an administrator or judge considers to be nonsectarian." *Id.* at 582. The Supreme Court has also made clear, however, that legislatures cannot adopt "a pattern of prayers that over time denigrate, proselytize, or

betray an impermissible government purpose," and they must maintain "a policy of nondiscrimination." *Id.* at 585.

In light of this settled law, Plaintiffs do not claim that the City's practice of opening city council sessions with prayer violates the Establishment Clause. They do not ask the Court to prohibit such prayers. Rather, they claim that the City has discriminated against them contrary to instructions of the Supreme Court – that the City has refused to permit their invocation simply because it disfavors their religious views. Doc. 57 ¶¶ 47-54. Thus, the alleged injury in this case is not an injury to Plaintiffs' religious or non-religious sensibilities arising from the fact that a prayer is offered in a government-sponsored setting. The injury alleged is discrimination – that Plaintiffs have been denied the opportunity to give an invocation when other religious groups have been allowed that privilege.

**III. Rule 12(b)(1) Motion.**

Because standing affects a federal court's subject matter jurisdiction, it is properly raised in a Rule 12(b)(1) motion to dismiss, even at this late stage of the litigation. *See Chandler v. State Farm Mutual Auto. Ins.*, 598 F.3d 1115, 1122 (9th Cir. 2010). A "lack of Article III standing requires dismissal for lack of subject matter jurisdiction[.]" *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). A motion to dismiss under Rule 12(b)(1) can be either a facial or factual attack on jurisdiction. *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *see League of Conservation Voters v. Trump*, 303 F. Supp. 3d 985, 992 (D. Ala. 2018) (applying the facial-factual distinction to a standing determination under Rule 12(b)(1)).

A facial attack asserts that the allegations in the complaint are "insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The complaint's allegations are taken as true and construed in favor of the non-moving party. *Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 930 (N.D. Cal. 2009) (citing *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996)).

A factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. The plaintiff's

allegations are not taken as true, the court may look beyond the pleadings, and the plaintiff has the burden of proving jurisdiction. *Id*. at 1039. The plaintiff must "present affidavits or any other evidence necessary to satisfy its burden[.]" *St. Clair v. City of Chino*, 880 F.2d 199, 201 (9th Cir. 1989).

Defendant's motion makes a factual attack. *See* Doc 67 at 2. It looks past the allegations of the complaint and asserts, among other arguments, that Plaintiffs are not a religion and that the proposed invocation was not a prayer. Doc. 63.

## IV. Article III Standing.

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1985) (citations omitted). "[A] plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

In First Amendment claims, an entity establishes standing by showing that it has been directly affected by the laws or actions at the center of its complaint. *Sch. Dist. of Abington Twp., Pa. v. Schempp.*, 374 U.S. 203, 224 n.9 (1963). Although plaintiffs have the burden as to these requirements, they can avoid dismissal of their complaint if they provide facts which plausibly suggest that they have standing. *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 899 (9th Cir. 2011).

Defendant argues that Plaintiffs have not been injured by the City's actions. Doc. 63 at 12-17. Plaintiffs respond, for the most part, without making any distinctions among the various Plaintiffs – they simply address all of the Plaintiff entities collectively as "TST." Doc. 65. This is unhelpful, because each Plaintiff must have standing. *See Lujan*, 504 U.S. at 606 ("the standing inquiry requires careful judicial examination of a complaint's

allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the particular claims asserted.") (emphasis added); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (standing not "dispensed in gross"). The Court will address Plaintiffs individually.

### A. Michelle Shortt.

Despite the City's argument to the contrary, Ms. Shortt has put forth enough facts to plausibly suggest she has suffered an "injury in fact" by not being permitted to give the invocation, that the injury is traceable to the City's actions in removing her from the invocation schedule, and that the Court could redress her injury. *See Lujan*, 504 U.S. at 560-61. Ms. Shortt did not personally contact the City to arrange her invocation, but Defendant does not dispute that she and others initiated the invocation request and that she would have been the designated speaker at the city council session. Doc. 63-1 at 175, 287. When the City removed her from the schedule, she was directly denied the right to offer the invocation and personally sustained a concrete and actual injury.

### B. The Unincorporated Association.

The Unincorporated Association is referred to in Plaintiffs' amended complaint as a group of individuals "formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective." Doc. 57 ¶ 11. Defendant argues that it lacks the capacity to sue, and injury.

