Firm E-Mail for Official Court Documents
courtdocs@dickinsonwright.com
Scot L. Claus (#014999)
Vail C. Cloar (#032011)
Holly M. Zoe (#033333)
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, AZ  85004-4568
Phone: (602) 285-5000
Fax: (844) 670-6009
*Attorneys for Defendant City of Scottsdale*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| The Satanic Temple, Inc. et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>City of Scottsdale<br><br>                              Defendant. | Case No.  CV 18-00621-PHX-DGC<br><br>**DEFENDANT CITY OF SCOTTSDALE'S RESPONSE TO MOTION FOR SUPPLEMENTED AND AMENDED FINDINGS OF FACT AND TO ALTER OR AMEND JUDGMENT (Doc. 97)** |

Plaintiffs' motion for relief under Rule 52 and Rule 59 of the Federal Rules of Civil Procedure (the "Motion") does little more than ask the Court to reconsider its prior rulings, revisit its credibility determinations, and reverse its judgment that the City of Scottsdale (the "City") did not discriminate against Plaintiffs. Plaintiffs' Motion is a model of futility because the Motion fails to hint at, let alone satisfy, Plaintiffs' burden under Rules 52 and 59. Indeed, Plaintiffs' Motion is a medley of recycled and rejected arguments and legal theories that have never formed the basis of Plaintiffs' claims prior to the Motion.

In particular, Plaintiffs' Motion is flawed for three independent reasons. First, Plaintiffs' reliance upon *Rubin* is both untimely and without merit. Second, the Court considered and rejected Plaintiffs' equal protection claim because Plaintiffs failed to meet their burden of proof to demonstrate discrimination of any type. Finally, Plaintiffs' request that the Court reconsider

- 1 -

4817-7059-9606 v14 [53387-11]

its evidentiary determinations are untimely, meritless, and pointless. This Response is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  The Court has rejected the bases for Plaintiffs' Motion.**

The Court held a two-day bench trial in this case on January 22 and 23, 2020. On February 6, 2020, the Court entered its Order and Judgment, finding that Plaintiffs failed to carry their burden to prove that Plaintiffs' request to give an invocation was denied for any discriminatory reason or that the denial was based on Plaintiffs' purported religious beliefs. (Doc. 92 at 16–17.) The Court entered judgment in favor of the City. (*Id.* at 18.)

The Court's Order and Judgment found that whether Plaintiffs could succeed on their equal protection claim turned on whether they could meet their burden of proof to demonstrate that Mr. Biesemeyer—as the decision-maker for the City—acted with a discriminatory intent or purpose. (*Id.* at 3.) The Court found Mr. Biesemeyer credible when he testified that: (1) his decision was based solely off whether Plaintiffs had a substantial connection to the City; (2) he did not see or hear any of the written statements from Mayor Lane or Councilmember Klapp; and (3) he made the decision without duress from, or influence by, any City Council member or the Mayor. (*Id.* at 14.) The Court concluded, therefore, that Plaintiffs had failed to meet their burden of proof, and dismissed their claims because, "[a]t the end of the day, Plaintiffs ask the Court to find that Mr. Biesemeyer was lying about his reason for denying Plaintiffs' invocation request," but failed to present any evidence to prove that critical fact rising beyond speculation, conjecture, and innuendo. (*Id.* at 16.)

**II.     Plaintiffs' Motion does not raise any basis justifying Rule 52 or Rule 59 relief.**

Amending a judgment after it has been entered is "an extraordinary remedy which should be used sparingly." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (per curiam)). A

- 2 -

party seeking such an extraordinary remedy has a "high hurdle," and does not satisfy its burden to demonstrate it is entitled to relief by merely recapitulating arguments made previously before the trial court or by urging disagreement with the trial court's earlier decision. *Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, 282 F.R.D. 216, 220 (D. Ariz. 2012); *Gutierrez v. Ashcroft*, 289 F. Supp. 2d 555, 561 (D.N.J. 2003) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." (quoting *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990))). Also, a Rule 59 motion is an inappropriate vehicle for raising new arguments for the first time. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009); *Teamsters Local 617*, 282 F.R.D. at 220.

