1 **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Satanic Temple, et al., | No. CV-18-00621-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Scottsdale, et al., | |
| Defendants. | |

Following a bench trial, the Court entered an Order and Judgment holding that Plaintiffs had failed to carry their burden of proving that Defendant City of Scottsdale discriminated against them on the basis of their religious beliefs or identity. Doc. 92. Plaintiffs have now filed a motion seeking amended findings under Rule 52(b) and an altered and amended Order and Judgment under Rule 59. Doc. 97. Plaintiffs do not seek a new trial. *Id.* With the exception of one additional finding under the *Arlington Heights* case, the Court will deny the motion.

**I.      Plaintiffs' *Rubin* Argument.**

Plaintiffs argue that the Court should hold the City liable for violating the Establishment Clause because the City did not adopt formal procedures comparable to those discussed in *Rubin v. City of Lancaster*, 710 F.3d 1087 (9th Cir. 2013). The Court's Order and Judgment rejected this argument:

> [The] plaintiffs in *Rubin* brought a very different claim than the one at issue here. They made a broad challenge against the City of Lancaster's legislative prayer policy, arguing that it had the effect of placing the city's "'official seal of approval' on Christianity." *Id.* at 1097. Plaintiffs have never made a similar claim. They instead assert that they were discriminated against on a specific occasion. *Rubin* discussed the City of Lancaster's procedures in deciding whether its policy was truly neutral, but it did not hold that such procedures are required by the Establishment Clause or are necessary to withstand a claim of specific-instance discrimination. The question here is why the City denied Plaintiffs' invocation request. The Court has resolved that issue above. *Rubin* does not require a different result.

Doc. 92 at 17. This ruling continues to be correct.

### A. *Rubin* Is Inapposite.

Plaintiffs assert a claim of specific-instance discrimination. They claim that the City discriminated against them on the basis of their religious beliefs when, on May 23, 2016, it declined to permit their legislative invocation. This claim continues in Plaintiffs' motion, where they again emphasize that "the Establishment Clause prohibits discrimination on religious lines" and that legislative prayers must be "nondiscriminatory." Doc. 97 at 3-4.

*Rubin* presented a classic establishment of religion claim. The plaintiffs in *Rubin* did not claim that they had been discriminated against by being denied an opportunity to pray. In the words of the Ninth Circuit: "The problem, they allege, is the 'unwritten policy, practice and custom of the City of Lancaster' under which the majority of city-council invocations have been Christian – and often explicitly so." 710 F.3d at 1095. The plaintiffs claimed, in effect, that the city had established Christianity as the official religion of its city council meetings. *Id.* at 1097. In deciding whether this allegation was true, the Ninth Circuit closely examined the city's invocation selection procedures. It found that the procedures ensured that no category of religion was favored, even if the result was that a majority of the prayers were Christian. *Id.* at 1097-99. Significantly, and contrary to Plaintiffs' argument, the Ninth Circuit did not hold that a city policy violates the Establishment Clause if it fails to match the procedures adopted by the City of Lancaster.

*Rubin* is consistent with the Supreme Court's later decision in *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565 (2014). The plaintiffs in *Greece* made the same claim – "that the town violated the First Amendment's Establishment Clause by preferring Christians over other prayer givers and by sponsoring sectarian prayers, such as those given 'in Jesus' name.'" *Id.* at 572. The Supreme Court rejected this argument, holding that, "[i]n light of the unambiguous and unbroken history of more than 200 years, there can be no doubt that the practice of opening legislative sessions with a prayer has become part of the fabric of our society" and does not violate the Establishment Clause. *Id.* at 576. Significantly, the Supreme Court did not suggest that legislative prayers are constitutional only if a city implements formal procedural safeguards like those described in *Rubin*. Quite to the contrary, the Supreme Court noted that the Town of Greece "followed an informal method for selecting prayer givers" – it used an "informal, imprecise way" of choosing who would give invocations. *Id.* at 571, 597. The Supreme Court nonetheless held the procedures constitutional.

