1                    UNITED STATES DISTRICT COURT

2                     FOR THE DISTRICT OF ARIZONA

3                    _____

4   Satanic Temple, et al.,              )
                                         )
5                        Plaintiffs,     )  CV 18-00621-PHX-DGC
                                         )
6          vs.                           )  Phoenix, Arizona
                                         )  January 13, 2020
7   City of Scottsdale, et al.,          )  3:57 p.m.
                                         )
8                        Defendants.     )
    _____)

9

10

11

12

13          BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE

14             REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                 FINAL PRETRIAL CONFERENCE

16

17

18

19

20

21   Official Court Reporter:
    Patricia Lyons, RMR, CRR
22   Sandra Day O'Connor U.S. Courthouse, Ste. 312
    401 West Washington Street, SPC 41
23   Phoenix, Arizona  85003-2150
    (602) 322-7257
24
    Proceedings Reported by Stenographic Court Reporter
25   Transcript Prepared with Computer-Aided Transcription

1                        **A P P E A R A N C E S**

2

3    For the Plaintiffs:

4            Kezhaya Law, PLC
             By: **MATTHEW A. KEZHAYA**, ESQ. (telephonically)
5            1202 NE McClain Rd
             Bentonville, AR  72712
6
             de Haan Law Firm, PLLC
7            By: **STUART P. de HAAN**, ESQ.
             101 E. Pennington St., Ste. 201
8            Tucson, AZ  85701

9

10   For the Defendants:

11           Dickinson Wright, PLLC
             By: **SCOT L. CLAUS**, ESQ.
12           By: **HOLLY M. ZOE**, ESQ.
             By: **VAIL C.B. CLOAR**, ESQ.
13           By: **ALEXANDRA CRANDALL**, ESQ.
             1850 N. Central Ave., Ste. 1400
14           Phoenix, AZ  85004

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

15:57:27  1

2

3          THE COURTROOM DEPUTY:  This is case number CV 18-621,

4    Satanic Temple, et al., versus City of Scottsdale.  On for

15:57:35  5    final pretrial conference.

6          Counsel, please announce for the record.

7          MR. de HAAN:  Stu de Haan for the plaintiffs

8    Satanic Temple and Michelle Shortt.

9          MR. KEZHAYA:  This is Matt Kezhaya.  And I have with

15:57:47 10    me Josie Graves and Sonia Kezhaya, a couple assistants of mine

11    as well.

12          MR. CLAUS:  Good afternoon, Your Honor.  Scot Claus,

13    Dickinson Wright.  Along with me is Vail Cloar, Holly Zoe, and

14    Alexandra Crandall on behalf of the City of Scottsdale.

15:58:03 15          THE COURT:  All right.  Good afternoon.

16          Okay, Counsel, let's just run through items I have on

17    my list first and then I'll see if you have other matters to

18    address.

19          The trial is scheduled for January 22 and 23 as a

15:58:17 20    bench trial.  You indicated in your final pretrial order that

21    there are 11 hours total to be used by the two parties.  We

22    can get that done in two days.  We'll get five-and-a-half

23    hours of trial time in each day.

24          You can be here at 8:45 on the morning of

15:58:36 25    January 22nd, we'll start at 9 o'clock.  We'll go till noon,

15:58:40  1  take a one-hour break, and then go until 4:00 or 4:30, however

2  long we need to to get five-and-a-half hours in, with a

3  15-minute break in the morning and a 15-minute break in the

4  afternoon.

15:58:51  5  So the days we have set aside for trial will be able

6  to accommodate the time that you identified.

7  I've read the final pretrial order.  I'm going to

8  adopt it as the final pretrial order in this case and

9  therefore, as you know, under Rule 16(e) it will be the

15:59:10 10  blueprint for the trial and issues or evidence not set forth

11  in the final pretrial order can only be considered if a

12  failure to do so would create manifest injustice under

13  Rule 16(e).  So this is the guide for the trial.

14  Is the rule of exclusion going to be invoked by

15:59:34 15  either side?