Rule 17 addresses capacity to sue in federal court. It states that an "unincorporated association with no such capacity under [state law] may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b)(3). Defendant cites *S. California Darts Ass'n v. Zaffina*, 762 F.3d 921 (9th Cir. 2014), which provided the following description of an unincorporated association for purposes of Rule 17: "a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective." *Id.* at 927. Defendant argues that the Unincorporated Association in this case cannot be a real party in interest under Rule 17 because there is no evidence that its members consented to formation of the group for a common purpose being advanced through this litigation. Doc. 63 at 14. To the

contrary, Ms. Shortt testified, as the Rule 30(b)(6) deponent for the association, that it is a voluntary group of persons who met weekly and agreed to proceed with organization of the Arizona chapter of The Satanic Temple to promote pluralism, including through the Scottsdale invocation. Doc. 63-1 at 275-80. Defendant argues that individuals apparently became members at different times, they lack uniform beliefs, and they operated through a council instead of by mutual consent. But Defendant cites no authority to suggest that any of these are requirements for capacity to sue under Rule 17. Doc. 63 at 14.

Plaintiffs argue that the Unincorporated Association has associational standing to bring this case. Doc. 65 at 8-9. Defendant asserts that such standing is not available for the Unincorporated Association because it differs from the entity granted such standing in *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977). Doc. 63 at 17. But Defendant cites no authority suggesting that each of the characteristics of the association in *Hunt* must be present before associational standing exists for other groups. The Supreme Court identified the requirements in these terms:

> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt,* 432 U.S. at 343.

These requirements appear to be satisfied by the Unincorporated Association. Ms. Shortt is a member of the association and, as discussed above, has standing to sue in her own right. The interests the association seeks to protect are those described by Ms. Shortt as the purpose of the association. And neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Ms. Shortt is a party in this case as well, but Defendant does not argue that her presence precludes the Unincorporated Association from suing.[1]

---

[1] Defendant argues that the Unincorporated Association lacks standing to bring a claim on its own behalf (Doc. 63 at 15), but Plaintiffs assert associational standing, not individual standing by the Unincorporated Association (Doc. 65 at 8-9). It appears that the Unincorporated Association may have ceased to exist as an entity when Adversarial Truth was formed, but Defendant does not raise this point or argue that it affects standing.

## C. Adversarial Truth and TST, Inc.

Defendant makes only one argument with respect to Adversarial Truth and TST, Inc. – that they did not exist when Ms. Shortt was denied an opportunity to give the invocation. Adversarial Truth was formed in April 2017, more than one year after Ms. Shortt sought to give the invocation, and that TST, Inc. was formed even later, in November 2017. Docs. 63 at 6-7; 63-1 at 81. Plaintiffs claim that this timing does not matter, however, because these entities can assert associational standing, which requires that their members have an injury, not that they have an injury. Doc. 65 at 9; *Hunt,* 432 U.S. at 343. As noted above, Ms. Shortt has suffered an injury. Defendant does not address this argument. Doc. 67 at 3-4.[2]

## D. UFC.

Citing only two Arizona statutes and no case law, Defendant's motion argues that UFC lacks standing because it is not authorized to do business in Arizona. Doc. 63 at 12-13. Defendant cites two cases in its reply brief, but they do not support its argument.

The first case, *Malibu Media, LLC v. Steiner*, 307 F.R.D. 470, 473 (S.D. Ohio 2015), considered whether a limited liability company had the capacity to sue in federal court under Rule 17. The court decided that the LLC was not an individual or corporation within the meaning of Rule 17(b)(1) and (2), and therefore was governed by Rule 17(b)(3). *Id.* at 473. That section applies to all parties other than individuals and corporations, and states that their capacity to sue is determined by "the law of the state where the court is located, except that: (A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." *Id.* Because the LLC before it did not have the capacity to sue under the forum state's law, *Malibu Media* concluded that it was governed by the remainder of subsection (A) and could sue because it was seeking to enforce federal law. *Id.* at 474. Thus, if *Malibu Media* were applied here, and UFC was found not to have capacity to sue under Arizona law, *Malibu Media* would hold that, as an

---

[2] It is not clear whether Ms. Shortt is a member of TST, Inc., but Defendant does not raise that issue.

- 8 -

entity "with no such capacity under the state's law," UFC could sue because it is seeking "to enforce a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b)(3)(A).[3]

The second case cited by Defendant, *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880 (N.D. Ill. 2011), states that "Rule 17(b)(3) provides that the law of the state where the Court is located guides the inquiry when it comes to limited liability companies." *Id.* at 892. But it says nothing else relevant; it concerns whether entities that were merged into the defendant corporation and ceased to exist could be sued in their own names, an issue not presented in this case.