Ultimately, "[a] motion for reconsideration under Rule 59(e) 'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'" *McDowell*, 197 F.3d at 1255 (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999)). Plaintiffs simply ignore this standard and do not bother to explain which of these bases they believe justify amending the Court's judgment. Regardless of Plaintiffs' basic failure to articulate the grounds under which they are asking the Court for relief, it is crystal clear that Plaintiffs cannot establish any of the bases articulated in *McDowell*.

Plaintiffs do not assert that they have discovered new evidence or that there has been a change in the controlling law. Thus, if anything, Plaintiffs' Motion must be construed as asserting that the Court has made a clear error. For the Court to find that it has committed a "clear error," it must not merely conclude that it is "just maybe" or even "probably wrong"— the Court must be convinced instead that it was "dead wrong." *Teamsters Local 617*, 282 F.R.D. at 231.

Plaintiffs' Motion does nothing to demonstrate the Court was even slightly wrong, let alone "dead wrong." First, Plaintiffs' arguments regarding *Rubin* are entirely misplaced and without merit because they are both untimely and have already been squarely rejected by the Court. Second, Plaintiffs' equal protection arguments are both untimely and substantively meritless. Finally, Plaintiffs' request that the Court reconsider its ruling excluding Plaintiffs' Exhibit 5 and Exhibit 8 is both untimely and substantively deficient. Thus, Plaintiffs have not demonstrated that the Court has committed clear error, and Plaintiffs' mere disagreement with how the Court applied the law is insufficient to permit this Court to revisit its Order and Judgment. *Id.*

### A. Plaintiffs' argument that *Rubin* warrants a reversal of the Court's Order and Judgment is without merit.

As the Court will recall, the Court previously rejected Plaintiffs' reliance on *Rubin v. City of Lancaster*, 710 F.3d 1087 (9th Cir. 2013). (Doc. 92 at 17.) The Court's rejection of that argument was substantively correct. First, the Court rejected Plaintiffs' assertion that the City's policy was unconstitutional due to its lack of formality *months prior* to trial. The Court's ruling on the cross-motions for summary judgment was crystal clear that the lack of formality and safeguards in the City's policy was not constitutionally defective:

> [I]t's suggested in the briefs that the mere informality of Scottsdale's policy is a constitutional violation in itself.
>
> I don't agree with that.
>
> The *Town of Greece* [court] upheld an informal unwritten policy, and the *Rubin* case, although it described in some detail a written policy, never said that that kind of policy is required to pass constitutional muster.
>
> So I do not believe that informality of the policy is itself an Establishment Clause violation.

(Doc. 52 at 36.) Stated differently, the Court found, as of July 2019, that *Rubin* did not set out requirements for a legislative prayer policy to pass constitutional muster. (*Id.*) The Court determined that the City's *policy* was not constitutionally infirm, and that the only issue for trial was whether or not Mr. Biesemeyer's decision was made pursuant to the City's practice.

- 4 -

4817-7059-9606 v14 [53387-11]

(*Id.*) Plaintiffs had 14 days to file a motion for reconsideration of the Court's determination that *Rubin* did not control this case, but failed to do so. *See* LR Civ. P. 7.2(g). Their failure to do so is dispositive of their request. Further, Plaintiffs' regurgitation of their previously rejected arguments is insufficient to invoke the dramatic remedy of amending the Court's judgment. *Herron*, 634 F.3d at 1111.