The Court rejects Plaintiffs reliance on *Rubin* for two reasons. First, *Rubin* does not hold that a city's invocation policy must follow certain formal procedures. And the lack of such a requirement was clearly confirmed by *Town of Greece*. Second, this is a very different case. Plaintiffs assert a claim of discrimination. They do not contend that the City's invocations reflect a particular religious view. Indeed, they did not present evidence at trial concerning the contents of any prayers given before the City Council. *Rubin* is thus distinguishable.[1]

**B.    The Court Properly Focused on the Sole City Decisionmaker.**

Plaintiffs' motion and reply argue that the Court's focus in this case should be on the City, not on whether "Mr. Biesemeyer is, personally, a bigot." Doc. 105. This argument fundamentally misstates the Court's holding and completely disregards key

---

[1] The Court reached the same conclusion when it ruled from the bench on the parties' summary judgment motions: "[I]t's suggested in the briefs that the mere informality of Scottsdale's policy is a constitutional violation in itself. I don't agree with that. *Town of Greece* upheld an informal unwritten policy, and the *Rubin* case, although it described in some detail a written policy, never said that that kind of policy is required to pass constitutional muster." Doc. 52 at 36.

factual findings. The Court's Order and Judgment made these specific findings based on the evidence presented at trial:

- Mr. Biesemeyer was the acting City Manager when Plaintiffs' request was denied. He possessed all powers of the City Manager, was the chief executive of the administrative branch, and was responsible for administration of all City affairs not assigned to another City officer.

- The City Manager makes administrative decisions. The Council and Mayor do not direct administrative decisions.

- The decision on whether Plaintiffs would be permitted to give an invocation was administrative. Mr. Biesemeyer was responsible for making the decision. No other person within the City had the power or duty to decide the issue.

- After conferring with the City Attorney's office, Mr. Biesemeyer decided to deny Plaintiffs' request because they did not meet the longstanding practice of having a substantial connection to the City.

- Mr. Biesemeyer did not make the decision at the direction of the City Council or the Mayor and did not seek their approval.

- Plaintiffs presented no evidence that Mr. Biesemeyer knew about five of the seven facts they cited to show that the decision was based on their religious beliefs – the Mayor's campaign material, the Mayor's email statement, Ms. Klapp's editorial, and the emails of Littlefield and Smith.

- When the credibility of Mr. Biesemeyer's and Ms. Kuester's testimony is taken into account, the Court finds that the other two items of evidence relied on by Plaintiffs – the thousands of emails received by the City and Ms. Klapp's statement to Mr. Biesemeyer – do not prove by a preponderance of the evidence that Mr. Biesemeyer acted on the basis of Plaintiffs' religious beliefs, or even that those beliefs were a substantial motivating factor in his decision.

Doc. 92 at 12-17.

These findings are fully supported by the record and not contradicted by Plaintiffs' trial evidence or anything contained in their motion. Plaintiffs had ample opportunity and a full arsenal of discovery tools to gather contrary evidence in this case, and yet they failed to present such evidence. They did not prove by a preponderance that the City Council or the Mayor made the decision; that the City Council, Mayor, or emails influenced Mr.

Biesemeyer's decision; or that he acted on the basis of Plaintiffs' religion. Plaintiffs cannot cover this lack of evidence simply by claiming the discrimination is obvious.

**II.  Equal Protection.**

Plaintiffs contend that the Order and Judgment "lacks" an Equal Protection analysis. Not so. The Order and Judgment reached this conclusion on Plaintiffs' Equal Protection claim:

> "[D]iscriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *see also Ave. 6E Invs., LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 504 (9th Cir. 2016) ("Under *Arlington Heights*, a plaintiff must simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant and that the defendant's actions adversely affected the plaintiff in some way.") (quotation marks and citation omitted).
>
> Thus, to prevail on their Establishment Clause and Equal Protection claims, Plaintiffs must prove by a preponderance of the evidence that the City's denial of their request to give an invocation was based on Plaintiffs' religious beliefs.

*Id.* at 3-4. The Court then engaged in a detailed consideration of the evidence and found that Plaintiffs had failed to prove the City's decision was based on their religious beliefs. *Id.* at 12-18. As a result, they did not prove their Equal Protection claim.

**A.  The Issues Identified For And Presented At Trial.**

Plaintiffs' motion claims that this is an insufficient analysis, but this analysis in fact addresses the Equal Protection arguments Plaintiffs made before and during trial. Plaintiffs argued that an Equal Protection violation occurred because the City denied their right to pray on the basis of religious animus.

In their proposed Final Pretrial Order, the parties set forth their respective positions on the factual and legal issues to be tried. *See* Doc. 73. Plaintiffs' position was consistent throughout the Final Pretrial Order: "Plaintiffs contend that the 'substantial connection' [requirement] is a pretext to conceal the City's religious animus." *Id.* at 5. "The public statements made by various officials remove all doubt that there was a religious animus."

*Id.* at 7. "The 'substantial connection' policy is a pretext to conceal the religious animus at play in prohibiting Plaintiffs, and only Plaintiffs, from participating in the otherwise all-comer policy." *Id.* at 12. "The question before the Court is whether the policy was enacted out of religious animus[.]" *Id.* at 16.