16  MR. CLAUS:  It's going to be by the defendants,

17  Your Honor.

18  THE COURT:  Okay.  My view of the rule is it applies

19  in the courtroom and outside of the courtroom, even though

15:59:45 20  there are a few court decisions that say otherwise.  Meaning

21  witnesses outside of the courtroom shouldn't be told what

22  witnesses in the courtroom are saying.

23  That does not preclude you as counsel from preparing

24  witnesses to testify, but they shouldn't be given any sort of

16:00:04 25  running description of what other witnesses are saying in the

16:00:06 1    case.

2         The plaintiffs have filed a motion to quash the

3    subpoena of Mr. de Haan.  Do you wish to say anything with

4    respect to that from the defendants?

16:00:21 5         MR. CLAUS:  Well, one, the plaintiffs, under Rule 45,

6    don't have standing to file a motion to quash a subpoena.  The

7    subpoenaed party has to file a motion to quash a subpoena.

8    But we plan on filing a written response by Wednesday,

9    Your Honor.

16:00:36 10        THE COURT:  I'd like to hear your response now.

11        MR. CLAUS:  Well, okay.  The response is that the

12   motion to quash isn't proper because the motion to quash

13   wasn't filed by the subpoenaed party.  The motion to quash is

14   improper because it assumes as a necessary predicate that the

16:00:51 15   only questions that are going to be propounded to the witness

16   are questions that will call for privileged communications.

17   And that is not the purpose of naming Mr. de Haan as a

18   witness.

19        In point of fact, Mr. de Haan was not identified as a

16:01:08 20   percipient witness in the MIDP responses filed by the

21   plaintiffs, submitted by the plaintiffs.  Mr. de Haan was not

22   revealed to be a percipient witness until Ms. Shortt was

23   sitting for her deposition as a Rule 30(b)(6) deponent for the

24   Adversarial Truth LLC and for the unincorporated association,

16:01:35 25   which only took place after we objected to Ms. Shortt and the

16:01:43  1   unincorporated association and the named plaintiff being

2   proper parties.

3            It was only at that deposition that Ms. Shortt

4   produced a document which we had marked as Exhibit 50 in

16:01:56  5   our -- I'm sorry, Exhibit 76, it was marked as Exhibit 50 in

6   the deposition -- Exhibit 76 in our exhibits, which is the

7   only stipulated exhibit, interestingly, that the plaintiff has

8   stipulated to.

9            Exhibit 76 was disclosed during the deposition, which

16:02:15  10  shows that Mr. de Haan was not only the organizer for

11  Adversarial Truth LLC.  He is a co-chapter head for

12  Adversarial Truth LLC, and then Ms. Shortt disclosed for the

13  first time in her deposition that Mr. de Haan was the

14  organizer of the meetings for Adversarial Truth LLC and for

16:02:38  15  the unincorporated association of persons that are the

16  plaintiff in this case, that Mr. de Haan took an active role

17  in promoting the organization, that Mr. de Haan was a

18  proponent for seeking to give the invocation for the City of

19  Scottsdale.

16:02:54  20           None of these facts were disclosed by the plaintiffs

21  as part of their MIDP response.  None of these facts were

22  disclosed at all until the deposition of Ms. Shortt as the

23  Rule 30(b)(6) deponent.

24           It was during those depositions and preparation for

16:03:16  25  those depositions as well that they mentioned the documentary

16:03:20  1    Hail Satan.  It was during the deposition actually of

2    Douglas Misicko, who was the 30(b)(6) deponent for the

3    United Federation of Churches, LLC and the Satanic Temple,

4    Inc.  Mr. Misicko identified Hail Satan as a documentary that

16:03:38  5    reflected the beliefs of that organization or those

6    organizations.

7           Upon reviewing Hail Satan, Mr. de Haan appears as a

8    proponent for the beliefs in the Satanic Temple not as a

9    religion, but as a, quote, sociopolitical counter movement,

16:04:02  10   end quote.  He is a percipient witness not being called for

11   any attorney-client privileged information, not being called

12   for any purpose other than the defendants having discovered

13   his role as a percipient witness in the litigation during the

14   depositions of the Rule 30(b)(6) designees.