Even if the Court looks to the two Arizona statutes cited by Defendant – A.R.S. §§ 10-1501(A) and 10-1502(A) – they are not helpful. *See* Doc. 63 at 11-12. First, they both apply only to a "foreign corporation," and Defendant argues that UFC is not a corporation. *See* Doc. 67 at 5. If UFC is a corporation, then its capacity to sue is not governed by these statutes, but by Massachusetts law, which Defendant never discusses. *See* Fed. R. Civ. P. 17(b)(2). Second, § 1501(A) concerns transacting business in Arizona, which UFC does not seek to do in this case. Third, § 1502(A) states that a foreign corporation "shall not be permitted to maintain a proceeding in any court in this state," but this federal court is not a court of the State of Arizona. In short, the cases and statutes cited by Defendant are not persuasive.

Defendant does not address Plaintiffs' assertion that UFC, like the other entities named in this case, has associational standing. Ms. Shortt, as the head of Adversarial Truth, entered into an affiliation agreement with UFC on August 10, 2016. Doc. 57 ¶ 29. Thus, it appears she was a member of UFC when UFC sued in this case, and, as noted above, she has standing to sue in her own right.

/ / /

/ / /

---

[3] The Court is not persuaded that *Malibu Media* is correct. It appears to overlook that Rule 17(b)(3)(A) is limited to "a partnership or other unincorporated association," and the LLC in *Malibu Media* was neither. In any event, the case does not support the outcome Defendant requests.

### E. Article III Summary.

Based on the evidence and arguments in the present briefing, the Court concludes that Plaintiffs have Article III standing. The Court will not dismiss their claims on this basis.

## V. Prudential Standing.

In addition to Article III standing, Plaintiffs must establish prudential standing. "Prudential standing" is a doctrine encompassing "at least three broad principles: 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).

Defendants' motion focuses on the third of these principles – the Supreme Court's statement that a plaintiff's complaint must "fall within 'the *zone of interests* to be protected or regulated by the statute or constitutional guarantee in question.'" *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982) (emphasis added) (quoting *Ass'n of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153 (1970)). Defendants argue that Plaintiffs do not fall within the zone of interests protected by the Establishment Clause, as it applies to legislative prayer, because they are not religious. Docs. 63 at 9, 67 at 9. Defendant contends that Plaintiffs instead constitute "an amalgam of shambolic corporate entities with no explicable structure, no clear system of control, no unified belief system, and a secular purpose." Doc. 63 at 1. Plaintiffs assert they are in fact a religion and that they have sustained injuries from the City's denial of their right to pray. Doc. 65 at 1.

Although Establishment Clause violations can be asserted by the irreligious as well as the religious, such as a non-believing school student who is compelled to recite a prayer, Plaintiffs' religious-discrimination claim necessarily requires that they be a religion. The

Supreme Court has directed local governments to maintain "a policy of nondiscrimination" among religions, with no bias "against minority faiths." *Town of Greece,* 572 U.S. at 585; *see Barker v. Conroy*, 921 F.3d 1118, 1131 (D.C. Cir. 2019) ("the Court has warned against discriminating among religions"). To run afoul of this direction, a local government must discriminate *among religions*. Thus, for example, a city's refusal to let a book club present a Thoreau reading in place of an invocation at a city council meeting would not constitute discrimination in violation of the Establishment Clause because the City would not be discriminating against a religion – it would be preventing a non-religious book club from invading a space set aside for religious prayers. As a result, although courts normally are reluctant to venture into the question of what is and it not a religion, such an inquiry is necessary in this case given the nature of Plaintiffs' claim.

But this does not mean that the Court must adopt a precise definition of religion in order to rule on this motion. As noted above, to establish standing in response to this factual challenge Plaintiffs need only provide facts that plausibly suggest they have standing. *Barnum Timber Co.*, 633 F.3d at 899. The Courts concludes that Plaintiffs have provided such evidence and will reserve for trial any more complete analysis of whether Plaintiffs' views qualify as religious for purposes of their discrimination claim. *See Fields v. Speaker of Pa. House of Representatives*, 936 F.3d 142, 153-54 (3rd Cir. 2019) (holding on the merits that the plaintiff's proposed invocation was not a religious prayer in the sense protected by the Establishment Clauses legislative prayer cases).

In arguing that Plaintiffs are not religious, Defendant does not rely on any specific judicial definition. Defendant instead asserts that courts have distinguished between religious and secular prayers in legislative prayer cases, *see Barker*, 921 F.3d at 1130, and have viewed legislative prayer as including only those who believe in "the existence of a high power to whom one can pray for divine guidance in lawmaking," *Fields*, 936 F.3d at 153-54. Defendant argue that Plaintiffs seek only to offer a secular prayer and do not believe in the existence of a higher power to whom one can appeal for guidance. *See* Doc. 63 at 11-12. To support this proposition, Defendant quotes portions of the record

suggesting that Ms. Shortt and the other Plaintiffs seek to promote pluralism, not religion. *See* Doc. 63 at 4-7.