      Second, the Court did, in fact, consider and reject Plaintiffs' contention that the City's policy was constitutionally infirm in light of *Rubin* at trial (despite the fact that the argument was not properly disclosed by Plaintiffs nor framed in the Final Joint Pretrial Statement). As the Court easily concluded, the plaintiffs in *Rubin* brought materially different claims that the Plaintiffs in this case. (Doc. 92 at 17.) The plaintiffs in *Rubin* brought a "broad challenge" against a legislative prayer policy itself; the Plaintiffs here did not.[1] (*Id.*) Further, the *Rubin* court did not hold, nor did it have occasion to hold, that the procedures in that case "are necessary to withstand a claim of specific-instance discrimination."[2] (*Id.*) Plaintiffs have not shown that the Court erred in that conclusion, let alone that it was "dead wrong" in its analysis. *Teamsters Local 617*, 282 F.R.D. at 231. Nor could they. Instead, it is Plaintiffs who have engaged in an analysis of *Rubin* that is, to borrow a phrase, "dead wrong."

      As noted above, *Rubin* was not a discrimination case. Rather, the inquiry in *Rubin* focused on whether "explicit reference to a sectarian figure in legislative prayer is a per se

---

[1] To be sure, the *Rubin* plaintiffs' entire case was predicated on the notion that the mention of "Jesus Christ" during an invocation demonstrated an attempt by the City of Lancaster to "establish" Christianity as the preferred religion. 710 F.3d at 1090. Therefore, the *Rubin* court's focus was vastly different that the focus of this Court in this case. Plaintiffs appear unwilling or unable to accept this fundamental premise.

[2] Plaintiffs also blatantly misstate the record when they assert that Ms. Kuester "did nothing to continuously update the list of invokers." (Motion at 5). Ms. Kuester actually provided examples in her testimony regarding the ways in which she added to potential "invocators" to the list she maintained, and there was not a scintilla of evidence that she did so based upon the religious viewpoint of such potential invocators or the content of any potential invocation. *Cf. Rubin*, 710 F.3d at 1098.

- 5 -

breach of the Establishment Clause." *Rubin*, 710 F.3d at 1091. A necessary corollary to that inquiry was whether the municipality's selection process amounted to placing "its 'official seal of approval' on Christianity." *Id.* at 1097 (quoting *Marsh v. Chambers*, 463 U.S. 783, 792 (1983)). It was for that reason (and that reason alone) that the Ninth Circuit explored and articulated the ways in which the city in that case sought to formalize the selection process, and to *avoid* selections based upon religious viewpoint. *Id*. at 1098. Nowhere did the *Rubin* court analyze those formalities in a discrimination context; nor did the *Rubin* court suggest that such formalized practices were constitutionally required.[3]

Finally, Plaintiffs' argument that the Court "conflated" its analysis (Motion at 6) is wholly specious, because it ignores the actual testimony and evidence introduced at trial. Plaintiffs claim that it is "unavoidable" that "TST's exclusion was prompted by thousands of emails in objection to a Satanic . . . invocation." (*Id.*) But, Plaintiffs ignore that their mere *ipse dixit* is no substitute for proof. The Court determined (correctly) that Plaintiffs failed to "prove by a preponderance of the evidence that Mr. Biesemeyer acted on the basis of Plaintiffs' religious beliefs, or even that those beliefs were a substantial motivating factor in his decision." (Doc. 92 at 17).[4] Therefore, the Court conflated nothing. Instead, it rightly

---

[3] In any event, even on this non-dispositive point, Plaintiffs ignore their failures to adduce evidence at trial. In *Rubin*, the Ninth Circuit noted a lack of sectarian endorsement because "[n]o person attending a city-council meeting, including a city employee or official, [was] required to participate in any prayer," "[n]o volunteer [was] paid to pray," "[n]either the council nor the clerk could 'engage in any prior inquiry, review of, or involvement in, the content of any prayer to be offered,'" and "the clerk ha[d] never removed a congregation's name from the list of invitees or refused to include one." 710 F.3d at 1097. Here, Plaintiffs utterly failed to adduce evidence that the City operated with a contrary paradigm. There was no evidence that any invocator was "required to participate in any prayer" or "paid to pray." *Id*. Moreover, *every* City witness testified that he or she did not inquire into the religious viewpoint of any proposed speaker or seek to know the content of any proposed invocation. *Id*. Finally, Ms. Kuester *never* testified that she "refused to include" any religious sect on the list that she maintained, and she did not testify that she had ever "removed" a religious sect from the list she maintained. *Id*.