Before trial, Plaintiffs also filed Proposed Findings of Fact and Conclusions of Law ("Findings and Conclusions) – in effect, the order Plaintiffs wanted the Court to enter after trial. *See* Doc. 72-1. Defendants did the same. *See* Doc. 74. Plaintiffs' proposed Findings and Conclusions included only four sentences on their Equal Protection claim, and those sentences also keyed on the City's alleged religious animus:

> 61. The Equal Protection Clause also prohibits governmental disparate treatment among religions.
>
> 62. When the policy at issue is motivated by religious animus, the question becomes whether it can survive strict scrutiny.
>
> 63. The City has not offered a plausible, secular, basis for why Plaintiffs – and only Plaintiffs – can or should be prohibited from the legislative invocation ceremony.
>
> 64. The City has thus also violated Equal Protection Clause.

Doc. 72-1 at 6-7.

Plaintiffs closing argument at the end of trial likewise based their Equal Protection claim on the City's alleged religious animus:

> There is no question that religious animus [was] a substantial motivating factor behind the substantial connection policy. If the court takes that as true the burden now shifts under our Equal Protection analysis. Equal Protection says if you have a minority religion and religious beliefs taking part [in] the creation of a policy, then the government must show . . . under strict scrutiny [that] the government has a compelling state interest that is narrowly tailored to meet that end.

Court's LiveNote Transcript, January 23, 2020, at 190.[2]

---

[2] The Court quotes from the LiveNote transcript created during the course of trial, rather than an official transcript, because the parties have not ordered an official transcript

Because Plaintiffs argued in this closing that religious animus was a "substantial motivating factor" in the City's decision, the Court specifically addressed that issue in its order. After examining the evidence, the Court found that Plaintiffs had failed to prove that "Mr. Biesemeyer acted on the basis of Plaintiffs' religious beliefs, or even that those beliefs were a substantial motivating factor in this decision." Doc. 92 at 17. As a result, the Court found, "Plaintiffs have not carried their burden of proof." *Id.*

In summary, Plaintiffs' arguments before and during trial grounded their Equal Protection claim on the City's alleged religious animus. The Court essentially adopted Plaintiffs' proposed test: "to prevail on their Establishment Clause and Equal Protection claims, Plaintiffs must prove by a preponderance of the evidence that the City's denial of their request to give an invocation was based on Plaintiffs' religious beliefs." *Id.* at 4. Plaintiffs, however, failed to present evidence that satisfied this test.

**B.**     **Plaintiffs' New Arguments.**

Plaintiffs' motion takes a very different approach. It sets forth 11 pages of Equal Protection argument and analysis that were never included in their Final Pretrial Order, Findings and Conclusions, or arguments at the close of trial. *See* Doc. 97 at 6-16. This new analysis includes three levels of scrutiny – strict, intermediate, and rational basis – that cannot be found in the same form in the Final Pretrial Order, Findings and Conclusions, or trial arguments. The motion asserts that some of these levels of scrutiny should be invoked even if Plaintiffs have not shown that the City acted out of religious animus, and includes citations to more than 25 cases that were not cited in the pretrial documents or the trial and that do not represent a post-trial change in the law. *Id.*[3]

At the Final Pretrial Conference – the event held to ensure that all participants were on the same page for trial – the Court adopted the parties' Final Pretrial Order as the

---

for the trial. The LiveNote transcript is created simultaneously with the transcription and has not been reviewed or corrected by the court reporter.

[3] Plaintiffs never mentioned the phrase "strict scrutiny" in their Final Pretrial Order. *See* Doc. 73. They did use the phrase in their Findings and Conclusions and closing argument, but only in asserting that such scrutiny is triggered by a finding of religious animus. *See* Doc. 72-1 at 7, Court's LiveNote Transcript, January 23, 2020, at 190.

- 7 -

blueprint for the trial. *See* Doc. 81. Rule 16 provides that the Final Pretrial Order may thereafter be altered "only to prevent manifest injustice." Fed. R. Civ. P. 61(e). The parties were fully aware of this high bar to changing their positions – the Court emphasized at the Final Pretrial Conference that the issues to be tried would not be revised without meeting Rule 16(e)'s requirement:

> I've read the final pretrial order. I'm going to adopt it as the final pretrial order in this case and, therefore, as you know under Rule 16(e) it will be the blueprint for the trial and issues or evidence not set forth in the final pretrial order can only be considered if a failure to do so would create manifest injustice under Rule 16(e). So this is the guide for the trial.