16:04:24  15          So that's response to the motion to quash,

16   Your Honor.  I'll be happy to any answer any questions you

17   have.

18          THE COURT:  When was Ms. Shortt's 30(b)(6) deposition

19   taken?

16:04:34  20          MR. CLAUS:  Ms. Shortt's 30(b)(6) deposition was

21   taken September 26th, 2019.  And that was also the date of --

22   September 26th, 2019, and that was also the date of the

23   deposition of the unincorporated association of persons.

24          THE COURT:  Was she deposed during the previous

16:04:57  25   discovery period?

16:04:59  1          MR. CLAUS:  She was not, Your Honor.

2          THE COURT:  When did you first indicate to

3  Mr. de Haan that you wanted him to be a witness in the case?

4          MR. CLAUS:  December 13th, Your Honor.

16:05:11  5          THE COURT:  Is that when you served the subpoena?

6          MR. CLAUS:  Yes, Your Honor.

7          THE COURT:  Do you agree that serving the subpoena,

8  if it's allowed, and if Mr. de Haan is called as a witness in

9  the case, that would interfere with his ability to serve as

16:05:30 10  counsel in the case?

11          MR. CLAUS:  We agree that the ethical rules

12  suggest -- not -- more than suggest.  The ethical rules

13  promulgated by the Supreme Court indicate that there are many

14  times in which serving as both counsel for an entity and

16:05:50 15  serving as a trial witness should be avoided.  But they should

16  be avoided by the lawyer who knows that the lawyer is a

17  percipient witness.  And should not prejudice the other party

18  who needs to adduce that trial testimony in order to support

19  the primary defense.

16:06:16 20          The rules of the Supreme Court, the comments to the

21  rules, to the ethical rules, do suggest that there are ways to

22  reconcile that conflict.  And Mr. Kezhaya is counsel of record

23  in this case and Mr. Kezhaya can act as counsel for the

24  plaintiffs in this matter if Mr. de Haan believes it's -- it

16:06:41 25  is Mr. de Haan's responsibility to both avoid that conflict

16:06:46   1    and reconcile that conflict.

       2            Given the testimony that we seek to adduce in this

       3    case, because we are not seeking the introduction of testimony

       4    regarding Mr. de Haan's counsel to his client, Mr. de Haan's

16:07:03   5    recommendations to his client, we're simply seeking testimony

       6    from Mr. de Haan about his activity in forming the entity, in

       7    creating the entity, and his statements that underlie and

       8    undermine the essential predicate for the establishment clause

       9    claim, which is that this thing, the Satanic Temple, is a

16:07:29  10    religion when, according to Mr. de Haan, it is a

      11    sociopolitical countermovement.

      12            So, yes, Your Honor, there is a potential conflict,

      13    but it is Mr. de Haan's conflict to have recognized and

      14    Mr. de Haan's conflict to reconcile, and it is not an

16:07:52  15    irreconcilable conflict.

      16            THE COURT:  I have seen in a previous exhibit in this

      17    case, I assume it was as part of the summary judgment motion,

      18    a document that was -- I can't remember if it was a screen

      19    shot from the Satanic Temple website.  But there was an

16:08:15  20    article there, I think, as well showing Mr. de Haan and

      21    Ms. Shortt together in the photograph and making very clear

      22    that he was fully involved in the organization and operation

      23    of the Satanic Temple.

      24            Surely you're not suggesting that his involvement has

16:08:32  25    been a secret that you didn't discover until September of

16:08:35   1    2019, are you?