Other portions of the record suggest, however, that Plaintiffs view themselves as a religion. Ms. Shortt testified that she sought to give the invocation on behalf of the "religion" of "Satanism." Doc. 63-1 at 24. Ms. Shortt "was given the authority to speak on behalf of the Satanic Temple in regard to the invocation in Arizona." *Id.* She viewed the invocation as an exercise of TST's "religious views." Doc. 63-1 at 54-55. Ms. Shortt referred to Satanism as "our religion," and noted that "[w]e are, first and foremost, a religion." Doc. 63-1 at 34.

Similarly, Douglas Misicko, the founder of TST, Inc., views "Satanism [as] the religion of the Satanic Temple." Doc. 63-1 at 109. In the "FAQ" portion of TST, Inc.'s website, the organizations explained the religious nature of its beliefs:

> Satanism provides all that a religion should be without a compulsory attachment to untenable items of faith-based belief. It provides a narrative structure by which we contextualize our lives and works. It also provides a body of symbolism and religious practice – a sense of identity, culture, community, and shared values.

The Satanic Temple, FAQ, https://thesatanictemple.com/pages/faq (last visited Nov. 5, 2019). The Arizona chapter states that "[a]s a religious organization, TST serves the religious needs of our members, no matter who they are or how they identify[.]" *See* The Satanic Temple Arizona, TST AZ FAQ, https://thesatanictemplearizona.com/about/faq/ (last visited Nov. 5, 2019). The Arizona website further notes that "[m]odern Satanism is an individual path, one that is religious and atheistic in nature, that demands study of the practitioner and requires independent thought." *Id.* More precisely, the religion that TST identifies with is "satanism," and the "organization by which [they] express [their] ideals is through The Satanic Temple." *Id.*

Even if unconventional, these beliefs would be considered religious under the language of some cases that do not concern legislative prayer. *See*, *e.g.*, *United States v. Seeger*, 380 U.S. 163, 185 (1965) (to qualify as religious, beliefs must be "sincerely held" and, "in the claimant's scheme of things, religious in nature"); *Torcaso v. Watkins*, 367

- 12 -

U.S. 488, 495 n.11 (1961) ("Among religions in this country which do not teach what would generally be considered a belief in the existence of God are . . . Ethical Culture, Secular Humanism[,] and others."); *Kaufman v. McCaughtry*, 419 F.3d 678, 684 (7th Cir. 2005) (inmate's atheism qualified as a "religion" for purposes of First Amendment); *Alvarado v. City of San Jose*, 94 F.3d 1223, 1229 (9th Cir. 1996) ("a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters," "consists of a belief-system as opposed to an isolated teaching," and "often can be recognized by the presence of certain formal and external signs"); *United States v. Ward*, 989 F.2d 1015, 1018 (9th Cir. 1992) ("Religious beliefs, then, are those that stem from a person's moral, ethical, or religious beliefs about what is right and wrong and are held with the strength of traditional religious convictions." (quotation marks and citation omitted)); *Am. Humanist Ass'n v. United States*, 63 F. Supp. 3d 1274, 1283 (D. Or. 2014) (finding that Secular Humanism is a religion for Establishment Clause purposes).[4]

On the other hand, Plaintiffs argue that case law conclusively holds that Satanism is a religion entitled to protection. But Plaintiffs' cases are all Free Exercise claims brought by prisoners seeking accommodations to practice Satanism in prison. It is not clear these cases should control in the legislative prayer arena. *See Semla v. Snyder*, No. 03-cv-00015-JPG, 2006 WL 1465558, at *12 (S.D. Ill. May 24, 2006); *Howard v. United States*, 864 F. Supp. 1019, 1023 (D. Colo 1994); *Carpenter v. Wilkinson*, 946 F. Supp. 522, 525-28 (N.D. Ohio 1996). And Plaintiffs' reliance on *Cave v. Thurston*, No. 4:18-cv-00342-KGB (E.D. Ark. 2018), is misplaced. The court there found standing for TST to intervene in a case challenging a permanent monument depicting the Ten Commandments on the grounds of the Arkansas State Capitol. *Id.* at 1-2. The court expressly refused "to examine the religious beliefs and sincerity of the religious beliefs" of TST. *Id.* (Doc. 38 at 25-28).