[4] Plaintiffs obstinately ignore that Mr. Biesemeyer—not members of the Council, not the Mayor, and not Ms. Kuester—made the decision to apply the City's long-standing practice to

- 6 -

determined that "Plaintiffs have not carried their burden of proof." (*Id.*) Plaintiffs did not establish that Mr. Biesemeyer considered, or even saw, the emails they now insist are dispositive (he did not), and do not even attempt to point to new evidence to remedy their failure (there is none). Accordingly, they provide absolutely no basis for the Court to revisit its credibility determinations or its conclusions.

### B. Plaintiffs' equal protection arguments are baseless.

With respect to Plaintiffs' equal protection claim, Plaintiffs' Motion fails to demonstrate that the Court erred in any respect. First, Plaintiffs' very assertion that the Court failed to engage in "an analysis" of Plaintiffs' equal protection claim (Motion at 6) is incorrect as a matter of historic fact. Second, the Equal Protection Clause does not convey Plaintiffs any right in the government speech that comprises invocations. Third, even setting those fatal threshold issues aside, Plaintiffs' equal protection arguments are wrong on the merits.

#### 1. Plaintiffs' assertion that the Court failed to rule on their equal protection claim is without merit.

Plaintiffs' most fundamental error is their abject failure to credit the Court's consideration and resolution of their equal protection claim based on a threshold dispositive issue—that the claim fails because Plaintiffs failed to prove at trial any discriminatory intent in Mr. Biesemeyer's decision. Plaintiffs boldly contend this Court simply forgot about their equal protection claim. "We also sued under the Equal Protection Clause but there is no Equal Protection analysis." (*Id.* at 2.) Plaintiffs are wrong.

---

the entity on whose behalf Mr. Zarzycki made the request. (Doc. 97 at 12) ("The Council and Mayor do not direct administrative decisions. Mr. Biesemeyer testified that the decision on whether Plaintiffs would be permitted to give an invocation was administrative. He was responsible for making the decision, and testified that no other person within the City had the power or duty to decide the issue."). Despite this finding, Plaintiffs assert that Mr. Biesemeyer's admitted non-discriminatory decision is "irrelevant." (Motion at 6). Again, Plaintiffs are "dead wrong."

- 7 -
4817-7059-9606 v14 [53387-11]

To challenge a facially neutral policy under the Equal Protection Clause, Plaintiffs bore the burden to persuade the Court on the threshold issue of whether there was an intent to discriminate. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Plaintiffs failed to satisfy this initial inquiry at trial, and their Motion fares no better. The Court correctly identified and specifically observed this threshold issue—and ultimately concluded that Plaintiffs simply failed to meet their burden to adduce evidence at trial that the City intended to discriminate against Plaintiffs on the basis of religion or any other unlawful basis. (Doc. 92 at 3 (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). In fact, Mr. Biesemeyer's testimony stood unrefuted that he (1) did not deny the requested invocation because of Plaintiffs' beliefs, and (2) he denied the requested invocation solely because he knew that Plaintiffs were based in Tucson and had no connection to Scottsdale. (Doc. 92 at 13–14.) The Court found that Mr. Biesemeyer had not seen or been influenced by various councilmembers or citizens' statements, and felt free to make his own decision. (Doc. 92 at 14.)

Stated differently, the Court correctly concluded that Plaintiffs failed to meet their burden on their Equal Protection claim because they failed to demonstrate that Mr. Biesemeyer, as the City's decision-maker, made his decision with reference to Plaintiffs' religion, let alone with an intent to discriminate on the basis of Plaintiffs' religion. The Court's findings of fact clearly reflect that Plaintiffs failed to establish that critical fact by a preponderance of the evidence. (*Id.* at 12.)