Court's LiveNote Transcript, January 13, 2020, at 77.

Holding the parties to the positions and arguments set forth in the Final Pretrial Order is not arbitrary or unfairly limiting. The parties themselves prepared the order, and holding them to it enabled everyone to prepare for trial knowing all of the issues and claims that would be addressed. It avoided the unfairness of unexpected trial surprises and it was entirely consistent with the structure and intent of the Federal Rules of Civil Procedure. As the Supreme Court has noted, "a final pretrial order . . . supersede[s] all prior pleadings and control[s] the subsequent course of the action[.]" *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) (citation and quotation marks omitted); *see also Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 878 (7th Cir. 2005) ("The rules contemplate that the complaint will be superseded by pretrial orders (*see* Rule 16(e)), which among other things will define the issues for adjudication."). Recognizing the fairness of this approach, the Ninth Circuit has "consistently held that issues not preserved in the pretrial order have been eliminated from the action." *S. Cal. Retail Clerks Union & Food Employers Joint Pension Tr. Fund v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984).[4]

---

[4] Among the many new arguments contained in Plaintiffs' motion are these: The Satanic Temple ("TST") is a "suspect class"; TST was subjected to a "special hurdle"; the City's policy "silences speech and gives preferential treatment to residents over nonresidents"; the policy "impinge[s] on the exercise of a fundamental right"; TST is in a position of "political powerlessness"; the policy is "presumptively unconstitutional"; strict scrutiny is required because of the "Free Speech Clause"; "[o]nce it is shown that discriminatory intent was a 'motivating' factor behind enacting the law, the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this

- 8 -

Plaintiffs have not met the high threshold of Rule 16(e). They have not shown that a failure to consider their new arguments would cause manifest injustice. To the contrary, permitting Plaintiffs to assert their elaborate new arguments at this late stage would be manifestly unjust to the City, which tried this case on the basis of issues and arguments framed by the parties in the Final Pretrial Order. The City was not alerted to the need to present evidence Plaintiffs now claim is missing. Plaintiffs cannot change their theory of the case after they lose, even if they now find that their original theory was flawed.

This conclusion is entirely consistent with Rule 59(e), under which Plaintiffs seek to alter or amend the Order and Judgment. As the Supreme Court has explained: "Rule 59(e) permits a court to alter or amend a judgment, but it "may not be used to relitigate old matters, *or to raise arguments or present evidence that could have been raised prior to the entry of judgment.*" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127-128 (2d ed. 1995)) (emphasis added); *see also Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.") (citation omitted).

The Court will not address Plaintiffs' new arguments. Plaintiffs had ample opportunity to craft those arguments and preserve them for trial, but they failed to do so.

---

factor"; "the analysis turns on whether an outside observer would believe that, after the following sequence of events, the City expressed a 'message of . . . disapproval' about TST" (then listing seven events); the City's actions raise various "red flags" that should prompt close constitutional scrutiny; the Court should apply the "'substantial departure' test"; the "Privileges and Immunities Clause . . . broadly protects the right to travel and prohibits [governments] from disparately treating people based on" where they live; "intermediate scrutiny should apply if the Court finds that TST's religious message had nothing to do with its preclusion"; "cities cannot, without 'substantial reason,' discriminate in favor of their residents"; "[t]he City failed to sustain its burden to show that it studied the matter, found an evil, and propounded a regulation [that] makes a classification which shares a close relationship with curing that evil"; the policy fails even "rational basis" scrutiny; "the City never offered a legitimate governmental interest and never offered explanation for how the policy is rationally related to any legitimate interest." Doc. 97 at 7-15. These new issues are not "baby steps" in Plaintiffs' Equal Protection claim, as Plaintiffs now contend in trying to justify their failure to raise them earlier. Doc. 105 at 7. These issues would fundamentally change the nature of the trial and cannot be added at this late date.

### C. Further *Arlington Heights* Analysis and Finding.

As noted above, the Court's Equal Protection analysis relied on the Supreme Court's statement that "discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights*, 429 U.S. at 265. The Court has again read *Arlington Heights* in connection with this order, and notes that the Supreme Court called for trial courts to determine whether discriminatory animus was a "motivating factor" in the governmental decision being challenged under the Equal Protection Clause. *Id.* at 266. The Supreme Court made clear that courts should consider a range of evidence in making this determination, including such things as the discriminatory impact of the government's decision, a clear pattern of discriminatory conduct, the historical background and sequence of events leading up to the decision, departures from normal procedures, and the testimony of participants. *Id.* at 266-68.