           2              MR. CLAUS:   I know exactly the photo about which you

           3    are talking about, Your Honor.   That photo identified

           4    Mr. de Haan as the lawyer for the Satanic Temple.   It was the

16:08:47   5    photo of Mr. de Haan and Ms. Shortt before they appeared on a

           6    local Fox newscast.   And that photo identified Mr. de Haan not

           7    as an organizer of an LLC, not as a co-chapter head, not as a

           8    media liaison, not as someone who made statements that

           9    Satanic Temple isn't a religion but a sociopolitical

16:09:12   10   countermovement.   That photograph, the caption for that

           11   photograph, I'm almost certain, identified Mr. de Haan the way

           12   Mr. de Haan has identified himself for the Court, which is

           13   simply the lawyer representing Ms. Shortt and the

           14   Satanic Temple.

16:09:23   15             And so Mr. de Haan's role as a lawyer has certainly

           16   not been a secret.   What was not disclosed and I have,

           17   Your Honor, if I may approach, I can give it to you, the

           18   document that was not disclosed until Ms. Shortt's deposition.

           19             What was not disclosed was Mr. de Haan's role as a

16:09:42   20   percipient witness, not simply his role as a lawyer.   So it

           21   would be -- so the fact that there is that photograph that

           22   exists is undeniable.   But that photograph led us to assume

           23   the very thing that Mr. de Haan didn't disclose, that he was

           24   the lawyer for the entity and the lawyer for Ms. Shortt and

16:10:08   25   not an organizer, not a percipient witness in holding

16:10:14  1    meetings, not a percipient witness in seeking the invocation.

2    Those are the things that were not disclosed, Your Honor, that

3    were never disclosed.  Those are the things that we didn't

4    discover until the end of September.

16:10:28  5        We tried to -- we tried to formulate a strategy that

6    would assist Mr. de Haan in avoiding the potential conflict

7    between his role and a percipient witness and his role as

8    advocate, but the more we investigated after learning about

9    the existence of this affiliation agreement during

16:10:51  10   Ms. Shortt's deposition, the more we came to the conclusion

11   that that wasn't possible.

12       There's one other thing I want to address,

13   Your Honor, Which is an assertion in the moving paper,

14   Your Honor, that we did not inform the plaintiffs until two

16:11:09  15   days before the final pretrial statement was due that we would

16   not stipulate to not call Mr. de Haan as a witness.  That is

17   simply not accurate.

18       We had an e-mail exchange on December 23, 2019,

19   followed up with a conference call on December 26, 2019.  I

16:11:33  20   have both the e-mail and the calendar for the conference call

21   if the Court would like it.

22       But we did not wait until two days before the final

23   pretrial statement was due to inform the plaintiffs that we

24   would not be able to reach an agreement.

16:11:55  25       Would you like those e-mails, Your Honor?

52

16:11:58  1           THE COURT:  No.  I would not.

2           I mean, I accept what you've said.  I don't need to

3      read them.

4           All right, Mr. de Haan, do you want to address this

16:12:07  5      issue?

6           MR. de HAAN:  Yes, Your Honor.

7           First of all, the deposition that was taken of

8      Michelle Shortt and Doug Misicko was for the purpose of

9      organizational standing.  The whole purpose of those

16:12:21  10     depositions was to see what the organizational structure was

11     of the church in Salem, of the Temple chapter here in Arizona.

12     And at no point after a year that discovery's been closed have

13     I been a named witness or even suspected that because I never

14     asked for the invocation, I never was going to give the

16:12:44  15     invocation.  My role with the organization for four years has

16     been as a legal advisor, both personally and for the

17     organization, since the duration of my tenure there.

18          Of course, since I'm involved with the temple, I have

19     had other duties, such as a spokesperson, just because I am an

16:12:59  20     attorney for the organization and things like that.

21          But certainly throughout this two-year litigation, it

22     wasn't until this deposition, this 30(b)(6) deposition, that

23     the organizational structure came out that it was something

24     either side thought was relevant.

16:13:14  25          So for two years this wasn't relevant.  And now I'm

16:13:18   1   repeatedly being misquoted of something that I said in a

2   documentary.  Apparently he didn't watch it with subtitles

3   because that's not what I said.

4        It's also not here or there.  It's not relevant

16:13:29   5   because we have the founder of the Satanic Temple,

6   Doug Misicko, who's going to testify as to the beliefs, since

7   that could be a trial issue for the establishment clause.  We

8   have Michelle Shortt to talk about her personal religious

9   beliefs and the invocation.  And also, the City has called the

16:13:43   10   person who originally sent the e-mail requesting the

11   invocation, which is Jeremy Zarzycki, who has also been

12   subpoenaed.