Without being definitive or final for purposes of this case, the Court concludes that Plaintiffs have made a sufficient showing of religious belief to satisfy the prudential

---

[4] The D.C. Circuit in *Barker*, as a threshold question, found that an atheist who was denied an opportunity to deliver an invocation to the House of Representatives had standing to pursue an Establishment Clause violation. 921 F.3d at 1125.

- 13 -

requirements of standing. The evidence discussed above suggests that Plaintiffs view their beliefs as religious and sincerely held. Whether Plaintiffs are religious for purposes of the merits of this case – for purposes of showing that the City's action in the sphere of legislative prayer amounted to religious discrimination – is an issue for trial.

## VI. Equal Protection Clause Claims.

Defendant argues that "a secular group has no right to demand to be placed on equal footing with a religion in connection with legislative prayer, because such prayer is, by its very nature, religious." Doc. 67 at 11. As explained above, for purposes of standing, the Court does not agree. To prevail on their Equal Protection claim, Plaintiffs "must make a showing that a class that is similarly situated has been treated disparately." *Christian Gospel Church, Inc. v. City and Cty. of S.F.*, 896 F.2d 1221, 1225-26 (9th Cir. 1990). The Court finds that Plaintiffs have plausibly shown that Ms. Shortt, who was scheduled to give the invocation, allegedly was denied the opportunity based on her religious belief. Her injury may be attributed to the other entities for purposes of associational standing.

## VII. Plaintiffs' Motion to Strike.

Plaintiffs move to strike four of Defendant's six affirmative defenses. Doc. 62. Rule 12(f) states that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "The decision to grant or deny a motion to strike is within the Court's discretion." *United States v. Lacey*, No. CR-18-00422-PHX-SPL, 2019 WL 317672, at *1 (D. Ariz. Jan. 24, 2019); *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 963 (9th Cir. 2018). But "motions to strike are a drastic remedy and generally disfavored." *Holyoak v. United States*, No. CV 08-8168-PHX-MHM, 2009 WL 1456742, at *1 (D. Ariz. May 21, 2009).

### A. Failure to State a Claim.

Plaintiffs move to strike Defendant's third affirmative defense of failure to state a claim upon which relief can be granted. Doc. 62. Defendant argues that because a motion

1 to dismiss for failure to state a claim may be raised at any point before the conclusion of trial, the Court must deny Plaintiffs' motion. Doc. 64 at 5.

Courts generally hold that failure to state a claim is not an affirmative defense. *See Barnes v. AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010) (failure to state a claim identifies a pleading deficiency and is not an affirmative defense); *Craten v. Foster Poultry Farms Inc.*, No. CV-15-02587-PHX-DLR, 2016 WL 3457899, at * 3 (D. Ariz. June 24, 2016) (same); *Martinez v. Alltran Fin. LP*, No. CV-18-04815-PHX-DLR, 2019 WL 1777300, at *2 (D. Ariz. April 23, 2019) (same). Additionally, a defense of failure to state a claim is not proper where, as here, the answer does not provide any further explanation. In such a case "[t]here is no fair notice of how Plaintiff has failed to state a claim." *See J&J Sports Prod., Inc. v. Moqueda*, No. CV–12–0523 PHX DGC, 2013 WL 951366, at *1 (D. Ariz. 2013 March 12, 2013). The Court will strike Defendant's third affirmative defense.

### B. Unclean Hands, Estoppel, and Waiver.

Plaintiffs also move to strike Defendant's fourth, fifth, and sixth affirmative defenses of unclean hands, estoppel, and waiver because those defenses were not asserted in Defendant's original answer. Doc. 62 at 2. But Plaintiffs filed an amended complaint and Defendant filed an answer that sets forth its affirmative defenses to that complaint. *See* Docs. 57, 61. Plaintiffs cite no authority for their argument that affirmative defenses cannot be raised for the first time in response to an amended complaint that makes additional factual allegations.

Plaintiffs do not otherwise indicate how these defenses are "redundant, immaterial, impertinent, or scandalous" as required under Rule 12(f). Fed. R. Civ. P. 12(f). The Court will deny Plaintiffs' motion to strike Defendant's fourth, fifth, and sixth affirmative defenses. *See Lacey*, 2019 WL 317672, at *1.

**IT IS ORDERED:**

1. Defendant's motion to dismiss (Doc. 63) is **denied**.

2. Plaintiffs' motion to strike (Doc. 62) is **granted in part** and **denied in part** as set forth above.

Dated this 18th day of November, 2019.

*David G. Campbell*
David G. Campbell
Senior United States District Judge