### 2. Plaintiffs have no equal protection claim predicated upon government speech.

The Court's conclusion based on the facts presented to the Court is independently sufficient to withstand review under Rule 59. Plaintiffs have made no showing of clear error or any other reason to warrant to the Court's reconsideration of Plaintiffs' equal protection claim. But the Court's decision is correct for another reason—the Equal Protection Clause

- 8 -

4817-7059-9606 v14 [53387-11]

does not create *any* right to speak on behalf of the government, and an equal protection claim simply cannot lie when the claimed violated right involves government speech.

"[I]ndividuals . . . have no personal interest in government speech on which to base an equal protection claim." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 970 (9th Cir. 2011). Invocations are, as a matter of law, government speech. *Simpson v. Chesterfield Cty. Bd. of Sup'rs*, 404 F.3d 276, 288 (4th Cir. 2005) (affirming summary judgment on equal protection claim because an invocation "was government speech 'subject only to the proscriptions of the Establishment Clause'" (quoting *Rosenberg v. Rector*, 515 U.S. 819, 820 (1995)); *Fields v. Speak of Penn. House of Reps.*, 936 F.3d 142, 159 (3d Cir. 2019). Because Plaintiffs have no personal interest in government speech, the City's denial of their invocation cannot be a denial of equal protection as a matter of law. *Johnson*, 658 F.3d at 970; *Simpson*, 404 F.3d at 288; *Fields*, 936 F.3d at 159. For this reason, Plaintiffs cannot show that the Court committed "clear error" such that they are entitled to Rule 59 relief.

### 3. Plaintiffs' equal protection arguments are substantively flawed.

Setting aside the Court's prior rejection of Plaintiffs' equal protection challenge and the legal barrier to an equal protection challenge to government speech, Plaintiffs' remaining arguments regarding their Equal Protection Clause claims are, in any event, meritless. First, Plaintiffs' assertion that the Court should consider anyone's intent besides Mr. Biesemeyer's is simply incorrect as a matter of law. Second, Plaintiffs' attempt to satisfy strict scrutiny is without merit. Finally, Plaintiffs' attempt to belatedly urge that Mr. Biesemeyer's decision fails intermediate or rational basis is neither timely nor indicative that the Court committed clear error in its analysis.

- 9 -
4817-7059-9606 v14 [53387-11]

          **a.** **Plaintiffs are simply incorrect that the Court could impose liability for any statements other than Mr. Biesemeyer's.**

Plaintiffs treat the City as a monolith and assume that any statement by a councilmember can expose the City to liability under 42 U.S.C. § 1983. But that, yet again, is contrary to well-settled law. A municipality is liable pursuant to 42 U.S.C. § 1983 *only if* a plaintiff can demonstrate that the alleged constitutionally infirm conduct was undertaken pursuant to that municipality's established policy as articulated by the individual with final decision making authority. *E.g.*, *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978); *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). It was undisputed that Mr. Biesemeyer was the final decision-maker for the City with respect to denying Plaintiffs' request. *Id*. Yet, the Court found that Mr. Biesemeyer did not discriminate against them on the basis of their religion, and found Plaintiffs failed to show that Mr. Biesemeyer acted with any discriminatory intent. (Doc. 92 at 12.) Under 42 U.S.C. § 1983, this properly ended the Court's inquiry.

          **b.** **Plaintiffs have failed to demonstrate the denial is subject to strict scrutiny.**

Totally undeterred by their failure to prove that the City intended to discriminate via its facially neutral practice, Plaintiffs now posit that if the Court simply skips that step, then the evidence at trial requires a strict scrutiny analysis. Plaintiffs claim that Mr. Biesemeyer's actions were subject to strict scrutiny because Plaintiffs purportedly comprise a "suspect class" and because Mr. Biesemeyer purportedly impinged upon the exercise of a "fundamental right." Of course this argument fails for at least two independent reasons. First, as noted above, strict scrutiny does not apply here because the practice at issue is a facially neutral policy and was not predicated upon any unlawful discrimination. Second, Plaintiffs surely waived any argument to the contrary by failing to frame the issue in the Final Joint Pretrial Order.