The Court considered all such evidence in reaching its original decision, and has considered it again in connection with this order. As noted in the Order and Judgment, the Court found Mr. Biesemeyer and Ms. Kuester to be credible witnesses. Doc. 92 at 14-15, 17. Plaintiffs failed to present evidence that five of Plaintiffs' seven indicia of religious animus were known to Mr. Biesemeyer, and the Court found him credible when he testified that he did not know about them. *Id.* at 16-17. Further, "when the credibility of Mr. Biesemeyer's and Ms. Kuester's testimony is taken into account, the Court finds that the other two matters – the thousands of emails and Ms. Klapp's statement to Mr. Biesemeyer – do not prove by a preponderance of the evidence that Mr. Biesemeyer acted on the basis of Plaintiffs' religious beliefs, or even that those beliefs were a substantial motivating factor in his decision." *Id.* at 17.

The Court stands by this finding even in the light of Plaintiffs' newly crafted arguments and their renewed emphasis of the unwritten nature of the City's policy and the fact that it had not previously been applied to preclude a legislative prayer. Plaintiffs failed to contradict the City's evidence that Mr. Biesemeyer was the sole administrator tasked with deciding whether they should give the invocation, that he alone made the decision,

that he was not influenced by and did not seek approval of the City Council or Mayor, that he made his decision after conferring with the City Attorney's Office about the City's existing "substantial connection" policy, and that he made his decision on the basis of the policy. The Court found – and finds – that the credibility of Mr. Biesemeyer and Ms. Kuester, as discussed more fully in the Order and Judgment, clearly outweighs Plaintiffs' largely circumstantial case. Thus, to the extent *Arlington Heights* requires only a showing of a "motivating factor" – as opposed to the "substantial motivating factor" Plaintiffs argued at the close of trial – the Court finds that Plaintiffs have failed to prove that their religious views were a "motivating factor" in Mr. Biesemeyer's decision. The Court in effect reaches the same conclusion that was reached in *Arlington Heights*: "Respondents simply failed to carry their burden of proving that discriminatory purpose was a motivating factor in the Village's decision. This conclusion ends the constitutional inquiry." 429 U.S. at 270-71.

**III. Hearsay Ruling.**

Plaintiffs ask the Court, as a "simple housekeeping matter" (Doc. 97 at 16), to revisit its ruling that Exhibits 5 and 8 are inadmissible hearsay. The Court held that Rule 801(d)(2)(D) was not satisfied "because Plaintiffs presented the emails alone, with no evidence that either Ms. Littlefield or Mr. Smith was acting within the scope of their employment as City Council members when they wrote the emails." Doc. 92 at 16. The Court noted that, under Rule 801(d)(2), "[t]he statement must be considered but does not by itself establish . . . the existence or scope of the relationship under (D)." Fed. R. Evid. 801(d)(2). This remains true. Plaintiffs' motion asserts that there was testimony that both writers were members of the City Council and that the emails were received at the City's email address, but those facts do not show that the writers were acting agents of the City when they wrote the emails.

The Order and Judgment also cited *Bennett v. Yoshina*, 98 F. Supp. 2d 1139 (D. Haw. 2000), *aff'd*, 259 F.3d 1097 (9th Cir. 2001), for the proposition that "Plaintiffs' reading of Rule 801(d)(2) to cover all [City] employees would mean that any [City] official

could always be said to be speaking on behalf of the [City] even if the statement intentionally contravened established [City] policy or was unrelated to the [City] official's function." Doc. 92 at 16 (quoting *Bennett*, 98 F. Supp. 2d at 1154). Plaintiffs do not address this conclusion.

Even if Exhibits 5 and 8 were admitted, however, they would not alter the result in this case. As the Court noted in its Order and Judgment:

> [E]ven if the emails were admitted, they would not alter the outcome of this case. Plaintiffs presented no evidence that Mr. Biesemeyer ever saw or knew about the emails or spoke with Ms. Littlefield or Mr. Smith about their views. Mr. Biesemeyer testified that he did not see the emails and was not influenced by the views of City Council members.

Doc. 92 at 16. Because the undisputed evidence shows that Mr. Biesemeyer had no knowledge of the emails or the views of their authors, the emails simply do not show that his decision was based on Plaintiffs' religious beliefs.

**IT IS ORDERED** that, with the exception of the additional *Arlington Heights* finding set forth above, Plaintiffs' Motion for Supplemental and Amended Findings of Fact, and to Alter or Amend the Judgment (Doc. 97), is **denied**.

Dated this 9th day of April, 2020.

_David G. Campbell_
David G. Campbell
Senior United States District Judge