13        So I don't see any reason that I can be called for

14   any other purpose than to try to get me off this case when

16:13:59   15   nothing I have to say is even relevant to the beliefs of the

16   Satanic Temple, one party; the beliefs of Michelle Shortt,

17   another plaintiff; and my role as a four-year lawyer for the

18   group.  I mean, it's inconceivable that they would avoid some

19   kind of attorney-client privilege in any of these situations

16:14:21   20   or other ones, and I've been involved in other lawsuits that

21   are similar but not quite this situation.

22        And none of this was talked about in the documentary.

23   Nothing about this litigation has anything to do with that

24   documentary.

16:14:34   25        That being said, there's also the undue burden aspect

16:14:37  1  that we're about ten days before trial and we're going to have

2  to either find other trial counsel or basically re-prepare a

3  lot of these issues.

4       So, Your Honor, I think because of the way this

16:14:46  5  happened, because subject to the 30(b)(6) motion on somebody

6  else a year after the close of discovery, and the fact that

7  I'm not a relevant witness to this particular litigation, I

8  would ask that this be quashed.

9       THE COURT:  All right.

16:15:00  10       I'm going to quash the subpoena.

11       This is not a hard call, in my view.  This case has

12  been pending for a couple of years.  This information about

13  Mr. de Haan has been publicly available for a long time.  The

14  fact that he would be served with a subpoena on December 13th

16:15:20  15  for a June 22nd trial just is unreasonable, in my view.

16       We are here a week before trial.  I'm not going to

17  disqualify him from serving, which is what I would do, in

18  effect, if I allowed the subpoena to stand, and either force

19  the plaintiffs to go to trial without their lead counsel who

16:15:39  20  has been their lead counsel throughout the case or postpone

21  the trial.  I'm not going to do that, particularly when

22  defendants clearly could have raised this issue much earlier

23  in the case, in my judgment.

24       In addressing factors under Rule 45(d)(3), the cases

16:15:55  25  say it is a balance in deciding whether or not it imposes an

16:15:58  1    undue burden on a person, which includes a party.

        2           I believe effectively disqualifying Mr. de Haan a

        3    week before trial would impose an undue burden on the

        4    plaintiffs in this case.  And when I balance that tremendous

16:16:12  5    burden against the defendant's need for the information he can

        6    present as a witness at trial, the burden clearly favors the

        7    plaintiffs.

        8           The factual description that the plaintiffs have

        9    provided about what they're going to seek to obtain from

16:16:28 10    Mr. de Haan is word-for-word identical to the factual

       11    description in the final pretrial order of what they're going

       12    to obtain from Ms. Shortt, although there is more after that

       13    from Ms. Shortt.

       14           So I believe that sufficient information is

16:16:42 15    available.  If there are documents that address this, those

       16    might be admissible as well.  But I am not going to disqualify

       17    a counsel a week before trial, or even a month before trial if

       18    the issue had come up back in December, when this case has

       19    been going on for more than two years.  Mr. de Haan's

16:17:00 20    involvement, in my view, has been not a secret.

       21           The City clearly could have conducted discovery on

       22    all of these issues, including the standing issues that

       23    retained counsel raised after you came into the case.  That

       24    could have all been raised and ventilated much earlier in the

16:17:15 25    case by counsel if the City had chosen to do so.  And it

16:17:18  1   wasn't.  And this is just too late and too unfair, in my view,

2   to go forward with that subpoena.

3        So I'm going to grant the motion to quash, which is

4   at Docket 78, and I'm going to deny as moot the motion to

16:17:31  5   quash, which is at Docket 77.  It's the same motion, but one

6   didn't have an exhibit on it.

7        All right.  Let's talk, then, about the motion in

8   limine which has been filed.