- 10 -

"Strict scrutiny does not apply when [a policy] is not content-based, does not infringe upon a fundamental right, and does not concern a suspect or semi-suspect class." *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1141 (9th Cir. 2011). The City's policy is to permit only those with a substantial connection to the City to deliver the invocation. That classification is not content-based, it does not infringe upon a fundamental right, and it does not concern a suspect class. The fact that Michelle Shortt, who by her own admission had no connection to the City of Scottsdale, is also the member of a purported religion does not make the classification of putative invocators "suspect." Indeed, Plaintiffs' argument would mean that, if the City denied an invocation invitation to an Alaska resident with no substantial connection to the Scottsdale community, and that Alaska resident also happens to be Inuit, then the City's denial would be subjected to strict scrutiny. There is no authority to support such a bizarre construction of the Equal Protection Clause.

Second, Plaintiffs waived the ability to even make this argument because it was not framed as a contested issue of fact or law in the Final Joint Pretrial Order. Fed. R. Civ. P. 16(e); *Patterson v. Hugest Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993) (holding that the final pretrial order controls the litigation and a district court abuses its discretion by deciding issues not raised in that document); *Teamsters Local 617*, 282 F.R.D. at 220 (explaining that a post-judgment motion may not be used to raise new arguments). Indeed, although whether Plaintiffs constitute a religion was a question at issue in this litigation, Plaintiffs *never* asserted that they constituted a "suspect class" for purposes of a strict scrutiny analysis under the Equal Protection Clause, nor did they frame as an issue to be tried that the City's conduct was subject to "strict scrutiny." The words "strict scrutiny" do not appear *anywhere* in the Final Pretrial Order. Plaintiffs' attempt to raise these arguments now is improper.

        **c.**        **Plaintiffs' assertion that the denial is subject to intermediate scrutiny or rational basis scrutiny is also meritless.**

As a Hail Mary, Plaintiffs urge that the Court committed clear error because the City's policy cannot survive intermediate or rational basis scrutiny. But again, Plaintiffs failed to raise either intermediate scrutiny or rational basis scrutiny in the Final Pretrial Order, and their arguments in that regard are waived. Fed. R. Civ. P. 16(e); *Patterson*, 11 F.3d at 950; *Teamsters Local 617*, 282 F.R.D. at 220.  Further, the intermediate scrutiny arguments are virtually nonsensical, and the analysis of the Privileges and Immunities Clause is of no moment here. Finally, the City unquestionably has a legitimate and articulable basis for its policy.

        **i.**        **Plaintiffs' intermediate scrutiny and rational basis arguments are untimely and waived.**

Plaintiffs spill much ink urging, for the first time, that the denial of the requested invocation somehow violates the Equal Protection Clause under either an intermediate scrutiny or rational basis standard. Nonsense. Plaintiffs *have never urged* that an intermediate or rational basis review standard applied or was violated at any point in this case. Indeed, in the Final Pretrial Order, Plaintiffs asserted that the only issue "before the Court is whether the policy was enacted out of religious animus." (Doc. 73 at 16.) The words "intermediate scrutiny" or "rational basis" do not appear anywhere in the Final Pretrial Order. Plaintiffs have certainly never asserted that their claims arise under the Free Speech Clause of the First Amendment or the Privileges and Immunities Clause of Article IV, § 2, clause 2 of the U.S. Constitution. And Plaintiffs have never asserted that the City's invocation policy had no rational basis or was arbitrary. Plaintiffs' attempt to litigate those questions now—months after trial—is manifestly unfair to the City, which has never been put on notice that Plaintiffs would raise such arguments. Plaintiffs are barred from belatedly raising those issues that were

- 12 -

not included in the Final Pretrial Order, particularly in a post-judgment motion to amend the Court's judgment. *Patterson*, 11 F.3d at 950; *Teamsters Local 617*, 282 F.R.D. at 220.