9        The defendants filed a motion in limine.  The

16:17:44 10   plaintiffs responded.  I typically don't allow replies on

11   motions in limine.  But I'm interested in any additional

12   arguments you all wish to make on the motion in limine.  I've

13   read both the motion and the response.

14        Let's start first with defense counsel, since it's

16:18:04 15   your motion.  Are there other points you want to make?

16        MR. CLAUS:  Well, Your Honor, there are points that

17   we need to amplify, which is that it's not simply that the

18   individual council members in their campaign literature do not

19   speak for and do not bind the City, but the nature of the

16:18:34 20   communications themselves, some of those communications have

21   no date on them whatsoever, so it's difficult to know when

22   those communications were created, if those communications

23   were disseminated or published.

24        But if those communications were made as campaign

16:18:56 25   literature after Mr. Biesemeyer made the decision to not allow

16:19:03  1    the invocation by the organization identifying itself as the

        2    Satanic Temple, then those communications make no fact of

        3    consequence in this case more or less likely and are highly

        4    and unfairly prejudicial to the defendants because they could

16:19:20  5    not, as a matter of time and as a matter of logic, have

        6    impacted any decision.

        7            More importantly, Your Honor, as we've established in

        8    our papers, the City manager, Mr. Biesemeyer, was acting as

        9    the City manager when he made the decision to deny the

16:19:40 10    invocation for lack of substantial connection to the City of

       11    Scottsdale.  It is wholly within the power, both by city

       12    charter and by the undisputed testimony in this case, it was

       13    wholly within the province of Mr. Biesemeyer, as the acting

       14    City manager, to implement the practice of denying an

16:20:02 15    organization without a substantial connection to the City of

       16    Scottsdale from give giving an invocation.

       17            There is no testimony, there is no evidence, that he

       18    spoke with the mayor, that he spoke with Ms. Littlefield, that

       19    he spoke with Vice Mayor Smith at any time prior to making

16:20:19 20    that decision.

       21            And the only testimony in this case is that no

       22    council person and the mayor did not influence or direct

       23    Mr. Biesemeyer to make that decision.

       24            So to allow the testimony of -- or to compel the

16:20:37 25    testimony of individual council members when those council

16:20:41  1  members outside of a duly agendized and noticed city council

       2  meeting cannot speak on behalf of the City.  To compel their

       3  testimony based on nothing but conjecture is and of itself

       4  unfairly highly prejudicial to the defendants and also

16:21:00  5  interferes with the orderly functioning of the Scottsdale City

       6  government because now the mayor and the council people who

       7  are supposed to be working for the City of Scottsdale have to

       8  come here and testify, testify about things that have no basis

       9  in fact that are purely the product of speculation and

16:21:20  10  conjecture and for which they cannot and did not, according to

      11  all the evidence in this case, make a decision or impact the

      12  decision.

      13       So for those reasons, Your Honor, we would ask that

      14  the Court order in limine that the campaign materials

16:21:37  15  identified by the plaintiffs be excluded from evidence and

      16  that the mayor and council member, council member Klapp, the

      17  only council member identified, not be permitted to testify in

      18  this case.

      19       THE COURT:  Okay.  I'm going to deny the motion.

16:21:55  20  I'll explain why I'm not going to deny the motion and that's

      21  why I'm not going to take time to hear additional argument.

      22       The defendants made clear in your motion and in other

      23  filings in the case that Mr. Biesemeyer is the decision-maker,

      24  the policy-maker with respect to this case.  That's the

16:22:11  25  position of the defendants.

16:22:13   1        In fact, on page 4 of the motion in limine,

       2   defendants say unquestionably the final decision-maker with

       3   respect to adhering to that practice, meaning the longstanding

       4   policy the City is asserting, is Mr. Biesemeyer.

16:22:31   5        Later in the motion the defendants say Mr. Biesemeyer

       6   was essentially the decision-making body.  He was the

       7   decision-maker whose intent, state of mind, or knowledge is

       8   relevant.  That's on page 7.

       9        On page 7 the defendants also say, The policy-maker

16:22:53  10   is plainly Mr. Biesemeyer.