### ii. Plaintiffs' intermediate scrutiny arguments are meritless.

In any event, Plaintiffs' purported bases for applying intermediate scrutiny are frivolous. First, Plaintiffs erroneously assert that the denial of the invocation was a content-neutral regulation of speech subject to intermediate scrutiny. (Motion at 13.) But, as with so many arguments in the Motion, Plaintiffs never raised *any* arguments under the Free Speech Clause of the First Amendment in the Final Pretrial Order, and this argument is waived and improper. *Patterson*, 11 F.3d at 950; *Teamsters Local 617*, 282 F.R.D. at 220. Also, because invocations are government speech, the First Amendment's Free Speech Clause simply does not apply. "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009). In any event, Plaintiffs do not provide—and have never provided—any free speech analysis regarding the City's policy. Plaintiffs' assertion that Mr. Biesemeyer's actions are subject to intermediate scrutiny under the First Amendment's Free Speech Clause is simply without merit.

Second, Plaintiffs' assertion that the Constitution's guarantee of freedom of travel is implicated here is absurdly misplaced. Plaintiffs distort the holding in *United Building and Construction Trades Council v. City of Camden*, 465 U.S. 208 (1984), to fallaciously argue that the Privileges and Immunity Clause bars any government action establishing disparate treatment based on municipal residency. In fact, *Camden* only applied the Privileges and Immunities Clause to a city ordinance favoring city residents *because it affected citizens who resided out of state*. *Id.* at 217. It is axiomatic that the Privileges and Immunities Clause does not apply to intrastate conduct (even discriminatory conduct). *Id.*; *Darkins v. Snowden*, No. CV 13-3831-JLS MAN, 2013 WL 5530977, at *6 (C.D. Cal. Oct. 1, 2013), *aff'd*, 649 F.

- 13 -

App'x 492 (9th Cir. 2016) ("The Privileges and Immunities Clause has no application when a State's resident complains about a law applicable to the residents of his State."). Moreover, the Privileges and Immunities Clause does not protect corporate entities. *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2460 (2019). Accordingly, because Ms. Shortt is an Arizona resident and because the corporate Plaintiffs have no rights under the Privileges and Immunities Clause, Plaintiffs' Privileges and Immunities argument fails as a matter of law.

Even if this were not the case, the undisputed facts render Plaintiffs' argument nonsensical. The City's practice of inviting representatives from groups with a substantial connection to the Scottsdale community to deliver invocations does not discriminate between residents and non-residents. There was no evidence, and Plaintiffs did not prove, that non-residents with a substantial connection to the City are unwelcome. Indeed, Michelle Shortt admitted that she never had—and still does not have—*any* connection to the City of Scottsdale. Plaintiffs were excluded from delivering an invocation not because they resided outside City limits, but because they lacked a substantial connection to the Scottsdale community. Plaintiffs' intermediate scrutiny arguments are baseless.

### iii. Plaintiffs' rational basis arguments are without merit.

Because the policy at issue does not classify individuals on the basis of improper criteria, it is, at most, subject to rational basis review—an analysis the City's policy easily survives. *See Valeria v. Davis*, 307 F.3d 1036, 1039 (9th Cir. 2002) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

Plaintiffs feign ignorance with respect to their senseless and untimely rational basis argument by stating that the City offered no legitimate governmental purpose for its

- 14 -

1  legislative invocation policy.[5] But Plaintiffs' disagreement with the City's rationale is
2  insufficient to overcome rational basis scrutiny. "Equal protection is not a license for courts to
3  judge the wisdom, fairness, or logic" of governmental policy making, and a policy must be
4  upheld if "there is any reasonably conceivable state of facts that could provide
5  a rational basis for the classification." *FCC v. Beach Commc'ns., Inc.*, 508 U.S. 307, 313
6  (1993). Both the law, and evidence in this case, are clear that the function of the invocation
7  policy "lends gravity to public business, reminds lawmakers to transcend petty differences in
8  pursuit of a higher purpose, and expresses a common aspiration to a just and peaceful
9  society." *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 575 (2014).