      11        So the key question in this case is why did this

      12   individual, Mr. Biesemeyer, make the decision that he did.

      13   Because the City has identified him as the actor on behalf of

      14   the City.

16:23:05  15        Evidence from city council members or the mayor is

      16   relevant to the question of why Mr. Biesemeyer did what did.

      17   It may not be persuasive, but it clearly is relevant under the

      18   standard in Rule 401 and 402 because it may have a tendency to

      19   make a fact in dispute more likely.  Namely, that

16:23:25  20   Mr. Biesemeyer was acting because of the brouhaha that

      21   developed when the public and the council learned that the

      22   Satanic Temple was going to offer an invocation.

      23        It is certainly circumstantial evidence that can be

      24   considered as to why Mr. Biesemeyer took the action that he

16:23:44  25   did.

16:23:44  1          The actions of the city council and the mayor do not

2    have to have been official actions on the part of the City to

3    be relevant facts as fact witnesses as to what was, in the

4    words of the defendants, the intent, state of mind, or

16:24:01  5    knowledge of Mr. Biesemeyer when he made the decision.

6          Their testimony is not akin to calling a legislator

7    to come into court and testify about the intent of

8    legislation, which the courts clearly don't allow.  They are

9    fact witnesses about what was happening within the City of

16:24:17 10    Scottsdale and what Mr. Biesemeyer knew and why he acted the

11    way he did.  It is not barred by *Monell*, in my view.  There is

12    no dispute that his actions were an action for the City; the

13    defendants have said so.  And the testimony of the council

14    members and the mayor are facts, evidence, relevant to why he

16:24:41 15    took the action that he did.

16          I'm not going to view them as official actions when

17    they're e-mailing people.  I mean, plaintiffs may argue that

18    they are and I'll listen to that argument, but they're

19    relevant facts as to why Mr. Biesemeyer did what he did.

16:24:58 20          And it's not barred by Rule 403.  It's relevant.

21    And, as you know, Rule 403 only precludes unfairly prejudicial

22    evidence that substantially outweighs the probative value.  I

23    don't think this is unfairly prejudicial.  The City will have

24    a full opportunity to explain what the council members or the

16:25:15 25    mayor said or did not say, the lack of evidence that they ever

16:25:19  1   communicated to Mr. Biesemeyer.

2        Unfairly prejudicial evidence under Rule 403 is

3   typically evidence that causes the fact finder to make a

4   decision based on something other than the evidence, like

16:25:31  5   emotion.  That's not going to be the case here.

6        The defendants will have a full and fair opportunity

7   to address this evidence.  If it's otherwise admissible.  I'm

8   not ruling it's admissible because there might be other

9   objections like hearsay, I don't know.  But my conclusion is

16:25:48  10   it's relevant, it's not barred by Rule 403.  It may not be

11   persuasive.  I won't know that until I hear it.  But I can't

12   conclude that it's inadmissible under those rules.  So I'm

13   going to deny the motion in limine.

14        All right.  Those are the matters that I needed to

16:26:07  15   address today.

16        From the plaintiffs, do you have matters that you

17   want to raise that we need to address before trial?

18        MR. de HAAN:  Your Honor, as far as the exhibits --

19        THE COURT:  Stay at the mic, would you.  It's harder

16:26:21  20   to hear up here than it would seem.

21        MR. de HAAN:  As far as the exhibit objections, I

22   imagine we'll handle that at the trial.

23        THE COURT:  Yeah, those are preserved in the final

24   pretrial order.  I don't rule on those ahead of time.  I'll

16:26:33  25   rule on those during trial.  And if an objection is preserved

16:26:36  1    in the final pretrial order, then it can be asserted at the

2    time of the exhibit or the testimony and I'll rule on it at

3    that time.

4            MR. de HAAN:  Okay.  That's all.  We have no motions

16:26:44  5    in limine other than that motion to quash.

6            THE COURT:  All right.

7            Defense counsel, do you have other matters you want

8    to raise?

9            MR. CLAUS:  Just a couple of housekeeping matters,

16:26:52 10    Your Honor.