Although Plaintiffs may disagree with those purposes, such disagreement does not undermine the Court's conclusion that Plaintiffs were not denied equal protection. It is manifest that the City has an interest in adding solemnity, gravity, a fostering a just and peaceful public discourse. It is absolutely rational and reasonable for the City to wish for that message to come from individuals or organizations who are part of, and have a vested interest in, the Scottsdale community. Nothing in the Constitution requires that the City look outside of its borders and to seek invocations from individuals or entities that are not part of the Scottsdale community. *Id.* at 585-86. Plaintiffs' disagreement with that policy is simply insufficient for the Court to second-guess that reasoned policy decision. This argument was not properly raised, is not properly before the Court, and it is certainly not a basis for finding the clear error required for Plaintiffs to prevail on their Motion.

---

[5] In Plaintiffs' view, the City is apparently at fault for not swinging wildly at points of law not raised by the pleadings and not included in the Final Pretrial Order. But litigation—especially trial—is supposed to be an orderly, process-driven exercise framed by the Final Rule 16 Pretrial Order. *Patterson*, 11 F.3d at 950. Plaintiffs' apparent belief that they can raise issues at their leisure, *post hoc*, is deeply mistaken.

### C. Plaintiffs' request that the Court reconsider its evidentiary rulings are untimely and without merit.

Plaintiffs' last-ditch effort asks the Court to reconsider its ruling that Exhibit 5 and Exhibit 8 are inadmissible as hearsay. Plaintiffs' argument is without merit.

First, Plaintiffs' request is not the proper subject of a Rule 52 or 59 motion, and is instead a motion for reconsideration of this Court's ruling. That request for reconsideration is improper. First, "no motion for reconsideration shall repeat in any manner *any oral or written argument made in support of or in opposition to the original motion.*" *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 586 (D. Ariz. 2003). Plaintiffs have done nothing but recapitulate the same arguments urged at trial in response to the City's request that the Court exclude those exhibits, and denial is the only appropriate result. The Court should deny Plaintiffs' untimely retread of the arguments they have lost, and the Court's ruling was analytically correct. *Bennett v. Yoshina*, 98 F. Supp. 2d 1139, 1154 (D. Haw. 2000).

Moreover, a motion for reconsideration *must be filed* within 14 days of the order containing the ruling to which a party objects. LR Civ. P. 7.2(g). Plaintiffs did not ask that the Court reconsider its determination on the admissibility of Exhibit 5 or Exhibit 8 within 14 days, and thus their motion is unquestionably untimely. *Id.*

But even absent those bars, Plaintiffs' request is utterly futile. The Court has already determined that the admission of Exhibit 5 and Exhibit 8 would have no impact upon the outcome in this case because Mr. Biesemeyer never saw those exhibits. (Doc. 92 at 16.)

### III. Conclusion

Plaintiffs' Motion is an act of desperation by litigants who have failed to meet their burden of proof despite a two-day trial before this Court. The Motion is not timely and presents no legitimate basis for the Court to reconsider its prior rulings. The Court should deny the Motion.

- 16 -

4817-7059-9606 v14 [53387-11]

1  **RESPECTFULLY SUBMITTED** this 27th day of March, 2020.

2                                **DICKINSON WRIGHT PLLC**

3                      By: */s/ Scot L. Claus*
                          Scot L. Claus
4                            Vail C. Cloar
                          Holly M. Zoe
5                            1850 North Central Avenue, Suite 1400
                          Phoenix, Arizona 85004-4568
6                            *Attorneys for Defendant City of Scottsdale*

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 27th, 2020, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

                              By:  */s/ Sheila Rath*