11            One, we're going to bring in a rolling cart so we can

12    put notebooks.  I just wanted to apprise the Court of that.

13            And two, a question for the Court.  It will be quiet

14    and it will not interfere with any witness testimony, but it

16:27:10 15    is helpful to have a small portable printer in court so that

16    if we need to print something out, we can.  But I wanted to

17    ask.

18            THE COURT:  I would say no if this was a jury trial,

19    but it's a bench trial so that's all right.

16:27:25 20            MR. CLAUS:  Thank you, Your Honor.

21            THE COURT:  Even though my staff might disagree with

22    me.  I think that's okay.  If it's running too loud, we'll

23    turn it off.

24            MR. CLAUS:  I understand.

16:27:37 25            And finally, Your Honor, your order does not ask for

16:27:39  1  a trial memoranda separate from the proposed findings of fact

2  and conclusions of law.  I just wanted to make sure you didn't

3  want trial memoranda.

4          THE COURT:  That's right.  I will, I haven't yet, but

16:27:45  5  I will read your proposed findings and conclusions before we

6  start trial next week.  So I will be familiar with that.

7          We'll decide at the end of the trial whether or not

8  we need posttrial briefing.  I usually try to avoid that

9  because I try to make the decision right after the close of

16:28:01  10  trial rather than wait a couple of weeks, because I forget

11  half of what I knew in that two-week span and have to go back

12  and relearn it.  But if there's a tough legal issue on which

13  we need briefing, we'll do that after the trial.  But I will

14  have read all of those findings and conclusions before we

16:28:18  15  start.

16          MR. CLAUS:  And then, judgment as a matter of law,

17  Your Honor, it will be no surprise, I'm sure, to anyone that

18  we will likely file a judgment for a matter of law at the

19  close of the plaintiffs' case in chief.  We will not have the

16:28:29  20  opportunity to have dailies.  Is it sufficient to quote

21  testimony without citation to the transcript?

22          THE COURT:  It is.

23          I will tell you that what I'm going to ask you to do

24  when we get to that point is to make the motion orally --

16:28:45  25          MR. CLAUS:  Okay.

16:28:45 1        THE COURT:  -- so that I can rule on it at that

2    point.  I'm not going to want to take a break to go read

3    something.

4        But I'm going to take very detailed notes as we go

16:28:55 5    through.  And so it's fair for you to assert what you believe

6    the evidence has said from your memory without a daily

7    transcript, and I'll compare that to my notes.

8        But, yeah, by all means you're welcome to make that

9    motion at the close of the plaintiffs' case and I'll either

16:29:10 10   rule on it or take it under advisement at that point.

11       MR. CLAUS:  In light of the Court's ruling on the

12   motion to quash, Your Honor, we would like to make an offer of

13   proof regarding Mr. de Haan's proposed testimony.  May we do

14   that in writing?

16:29:23 15      THE COURT:  Sure.  If you prefer, that's fine.

16   You're entitled to make that offer of proof to create a record

17   of what I didn't let you do, so that's fine.

18       MR. CLAUS:  Thank you.

19       THE COURT:  Anything else we need address?

16:29:32 20      MR. CLAUS:  No, thank you, Your Honor.

21       THE COURT:  Okay.  We will see you on the morning of

22   the 22nd.  Thank you all.

23     (End of transcript.)

24                    *  *  *  *  *

25

1                      **C E R T I F I C A T E**

2

3          I, PATRICIA LYONS, do hereby certify that I am duly

4    appointed and qualified to act as Official Court Reporter for

5    the United States District Court for the District of Arizona.

6

7          I FURTHER CERTIFY that the foregoing pages constitute

8    a full, true, and accurate transcript of all of that portion

9    of the proceedings contained herein, had in the above-entitled

10   cause on the date specified therein, and that said transcript

11   was prepared under my direction and control, and to the best

12   of my ability.

13

14         DATED at Phoenix, Arizona, this 9th day of June,

15   2020.

16

17

18

19

20                              s/ Patricia Lyons, RMR, CRR
                                Official Court Reporter
21

22

23

24

25